**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**ANDREW DOE**                                                                                    **PLAINTIFF**

**V.**                                              **CIVIL ACTION NO: 3:18cv138 DPJ -FKB**

**STATE OF MISSISSIPPI; THE UNIVERSITY OF MISSISSIPPI;
STATE INSTITUTIONS OF HIGHER LEARNING ("IHL"); THE
BOARD OF TRUSTEES of STATE INSITUTIONS of HIGHER
LEARNING; C.D. SMITH, JR., IN HIS OFFICIAL CAPACITY
AS PRESIDENT OF THE BOARD OF TRUSTEES OF STATE
INSTITUTIONS OF HIGHER LEARNING; SHANE HOOPER, IN
HIS OFFICIAL CAPACITY AS VICE PRESIDENT OF THE
BOARD OF TRUSTEES OF STATE INSTITUTIONS OF
HIGHER LEARNING; TOM DUFF, DR. FORD DYE, ANN H.
LAMAR, DR. ALFRED E. McNAIR, JR., CHIP MORGAN, HAL
PARKER, ALAN W. PERRY, CHRISTY PICKERING, DR.
DOUG W. ROUSE, and DR. J. WALT STARR, IN THEIR
OFFICIAL CAPACITIES AS MEMBERS OF THE OF THE
BOARD OF TRUSTEES OF STATE INSTITUTIONS OF
HIGHER LEARNING; GLENN F. BOYCE, IN HIS OFFICIAL
CAPACITY AS COMMISSIONER OF HIGHER EDUCATION;
JEFFREY S. VITTER, IN HIS OFFICIAL CAPACITY AS THE
CHANCELLOR OF THE UNIVERSITY OF MISSISSIPPI;
TRACY MURRY, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY; HONEY USSERY, INDIVIDUALLY AND IN HER
OFFICIAL CAPACITY; and DOES 1 – 5**

                                                                                              **DEFENDANTS**

**SECOND AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Andrew Doe files this Complaint seeking declaratory, injunctive and monetary

relief against Defendants the State of Mississippi ("State"); the University of Mississippi ("the

University"); State Institutions of Higher Learning ("IHL"); the Board of Trustees of State

Institutions of Higher Learning ("Board of Trustees"); Board of Trustees members C.D. Smith,

Jr., Shane Hooper, Tom Duff, Dr. Ford Dye, Ann H. Lamar, Dr. Alfred E. McNair, Jr., Chip

Morgan, Hal Parker, Alan W. Perry, Christy Pickering, Dr. Doug W. Rouse and Dr. J. Walt Starr,

in their official capacities; Alfred Rankins, Jr., in his official capacity as Commissioner of Higher Education; Jeffrey S. Vitter, in his official capacity as Chancellor of the University of Mississippi; and Tracy Murry and Honey Ussery, in both their individual and official capacities, for gender-based discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*, violations of the due process and equal protection clauses of the Fourteenth Amendment to the U.S. Constitution brought pursuant to 42 U.S.C. § 1983, and for breach of contract. In support of this Complaint, Doe alleges as follows:

1.      As a result of the false allegations of sexual misconduct that were made against Andrew Doe and the actions taken by the Defendants both individually and collectively, Doe has been unable to continue his education at the University and a finding of sexual assault has been listed in his educational records.  Doe has sustained and continues to sustain damages to his education and his career opportunities as a result of the University's denial of due process and erroneous finding that he was responsible for an offense he did not commit, and the related issuance of excessive discipline in the form of expulsion from the University.

2.      The authority and jurisdiction of the University's Conduct System is established pursuant to the delegation of legal authority by the Chancellor and the Board of Trustees of IHL. In Article IX, § (5) of the bylaws and policies of the Board of Trustees of IHL, the Chancellor of the University is charged with the responsibility of maintaining appropriate standards of conduct for students and is authorized to expel, dismiss, suspend, and/or place limitations on continued attendance and/or levy penalties for disciplinary violations subject to procedures of due process.

3.      The policies and procedures enacted by the University, pursuant to the delegation of authority granted by the Chancellor and the Board of Trustees of IHL, and as applied in practice and custom, favor females over males in sexual misconduct disputes and denied Andrew Doe his

due process and equal protection rights in violation of the Fourteenth Amendment to the U.S. Constitution.

4.     Throughout the investigative and appeal process, the Defendants failed to abide by the University's guidelines and regulations and acted in direct violation of federal and state law. The University, Defendant Murry and Defendant Ussery failed to conduct a thorough and impartial investigation of the allegations brought against Andrew Doe, failed to conduct and ensure a timely adjudication process and made credibility and evidentiary assessments with respect to the parties and witnesses that were not based upon substantive evidence.

5.     The University, Defendant Murry and Defendant Ussery knew or should have discovered during the course of an unbiased investigation, that Bethany Roe ("Roe") consensually participated in sexual activity with Andrew Doe.

6.     The University, Defendant Murry, and Defendant Ussery failed to obtain and/or consider relevant exculpatory evidence during the course of the investigation and exhibited a gender bias towards Andrew Doe. In addition, the Defendants failed to provide a rationale for the ultimate decision to expel Doe and failed to afford Doe the presumption of innocence required as a matter of law.

7.     The determination issued by the Defendants against Andrew Doe did not take into consideration the substantial weight of the evidence available.  The actions of the Defendants exhibited a gender bias against males and an underlying motive to protect the University's reputation and financial status.

8.     In September and/or October 2017, the Defendants were expressly put on notice that the policies, practices and customs of the University of Mississippi and the Title IX office were depriving students of their due process rights, both facially and as applied.  Despite this

knowledge, the University announced they would not be changing policy, and male students who were involved in active disciplinary proceedings and actions, including but not limited to Andrew Doe, were denied reconsideration of their cases.

9.      The State of Mississippi, IHL and the University of Mississippi had an obligation to act in accordance with federal and state law, as well as in compliance with existing contracts relating to student enrollment, financial aid/ scholarships and housing.  The Board of Trustees of IHL, its members, the Commissioner of Higher Education and the Chancellor had a responsibility and duty to insure the policies, practices and customs at the University of Mississippi complied with these laws and that the actions of the Defendants were not in breach of these laws or existing contracts.   While certain responsibilities may have been delegated within the University, these Defendants retained oversight responsibility.

10.     The wrongful actions taken by the Defendants resulted in a denial of Andrew Doe's Fourteenth Amendment substantive and due process rights and his equal protection rights and were in violation of Title IX.  In addition, the actions were in breach of its contract with Doe.

11.     Andrew Doe has been significantly damaged by the Defendants, individually and collectively.   As a result of the unconstitutional and biased actions and omissions of the Defendants, Doe was is currently suspended from the University, resulting in damage to his educational and career prospects, psychological, emotional and reputational damages, and economic injury.

12.     Andrew Doe brings this action to obtain monetary and declaratory relief for a violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et. seq*., violations of the substantive and procedural due process clauses of the Fourteenth Amendment to the U.S. Constitution and the Equal Protection clause of the United States Constitution, brought pursuant

to the procedural vehicle of 42 U.S.C. §1983, and for breach of the University's contract with him. Doe also seeks declaratory, injunctive and monetary relief to remedy emotional, mental, and economic harms he has suffered.

## PARTIES

13.     At the time of the filing of this Complaint, Plaintiff Andrew Doe is a natural person and a resident of Tennessee.  During the events at issue herein he was an undergraduate student at the University and resided in Oxford, Mississippi.

14.     Bethany Roe is a resident of the state of North Carolina and a non-party undergraduate student at the University and the Complainant in the underlying Title IX disciplinary proceeding against Andrew Doe.

15.     Andrew Doe has sought to use pseudonyms "Andrew Doe" and "Bethany Roe" in this Complaint in order to preserve his privacy and the privacy of the student who raised the allegations against him, as the subject of this Complaint relates to intimate and personal matters. As set out more fully in a separately filed Motion to Proceed Pseudonymously, the public's interest in knowing the identities of Andrew Doe and Bethany Roe is outweighed by privacy concerns.  In addition, use of pseudonyms will not prejudice the Defendants because they know the identities of both Doe and Roe.  *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 36 L.Ed.2d 201 (1973).  Furthermore, the disclosure of Doe's identity will cause him irreparable harm as this case involves matters of the utmost personal intimacy, including education records protected from disclosure by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g); 34 CFR Part 99.

16.     The Court has separately granted Plaintiff's request to proceed pseudonymously. [Doc. 7]

17.     Defendant State Institutions of Higher Learning ("IHL") is the constitutional governing body responsible for policy and financial oversight of public institutions of higher learning in Mississippi.  IHL is the body responsible for conferring degrees upon students of state institutions.  IHL is situated at 3825 Ridgewood Road, Jackson, Mississippi. As an element of contract, The Board of Trustees of the IHL confers the degrees and diplomas upon students graduating from the University and is responsible for the approval, oversight and/or delegation of policy implementation at the University.

18.     The State of Mississippi is a recipient of federal funding and is responsible for compliance with the dictates of Title IX.   Additionally, the State of Mississippi is responsible for the actions of the remaining Defendants to the extent they are arms of the State. The acts of the State's agencies, subdivisions, agents and/or employees represent the actions of the State itself, as a matter of law.

19.     Defendant University of Mississippi is a public university created by the Mississippi legislature. The University of Mississippi's main campus is situated in Oxford, Mississippi, and multiple additional campuses are situated throughout Mississippi, including in Jackson, Mississippi.

20.     Defendant Board of Trustees of State Institutions of Higher Learning ("Board of Trustees") is the constitutional governing body of State Institutions of Higher Learning.  The Board of Trustees is a political subdivision of the State of Mississippi and is responsible for policy and financial oversight of the eight public institutions of higher learning within Mississippi. The Board has the power to determine who shall be permitted to enter, remain in, or graduate from these institutions.  This Defendant may be served with process by service upon the Attorney General, Jim

Hood, at 550 High Street, Suite 1200, Jackson, Mississippi and upon the Board's Commissioner of Higher Education.

21.     Defendant C.D. Smith, Jr. is the President of the Board of Trustees of State Institutions of Higher Learning.  Smith is sued in his official capacity only.  By the nature of his position, Smith is imbued with the responsibility to enforce the policies at issue in this suit and comply with the federal laws in issue as well as contracts by IHL, the Board and the University of Mississippi. Prospective injunctive and declaratory relief is sought from this Defendant.  Smith may be served in conjunction with the policies and by-laws of the Board of Trustees of the Institutions of Higher Learning, by service upon the Attorney General, Jim Hood, or a duly designated Deputy Attorney General at 550 High Street, Suite 1200, Jackson, Mississippi.

22.     Defendant Shane Hooper is the Vice President of the Board of Trustees of State Institutions of Higher Learning.  Hooper is sued in his official capacity only.  By the nature of his position, Hooper is imbued with the responsibility to enforce the policies at issue in this suit and comply with the federal laws in issue as well as contracts by IHL, the Board and the University of Mississippi.  Prospective injunctive and declaratory relief is sought from this Defendant.  Smith may be served in conjunction with the policies and by-laws of the Board of Trustees of the Institutions of Higher Learning, by service upon the Attorney General, Jim Hood, or a duly designated Deputy Attorney General at 550 High Street, Suite 1200, Jackson, Mississippi.

23.     Defendant Tom Duff is a member of the Board of Trustees of State Institutions of Higher Learning. Duff is sued in his official capacity only. By the nature of his position, Duff is imbued with the responsibility to enforce the policies at issue in this suit and comply with the federal laws in issue as well as contracts by IHL, the Board and the University of Mississippi.  Prospective injunctive and declaratory relief is sought from this Defendant.  Smith may be served in conjunction

7

with the policies and by-laws of the Board of Trustees of the Institutions of Higher Learning, by service upon the Attorney General, Jim Hood, or a duly designated Deputy Attorney General at 550 High Street, Suite 1200, Jackson, Mississippi.

24.     Defendant Dr. Ford Dye is a member of the Board of Trustees of State Institutions of Higher Learning. Dye is sued in his official capacity only.  By the nature of his position, Dye is imbued with the responsibility to enforce the policies at issue in this suit and comply with the federal laws in issue as well as contracts by IHL, the Board and the University of Mississippi.  Prospective injunctive and declaratory relief is sought from this Defendant.  Smith may be served in conjunction with the policies and by-laws of the Board of Trustees of the Institutions of Higher Learning, by service upon the Attorney General, Jim Hood, or a duly designated Deputy Attorney General or a duly designated Deputy Attorney General at 550 High Street, Suite 1200, Jackson, Mississippi.

25.     Defendant Ann H. Lamar is a member of the Board of Trustees of State Institutions of Higher Learning. Lamar is sued in her official capacity only.  By the nature of his position, Lamar is imbued with the responsibility to enforce the policies at issue in this suit and comply with the federal laws in issue as well as contracts by IHL, the Board and the University of Mississippi.  Prospective injunctive and declaratory relief is sought from this Defendant.  Smith may be served in conjunction with the policies and by-laws of the Board of Trustees of the Institutions of Higher Learning, by service upon the Attorney General, Jim Hood, or a duly designated Deputy Attorney General at 550 High Street, Suite 1200, Jackson, Mississippi.

26.     Defendant Dr. Alfred E. McNair, Jr. is a member of the Board of Trustees of State Institutions of Higher Learning. McNair is sued in his official capacity only.  By the nature of his position, McNair is imbued with the responsibility to enforce the policies at issue in this suit and comply with the federal laws in issue as well as contracts by IHL, the Board and the University of

Mississippi.  Prospective injunctive and declaratory relief is sought from this Defendant.  Smith may be served in conjunction with the policies and by-laws of the Board of Trustees of the Institutions of Higher Learning, by service upon the Attorney General, Jim Hood, or a duly designated Deputy Attorney General at 550 High Street, Suite 1200, Jackson, Mississippi.

27.     Defendant Chip Morgan is a member of the Board of Trustees of State Institutions of Higher Learning.  Morgan is sued in his official capacity only.  By the nature of his position, Morgan is imbued with the responsibility to enforce the policies at issue in this suit and comply with the federal laws in issue as well as contracts by IHL, the Board and the University of Mississippi.  Prospective injunctive and declaratory relief is sought from this Defendant.  Smith may be served in conjunction with the policies and by-laws of the Board of Trustees of the Institutions of Higher Learning, by service upon the Attorney General, Jim Hood, or a duly designated Deputy Attorney General at 550 High Street, Suite 1200, Jackson, Mississippi.

28.     Defendant Hal Parker is a member of the Board of Trustees of State Institutions of Higher Learning. Parker is sued in his official capacity only.  By the nature of his position, Parker is imbued with the responsibility to enforce the policies at issue in this suit and comply with the federal laws in issue as well as contracts by IHL, the Board and the University of Mississippi.  Prospective injunctive and declaratory relief is sought from this Defendant.  Smith may be served in conjunction with the policies and by-laws of the Board of Trustees of the Institutions of Higher Learning, by service upon the Attorney General, Jim Hood, or a duly designated Deputy Attorney General at 550 High Street, Suite 1200, Jackson, Mississippi.

29.     Defendant Alan W. Perry is a member of the Board of Trustees of State Institutions of Higher Learning. Perry is sued in his official capacity only.  By the nature of his position, Perry is imbued with the responsibility to enforce the policies at issue in this suit and comply with the

federal laws in issue as well as contracts by IHL, the Board and the University of Mississippi. Prospective injunctive and declaratory relief is sought from this Defendant. Smith may be served in conjunction with the policies and by-laws of the Board of Trustees of the Institutions of Higher Learning, by service upon the Attorney General, Jim Hood, or a duly designated Deputy Attorney General at 550 High Street, Suite 1200, Jackson, Mississippi.

30.    Defendant Christy Pickering is a member of the Board of Trustees of State Institutions of Higher Learning. Pickering is sued in her official capacity only. By the nature of her position, Pickering is imbued with the responsibility to enforce the policies at issue in this suit and comply with the federal laws in issue as well as contracts by IHL, the Board and the University of Mississippi Prospective injunctive and declaratory relief is sought from this Defendant. Smith may be served in conjunction with the policies and by-laws of the Board of Trustees of the Institutions of Higher Learning, by service upon the Attorney General, Jim Hood, or a duly designated Deputy Attorney General at 550 High Street, Suite 1200, Jackson, Mississippi.

31.    Defendant Dr. Doug W. Rouse is a member of the Board of Trustees of State Institutions of Higher Learning. Rouse is sued in his official capacity only. By the nature of his position, Rouse is imbued with the responsibility to enforce the policies at issue in this suit and comply with the federal laws in issue as well as contracts by IHL, the Board and the University of Mississippi. Prospective injunctive and declaratory relief is sought from this Defendant. Smith may be served in conjunction with the policies and by-laws of the Board of Trustees of the Institutions of Higher Learning, by service upon the Attorney General, Jim Hood, or a duly designated Deputy Attorney General at 550 High Street, Suite 1200, Jackson, Mississippi.

32.    Defendant Dr. J. Walt Starr is a member of the Board of Trustees of State Institutions of Higher Learning. Starr is sued in his official capacity only. By the nature of his

position, Starr is imbued with the responsibility to enforce the policies at issue in this suit and comply with the federal laws in issue as well as contracts by IHL, the Board and the University of Mississippi.  Prospective injunctive and declaratory relief is sought from this Defendant.  Smith may be served in conjunction with the policies and by-laws of the Board of Trustees of the Institutions of Higher Learning, by service upon the Attorney General, Jim Hood, or a duly designated Deputy Attorney General at 550 High Street, Suite 1200, Jackson, Mississippi.

33.     Defendant Glenn F. Boyce is the Commissioner of Higher Education.  Boyce is sued in his official capacity only.  By the nature of his position, Boyce is imbued with the responsibility to enforce the policies at issue in this suit and comply with the federal laws in issue as well as contracts by IHL, the Board and the University of Mississippi.  Prospective injunctive and declaratory relief is sought from this Defendant.  Boyce may be served in conjunction with the policies and by-laws of the Board of Trustees of the Institutions of Higher Learning, by service upon the Attorney General, Jim Hood, or a duly designated Deputy Attorney General at 550 High Street, Suite 1200, Jackson, Mississippi.

34.     Defendant Jeffrey S. Vitter is the Chancellor of the University of Mississippi and its chief executive officer.  Vitter is sued in his official capacity only.  As Chancellor, Vitter has been delegated by the authority of the Board of Trustees of State Institutions of Higher Learning to act on student affairs at the University of Mississippi.  In exercising his authority, Vitter is required to act in accordance with Board policy, institutional policy, the laws of the State of Mississippi, federal statutory and constitutional law.  Prospective injunctive and declaratory relief is sought from this Defendant.  Vitter may be served in conjunction with the policies and by-laws of the Board of Trustees of the Institutions of Higher Learning, by service upon Vitter at Lyceum 123, University,

Mississippi or upon the Attorney General, Jim Hood, or a duly designated Deputy Attorney General at 550 High Street, Suite 1200, Jackson, Mississippi.

35.     The members of the Board of Trustees of State Institutions of Higher Learning, Glenn Boyce as Commissioner of Higher Education, Jeffrey S. Vitter as Chancellor of the University of Mississippi, and/or Tracy Murry and Honey Ussery are the final policymakers for the matters set forth in this Complaint.

36.     Defendant Tracy Murry is the Director of Conflict Resolution and Student Conduct at the University of Mississippi.  His office with the University is located at 100 Somerville Hall, University, Mississippi.   Upon information and belief, Murry is a resident of the State of Mississippi and resides in Oxford, Mississippi.  Murry is sued in his official capacity for those actions taken in conjunction with the regulations set forth by the Institutions of Higher Learning and the University of Mississippi and the State, as well as the policies and procedures of the University of Mississippi.  In addition, Murry is sued in his individual capacity with respect to the actions and inactions he personally took against Andrew Doe that were reckless, malicious and/or deliberately indifferent to the rights of Doe.

37.     Defendant Ussery is the Title IX Coordinator for the University of Mississippi. Ussery's office with the University is located in the Martindale Student Services Center in University, Mississippi.   Upon information and belief, Ussery is a resident of the State of Mississippi and resides at 415 Timber Lane, Oxford, Mississippi 38655.  Ussery is sued in her official capacity for those actions which were taken in conjunction with the practices, policies and procedures of the University.  In addition, Ussery is sued in her individual capacity with respect to the actions and inactions she personally took against Andrew Doe that were reckless, malicious and/or deliberately indifferent to the rights of Doe.

38.     Does 1-5 are persons and entities who are responsible for the improper actions against Andrew Doe, including but not limited to the Title IX disciplinary investigation and sanction of expulsion, or who are later identified as necessary parties.

## JURISDICTION AND VENUE

39.     This case arises in part under Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 *et seq*., and the Fourteenth Amendment to the United States Constitution, brought pursuant to the procedural vehicle of 42 U.S.C. §1983 and accordingly, this Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.  Furthermore, this Court has supplemental jurisdiction over the Plaintiff's state law claim(s) pursuant to 28 U.S.C. § 1367.

40.     The injunctive relief sought in this matter is authorized by 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure 57 and 65.

41.     This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391. Defendant IHL is situated in this district and the Defendant the University has a campus situated in this district. Further, certain of the predicate acts giving rise to the claims herein occurred in part within this district.

## STATEMENT OF FACTS

### The Relationship Between Andrew Doe and Bethany Roe

42.     Andrew Doe and Bethany Roe were both students at the University in November 2016.  They were introduced to each other by a friend.

43.     On November 8, 2016, Bethany Roe invited Andrew Doe to her sorority formal. Andrew Doe accepted.

44.     Prior to the formal, Andrew Doe sent Bethany Roe a text message asking if he was to meet her at a pregame party.  Roe gave Doe the address for an apartment where they should meet and mentioned that she could bring her own alcohol for the party.

45.     The two students attended Bethany Roe's sorority formal and had an enjoyable time together.

46.     Several weeks after Bethany Roe's sorority formal, Andrew Doe asked Roe if she would like to attend his fraternity's Christmas party.  Roe accepted and asked for details about the party. Doe informed her that the fraternity house would be loaded knee deep in packing peanuts and each couple would get several bottles of champagne.  Knowing this, Roe responded, "oh damn that sounds fun!"

47.     In addition to accepting Andrew Doe's invitation, Bethany Roe helped Doe find dates for his fraternity brothers.  Roe also agreed to go to a "pre-game" party with Doe and some of his friends.

48.     Prior to the pre-game event, Andrew Doe asked Bethany Roe what kind of drink she would like.  Roe responded, "vodka is good hah".

49.     Andrew Doe and Bethany Roe went to the pre-game party together on December 2, 2016.  At 8:02 p.m. Roe sent a text message to a friend complaining that no one at the pre-game was drunk, but that her date had "bought sky vodka lol".

50.     At approximately 9:00 p.m., Andrew Doe and Bethany Roe took a cab to the fraternity Christmas party.  While at the fraternity party, Doe and Roe drank champagne, socialized and made out with each other.  Eventually, Doe asked Roe if she would like to go to his apartment. Roe said yes.

51.     At approximately 10:30 p.m., a taxi driver picked Andrew Doe and Bethany Roe up at the fraternity party and took the couple to Doe's apartment.  During the cab ride, Doe and Roe made out in the backseat.  Roe never said she did not want to go to Doe's apartment, nor did she ask the cab driver to take her home.  Upon arrival at Doe's apartment, Roe did not hesitate to go inside with Doe.

52.     Once inside Andrew Doe's apartment, Bethany Roe sat down an unopened bottle of champagne that she had been carrying.  The bottle slipped from where it had been placed and crashed onto the floor.  Together, Doe and Roe attempted to pick up the glass shards.  While doing so, they started kissing again.

53.     As Andrew Doe and Bethany Roe were making out, Roe put her hands into Doe's pants.   She then informed Doe that her friends were coming to get her, so they would need to make "it" quick.  Prior to this, Doe did not know that Roe had already arranged to be picked up.  Doe asked Roe if she would prefer to spend the night, but Roe declined.

54.     Andrew Doe and Bethany Roe continued making out and made their way into the bedroom.  Roe unbuckled Doe's belt and untucked his shirt.  Doe then unbuttoned his shirt, took his pants off, and got into bed with his underwear on.  Roe removed her shoes, climbed on top of Doe and began kissing him again.  Together they removed Doe's underwear.

55.     After Andrew Doe's underwear was taken off, Bethany Roe rolled off of him and removed her own underwear.  Roe then pulled up her dress and got back on top of Doe.

56.     While Bethany Roe was on top of him, Andrew Doe attempted to guide his not fully erect penis into Roe.  When he was unable to do so, Roe grabbed Doe's penis and guided it herself.   The two eventually rolled over and continued with consensual intercourse in the missionary position.

57.     At no time during their interaction did Bethany Roe ever tell Andrew Doe to stop touching her or provide any indication that she did not want to continue with their sexual activity. Not only did Roe voluntarily consent to the interaction and intercourse, she was physically assertive and instigative during the encounter and removed portions of Doe's clothing, climbed on top of Doe and grabbed his penis.

58.     When Andrew Doe and Bethany Roe realized Roe's friends had arrived, Roe advised that she needed to leave.  The two got up and Doe went to the bathroom to wash his hands, while Roe put on her underwear.  As Doe was washing his hands, Roe came up behind him and grabbed his bare buttock.  Doe then put on basketball shorts and escorted Roe downstairs so that she could meet her ride.  The two-kissed goodnight and before Roe left, Doe asked Roe if he could call her again. Roe said yes.

59.     After saying goodnight to Bethany Roe, Andrew Doe returned inside, where he fell asleep on the couch.

60.     At approximately 11:30 p.m. on December 2, 2016, a friend of Bethany Roe's roommate contacted local law enforcement to report that Roe had been taken to Doe's apartment against her will and was sexually assaulted.  Law enforcement went to Doe's apartment and awakened him to inquire about the incident.  Confused and shaken, Doe complied with officer requests and explained that he and his date had consensual sex.

61.     Just as Andrew Doe was awakened by law enforcement, so too was Bethany Roe. Although Roe did not call the police herself, law enforcement showed up at her dorm room after she had gone to bed, due to the call that had been received.  Roe's roommate woke her up and Roe agreed to go to the hospital for an examination.

62.     At the hospital, Bethany Roe was examined.   In the presence of law enforcement, Roe told her treating physician that she was "hooking up" with Andrew Doe when her friends had arrived at Doe's apartment.  Roe reported that she ***did not*** believe she was sexually assaulted by Doe. Rather, both Roe and Doe had been drinking and ***the decision to have sex was mutual.***  Roe advised her treating physician that she thought her friend had called law enforcement because she was concerned and did not understand what was going on.  Roe also advised that Doe did not try to stop her from leaving at any time and never used any type of force on her.

**The University's Investigation**

63.     Upon information and belief, in December 2016, while Bethany Roe was at the hospital, a representative of the University of Mississippi's Title IX office was present.

64.     On January 30, 2017, Defendant Ussery, the Title IX Coordinator for the University, interviewed Bethany Roe.

65.     It was not until February 9, 2017, that Defendant Ussery emailed Andrew Doe to first advise Doe that he had been named in a Title IX investigation.  Doe did not meet with Ussery regarding the matter and was never provided with any specifics regarding the allegations by Ussery, nor was he asked to identify potential witnesses or submit any evidence.

66.     On February 28, 2017, Defendant Ussery submitted an investigative report to Defendant Murry, Director of Conflict Resolution and Student Conduct.  The report contained summaries of student interviews prepared by Ussery and copies of police reports relating to the event.

67.     Defendant Ussery's written report did not address or summarize the statements made by Bethany Roe to her physician or the police despite these statements containing highly exculpatory information.  The report did not evidence any attempt by Ussery to interview the

responding officers, persons who attended the pre-game party with Roe and Andrew Doe, or persons the couple spent time with at the party.  Furthermore, the cab driver who took Roe and Doe to the fraternity party and back to Doe's apartment was not interviewed and there was no assessment of any text messages or phone calls between Doe, Roe, the cab driver or Roe's roommate.  The written report simply summarized statements attributed to Roe's friends who were not present at the date party with Doe and Roe that evening, nor present when Doe and Roe engaged in mutually consensual sexual activity.

68.     No recorded, handwritten or typed statements (sworn or unsworn) from any of the witnesses were included with Defendant Ussery's report, nor was a statement from Andrew Doe.  The report did not address nor contain Roe's medical records which clearly indicated Roe did not believe she was raped.  Similarly, copies of relevant and exculpatory text messages were not included.

69.      In March 2017, Defendant Murry, met with Andrew Doe for an "intake meeting".  At this meeting, Murry informed Doe that the University Judicial Council would be holding a hearing to consider the allegations made against him.  Doe asked Murry why the Title IX proceeding was going forward in light of the fact that Bethany Roe confirmed the sexual activity between the two of them was mutually consensual.  Murry responded that "things seem pretty black and white".

70.     The hearing before the University Judicial Council was scheduled for March 31, 2017.  Prior to the hearing, Doe was not informed that he had the right to know the identity of the panel members or the right to challenge a panel member.  No one with the University was assigned to advise Doe, advocate on his behalf or otherwise guide him through the investigative and hearing process.

71.     When Andrew Doe arrived for his hearing, he learned that all panel members had not yet been selected.  The hearing was delayed in order for the University to find a third panel member.  Approximately fifteen minutes before the hearing actually began, one of the panel members was presented with the case file for the first time.

72.     Unbeknownst to Doe, one of the female panel members selected by the University to preside over his hearing had previously mocked the defenses raised by men accused of sexual assault.  The University and Defendant Murry facilitated and acquiesced in the placement of a panel member who had known, public, and demonstrated gender bias in the context of sexual misconduct proceedings in favor of female students against male students.

73.     While waiting for the hearing to begin, Defendant Murry informed Andrew Doe that multiple attempts had been made to contact Bethany Roe, but that Roe did not want to have anything to do with the proceeding. As such, the proceeding went forward in her absence.

74.     Andrew Doe was denied the most basic procedural due process during the Title IX investigation and hearing.  Doe was not allowed to subpoena witnesses to attend the hearing, nor have a representative speak on his behalf.  Neither Bethany Roe nor ***any*** of the witnesses interviewed by Defendant Ussery were present at the hearing.  Ussery's report summarizing her interviews with Roe's friends was given to the Council by Defendant Murry.  Doe was denied any and all opportunity to cross-examine Roe, the other witnesses and Ussery.  Ussery's report summarizing unsworn witness statements, was taken at face value without regard for completeness or accuracies of the summaries, contradictions by witnesses or any opportunity for cross-examination of the witnesses or Ussery by Doe or the hearing panel.

75.     Andrew Doe was the only person who testified at the hearing.  Doe testified that the sexual activity between himself and Bethany Roe was consensual.  Doe also provided the Council with additional exculpatory evidence.

76.     The information provided to the University Judicial Council by Andrew Doe included a written summary of a statement provided the owner of Randall's Taxi Service in Oxford, Mississippi, to an investigator, and the results of a polygraph examination Doe had voluntarily taken.

77.     When interviewed, Lacey indicated that on the night in issue he drove Andrew Doe and Bethany Roe from a pre-game party to a fraternity party and then from the fraternity party to Doe's residence.  On the ride to Doe's residence, Doe and Roe were "making out" in the backseat. Lacey described Doe and Roe as both being "into it".  Lacey never heard Roe object and noted that upon arrival at Doe's residence, Roe did not hesitate to go inside.  The Council was informed that the interaction between the two led Lacey to believe that the couple was about to have sex.

78.     The polygraph report that was provided to the University Judicial Council discussed the polygraph examination of Andrew Doe that was performed by a trained investigator and polygraph examiner the day before Doe's hearing.  The polygraph examiner who conducted Doe's examination previously worked as the Chief and Program Manager of the Federal Bureau of Investigation Polygraph Unit at F.B.I. Headquarters in Washington, D.C.  and has over 25 years investigative experience with the F.B.I.   The report indicated that in response to questions about whether or not Doe forced Bethany Roe to have sex with him, Doe's answers were consistently "No," and no deception was indicated.

79.     Despite being presented with Andrew Doe's testimony, the statement of taxi driver and polygraph test results, the University Judicial Council only asked three questions during the

hearing.  One of these was a request for Doe to explain why Bethany Roe would have made up the allegations.  This question improperly attempted to shift the burden of proof and clearly indicated that the Council put more credibility in the summarized allegations attributed to a female student who had failed to appear, than a male student who appeared and testified.  Furthermore, it evidenced the fact the Council was not drawing any negative inference about Roe's refusal to attend the hearing, despite the fact such inferences are drawn with male students who fail to appear or testify.

80.     The University Judicial Council met for approximately 15 minutes before issuing an initial determination against Doe.  When Doe returned to the hearing room, he learned a male panel member had been permitted to leave prior to the end of the proceeding.   The two remaining panel members, inclusive of the female who exhibited a pre-existing bias, issued a finding of "Responsible" against Andrew Doe and expelled him from the University.  These panel members offered no explanation for their finding at the hearing.

81.     In April 2017, an initial determination letter was issued. The letter advised Doe of the "Responsible" finding but did not provide a rationale for the finding or any discussion of inculpatory or exculpatory evidence considered by the University Judicial Council.  Additionally, the letter did, nor offer an explanation for the severe sanction of expulsion.

82.     Following receipt of the initial determination letter, Andrew Doe submitted an appeal to the University, as the finding against him was arbitrary and capricious, was contrary to the substantial evidence and it had no basis in the facts presented.

83.     Ultimately, the University modified the disciplinary sentence given to Andrew Doe from an expulsion to a suspension until fall 2020.   Again, no explanation for the modification of the finding or the severity of the disciplinary action was provided.

84.     The University's determinations were rendered without proper consideration of exculpatory evidence or the contradictions between the allegations and Bethany Roe's statements to her doctor in the presence of law enforcement.   In addition, the sanctions issued against Andrew Doe did not take into consideration the fact this was the first allegation made against him, he was a good student and he did not pose a threat to Bethany Roe.

85.     On September 22, 2017, the U.S. Department of Education, Office of Civil Rights released a notice addressing the ongoing deprivation of rights for many college students who have been accused of sexual misconduct. The Office of Civil Rights advised that certain procedures for resolving sexual misconduct complaints at universities lacked the most basic elements of fairness and due process and are overwhelmingly stacked against the accused.

86.     The Defendants were aware of the Department of Education's pronouncement and concerns about what was characterized as the denial of "the most basic of due process rights", yet elected not to modify their unconstitutional policies or practices and/or rectify the erroneous determinations and disproportionate sanctions issued to Andrew Doe and other males.

87.     Specifically, on October 10, 2017, the University issued a written statement advising it would not be making any changes to policy, procedure or to Title IX cases. The University and Defendants Murry and Ussery purposefully and deliberately chose not to address the unlawful policies and practices of their offices or further consider Doe's pending discipline. Similarly, other male students at the University were subjected to the same deliberate indifference to their due process and equal protections rights and continuing gender bias.

**Title IX and the Policies, Practices and Customs of the University, both facially and as applied**

88.     All public and private elementary and secondary schools, school districts, colleges, and universities receiving any federal financial assistance must comply with Title IX.

89.     Upon information and belief, the implemented standards, criteria, and policies employed and guiding the University were exercised under the auspices of, and pursuant to the U.S. Department of Education's Office for Civil Rights April 4, 2011 "Dear Colleague Letter" on student-on-student sexual harassment and sexual violence (also hereafter referred to as "Dear Colleague Letter").      (This   Dear   Colleague   Letter   is   available   at http://www2.ed.gov/print/about/offices/list/ocr/letters/colleague-201104.html).

90.     The 2011 Dear Colleague Letter and the 2014 guidance required schools to adopt a minimal standard of proof when administering student discipline.  The 2011 Letter discouraged cross-examination by the parties and suggested that to recognize a right to such cross examination might violate Title IX.  Furthermore, the 2011 Letter limited any due process protections given to accused students as it directed that no unnecessary delay should exist when resolving charges.

91.     The University of Mississippi policy "Sexual Misconduct" - DSA.SC.200.075 provides for and establishes the role of the Title IX Coordinator in overseeing policies and procedures that apply to sex discrimination (including sexual harassment, sexual assault, and sexual violence) by students. By the terms of DSA.SC.200.075, the "Title IX Coordinator investigates sexual misconduct by students." Policy DSA.SC. 200.075 also allows the Title IX Coordinator to " decide whether there is sufficient evidence of sexual misconduct such that the complaint needs to be forwarded to the Office of Conflict Resolution and Student Conduct for a hearing." University policy, custom and practice also allows the Title IX Coordinator herself to be a witness against the accused, allowing her to comment in her testimony on" ... inconsistencies found during the investigation and on the credibility of witnesses interviewed."

92.     In addition, as the University of Mississippi's Title IX Coordinator, Defendant Ussery is responsible for policy development and training with respect to Title IX matters at the University.

93.     Defendant Ussery, the Title IX Coordinator who conducted the investigation into this matter, has exhibited considerable bias in her investigation of this and other Title IX matters. Her bias adversely impacted the investigation, the finding of responsibility and the imposed sanction. Ussery has developed biased Title IX training for the University and ignored or excluded exculpatory evidence from her reports during the course of investigating allegations of sexual misconduct involving males.

94.     The training on Sexual Misconduct, Relationship Violence and Stalking, given to University Judicial Council panel members exhibits bias in favor of a complainant. The training gives the impression that all touching, and penetration is forbidden or, at the very least, suspect and advises that the lack of protest or resistance does not constitute consent, nor does silence. Members of the University Judicial Council are trained to ignore a lack of resistance by the complainant, to ignore a lack of protest by the complainant and to ignore silence and participation by the complainant. Furthermore, the training specifically instructs that in certain circumstances when both parties are intoxicated, University findings are to be made for the complainant.

95.     University Judicial Council members are trained that complainants sometimes don't believe they are "victims" and that when complainants withhold exculpatory details or lie to an investigator or the hearing panel, those lies should simply be considered a side effect of an assault.

96.     The training on Sexual Misconduct, Relationship Violence and Stalking, given to University Judicial Council panel members exhibited bias in favor of a Complainant. These

materials advised the panel members that "victims" sometimes withhold facts and lie about details, question if they've truly been victimized and "lie about anything that casts doubt on their account of the event."  University Judicial Council members were trained to ignore a lack of resistance by Bethany Roe, to ignore a lack of protest by Roe and to ignore silence and participation by Roe. Additionally, the University panel members have been trained that complainants sometimes don't even believe they are "victims" and when Complainants withhold exculpatory details or lie to an investigator or the hearing panel, those lies should simply be considered a side effect of an assault.

97.    Furthermore, the training provided to the University's Appellate Consideration Board does not instruct panel members upon the proper standard of proof. Instead of instructing members of the definition of "preponderance of the evidence" standard the University supposedly follows, training given to panel members instructs that they "just need to have *some* evidence to justify the outcome" (emphasis added) and should only consider an appeal if there is overwhelming evidence in the other direction.

98.    The intermingled and inherently conflicting duties of Defendant Ussery as the University's Title IX Coordinator, adopted by policy and as applied to Andrew Doe, violated Doe's due process rights, his equal protection rights and Title IX.  Defendant Ussery served in the multiple and inherently conflicting roles of initiating Title IX investigations, advocating for the female student, investigating the alleged events, being permitted to submit a summary report of findings to the panel without supporting written or sworn statements from witnesses, training and advising the University's Judicial Council, and developing policy for the University.

99.    Andrew Doe's interest in preserving his educational status and reputation in the face of a serious sexual misconduct charge was compelling.  The risk of erroneous deprivation of this interest was exacerbated by Ussery's inherently conflicting roles.  These roles substantially

and materially lessened the University Judicial Council's adjudicatory autonomy and compromised the integrity of the adjudicatory process.

100.    Upon information and belief, Andrew Doe was found Responsible for sexual misconduct in part or wholly because he proceeded with sexual activity while his female companion was under the influence of alcohol. However, Doe's female companion was not subjected to the same type of investigation or disciplinary action for her role even though Doe was also under the influence.

101.    Upon information and belief, when heterosexual couples engage in sexual activity while under the influence of alcohol at the University of Mississippi, males will be found Responsible for sexual misconduct and females will be considered "victims".

102.    While the term "complainant" is used in the University's policies, in practice and custom, the term refers to and used with respect to female complainants and a gender bias against male students exists.

103.    In a 2017 interview with Mississippi Public Broadcasting, Honey Ussery was asked about false allegations of sexual misconduct.  Ussery could not advise of any occasion where her office has ever taken action against a complainant for a false accusation and stated that she believes the only time she's seen a false accusation of sexual assault has been in cases where there has been no "respondent"  actually named.   Ussery also stated that she has never seen a case involving "regret sex".    These statements indicate that accusations by female students that are brought before Ussery are overwhelmingly, if not entirely, presumed to be meritorious.

104.    Additionally, during the course of another 2017 Title IX investigation at the University of Mississippi, a female accuser admitted to trying to set up a male student and offering to perform oral sex on him.  The female student showed up at his dormitory and engaged in sexual

26

relations with him, only to later accuse him of assaulting her.   During the course of the investigation, Ussery repeatedly referred to the female student as the "victim" and informed a witness that she had no obligations to the male student who was under investigation, despite the fact her role was to act as a neutral investigator.  The University's Appellate Consideration Board found that Ussery presented the case to the University Judicial Council in a biased manner and that the University Judicial Council may have ignored exculpatory evidence.

105.    The stereotyping and bias of the Defendants created a hostile environment and adverse setting for males accused of sexual misconduct at the University of Mississippi.  The pattern and practice of the University of subjecting male students such as Andrew Doe to biased investigations and stereotyping results in unlawful discipline and denial of constitutional rights.

106.    Andrew Doe was subjected to an inequitable grievance and appeal process.  The determination and decision by the University's Judicial Council and the Appellate Consideration Board was not supported by substantial evidence, was arbitrary and capricious, unconstitutional, an abuse of discretion or otherwise not in accordance with law, beyond the power and legal authority of the University Judicial Council under a proper application of law and fact and was discriminatory.

107.    The University's Sexual Misconduct / Student Conduct statement contained in University of Mississippi policy provides that before a proceeding, the complainant and respondent will both have the opportunity to see a list of board members who will serving as fact finders and may request recusal of any believed to be biased.  This language necessarily implies that the parties will be able to see a list of board members significantly in advance of the hearing to have time to review the list and provide feedback to the University.

108.    Not only was Andrew Doe not apprised of the panel members until minutes before his disciplinary hearing, the panel members had not yet been selected until after the scheduled hearing time. Doe was never informed he had a right to learn the names of the panel members in advance of the hearing or to request the recusal of any panel members.

109.    The University's Student Conduct policy statement regarding the Adjudication Process indicates that all relevant information will be considered by the University Judicial Council.  However, Defendant Ussery did not identify, preserve, or consider exculpatory evidence in her report.

110.    The University's Sexual Assault Response Guidance Resources for the Accused state that silence may be used as inference of responsibility at the conduct hearing.  The University's policy "University Conduct Process" – DSA.SC.300.010, in Section 4(j) thereof, mandates and prescribes that "[r]efusal to respond to questions posed during a hearing may lead to an adverse inference by the hearing panel concerning the subject matter of the question posed, and this adverse inference, if applicable, may be one factor considered by the hearing panel in making its decision."  The standard applied by the customs, policies and practices of the University inherently mandates an involuntary and compulsory waiver of the Plaintiff's constitutional rights because silence by Andrew Doe at his disciplinary hearing would have equated to an adverse inference and a tacit admission of wrongdoing, without proper constitutionally-mandated safeguards.

111.    In addition to the fact that the standard applied by the customs, policies and practices of the University mandate involuntary and compulsory waiver of the Plaintiff's constitutional rights, the standards are biased and unequally applied.   Despite the fact that the University Conduct Process proscribes that the refusal to respond to questions posed at the hearing

hearting may result in an adverse inference against the accused, the policy is not applied to female accusers.  Bethany Roe did not attend the hearing and could not respond to any questions at all.  However, no adverse inference was made against her.   Upon information and belief, the policy has never been applied against a female accuser.

112.    University of Mississippi policy DSA.SC.200.075 provides that "[t]he standard of proof for all cases involving sexual misconduct will be based upon the University's established standard of preponderance of the evidence."   The use of the "preponderance of the evidence" standard as the threshold legal standard for an adjudication of "Responsible" or guilty under the totality of the circumstances presented is illegal and unconstitutional and was/is arbitrary and capricious.

113.    While the purported guarantee provided by the University's "University Conduct Process" provides that "[a]s the parties present information for the panel's consideration, members of the hearing panel (including the chair), the respondent, and the complainant, when applicable, may ask questions of the parties and other witnesses concerning the information presented or other information pertinent to the charge" – in custom, policy and practice, a respondent is not allowed to actually ask questions himself.   This mechanism is the Respondent's sole means under University of Mississippi policies DSA.SC.200.075 and DSA.SC.300.010, as applied, and the University of Mississippi's Office of Conflict Resolution and Student Conduct's Title IX "Hearing Script," for a Respondent to cross-examine either the Complainant or any of the witnesses against him.

114.    During the University's hearing process, Andrew Doe was not allowed to cross-examine Bethany Roe or *any* other witness.   Doe was not permitted to subpoena witnesses for

attendance and the University did not ask and/or require Bethany Roe or any person allegedly interviewed by Defendant Ussery to attend the hearing.

115.    The University's policies and the University's Office of Conflict Resolution and Student Conduct's Title IX do not apply any rules of evidence and allow hearsay evidence and other inherently unreliable evidence of sexual misconduct.  The University allowed Defendant Ussery to submit summaries of the limited interviews she conducted to the Council for consideration, despite the fact the witnesses were not placed under oath and the accused could not listen to the interviews, see transcripts of the interviews or cross-examine the witnesses or Ussery.

116.    The University's Judicial Council improperly used (and continues to use) the preponderance of the evidence standard to determine whether an individual is responsible for violating the University's Sexual Misconduct policy.  In addition, the training provided by the University sets forth an incorrect statement of the preponderance of the evidence standard.

117.    The University's policies and procedures, both facially and as applied, violated Andrew Doe and other male students' due process and equal protection rights.   In a public address of September 7, 2017, Betsy DeVos, Secretary of the United States Department of Justice expressed concerns that the approach pushed by the U.S. Department of Education for the previous several years had exerted improper pressure on universities to adopt Title IX procedures that did not afford fundamental fairness to all students.  Secretary DeVos advised that she thought the system was failed and imposed policy without even the most basic safeguards.

118.    In a September 22, 2017, Dear Colleague Letter, the U.S. Department of Education, Office of Civil Rights released a notice stating that while the 2011 and 2014 guidance documents may have been well intentioned, they have led to the deprivation of rights for many students and they have denied fair process to accused students. The Office of Civil Rights advised that the April

2011 Dear Colleague Letter's "improper pressure upon universities" resulted in universities developing procedures for resolving sexual misconduct complaints that lacked the "most basic elements of fairness and due process, are overwhelmingly stacked against the accused, and are in no way required by Title IX law or regulation."

*See* https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf

119.    The Defendants were aware of the announcement by the Secretary of Education Betsy DeVos and the Department of Education's new guidance.  Despite this, the Defendants elected not to modify their unconstitutional policies or practices and/or rectify the erroneous determination and disproportionate sanctions issued to Andrew Doe and other males.

120.    On October 10, 2017, a formal statement was posted by the University expressly indicating the University had not made any policy or procedural changes related to Title IX cases.

121.    The investigation of Doe and the multiple hearings he has been through have been riddled with bias, a failure by the University to abide by Department of Education guidelines and a conscious and deliberate disregard for Doe's Constitutional rights by each of the Defendants.

## COUNT ONE

## VIOLATION OF TITLE IX

122.    Andrew Doe hereby incorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 121 as if set forth fully herein.

123.    Title IX of the Education Amendments of 1972, codified at 20 U.S.C. §1681, *et seq.* provides, in relevant part:

> No person in the United States shall on the basis of sex, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

124.    Title IX of the Education Amendments of 1972, codified at 20 U.S.C. §1681, *et seq.* applies to all public and private educational programs and institutions.

125.    The State of Mississippi, IHL and the University of Mississippi are recipients and/or subrecipients of federal funds for the purpose of Title IX.  Furthermore, as a condition of receipt of such federal funds, these Defendants and the Board of Trustees of IHL, the Chancellor and the Commissioner of Higher Education are imbued with the responsibility to insure the programs and activities at the University of Mississippi are administrd in a lawful and non-discriminatory manner.

126.    "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *See Yusuf v. Vassar* College, 35 F.3d 709, 715 (2nd Cir. 1994).

127.    A state is not immune under the Eleventh Amendment of the Constitution of the United States from suit in federal court for a violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et. seq.* or the provisions of any other federal statute which prohibits discrimination by recipients of federal financial assistance.

128.    42 U.S.C. § 2000 d-7 contains an express statutory abrogation of Eleventh Amendment immunity for Title IX suits.  This aggregation is a valid exercise of Congress' power under the spending clause to impose unambiguous conditions on states receiving federal funds.  By enacting §2000 d-7, Congress puts states on notice that accepting federal funds waived their Eleventh Amendment immunity to discrimination suits under Title IX.  Furthermore, §2000 d-7 is a valid exercise of Congress' power under §5 of the Fourteenth Amendment.  It is the position of the Department of Justice that §2000 d-7 is an unambiguous abrogation which gives states express notice that a condition of receiving federal funds is the requirement that they consent to suit in federal court for alleged violations of Title IX and other statutes.

129.     In *Cannon v. The University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed. 560 (1979), the United States Supreme Court held that private individuals have an implied right of action under Title IX and that damages are available in such lawsuits.   In addition, the U.S. Supreme Court has ruled that monetary damages are available in private Title IX actions involving intentional violations.  *See Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). Remedies for a violation of Title IX by a university include compensatory damages, injunctive relief and attorney's fees.  *Id.*

130.     The United States Supreme Court has ruled that, "the award of individual relief to a private litigant who has prosecuted [his] own suit is not only sensible, but it is also fully consistent with and in some cases even necessary to the orderly enforcement of the [Title IX]. *See Cannon,* at 706-707.

131.     The University receives federal financial assistance and is subject to Title IX.   The University's imposition of discipline where gender is a motivating factor in the investigation and/or decision to discipline is thus enforceable through a private right of action.

132.     The IHL, the University and the State had an obligation under Title IX to make sure that adequate training as to what constitutes sexual harassment and alleged sexual assaults was provided by the University.

133.     The Department of Education has recognized that the procedures adopted by a university covered by Title IX must afford due process to all parties involved.  The United States Supreme Court has found that the reason why due process matters is so that cases are not decided "on the basis of erroneous or distorted conceptions of the law or the facts".  *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980).

134.     Pursuant to Title IX of the Education Amendments of 1972, Andrew Doe has a right to pursue his education free from discrimination by the University and the other Defendants on the basis of his sex.

135.     In violation of Title IX of the Education Amendments of 1972, Andrew Doe has wrongfully subjected to a University disciplinary proceeding marked by procedural flaws, sex based biased, and selective enforcement.

136.     Andrew Doe was subjected to an erroneous outcome by the Defendants with respect to the investigation and discipline issued against him in this matter, in violation of Title IX.  Doe was wrongly found to have committed sexual assault and gender bias was a motivating factor.

137.     The denial of due process and gender bias that existed throughout the investigation and enforcement of discipline against Andrew Doe resulted in an erroneous outcome that was based on flawed and distorted facts and/or application by the Defendants.  The Defendants failed to conduct an adequate, reliable and impartial investigation.  The investigation was biased against Doe, based upon his gender, and deprived him of material information necessary to meaningfully participate in the investigation and adjudication process.

138.     Defendant Murry and Defendant Ussery limited Andrew Doe's ability to have a fair and impartial investigation and hearing.  They deliberately, recklessly and intentionally instituted and promoted inequitable investigations, biased training and procedurally inadequate disciplinary proceedings.  These Defendants ignored exculpatory evidence and treated male students, including Doe, more adversely than females in the course of University investigations and disciplinary proceedings.

139. The Defendants did not weigh the evidence in Andrew Doe's favor and excluded exculpatory evidence from their consideration. Furthermore, the sanction that was issued against Doe was arbitrarily imposed without any explanation or rationale by the University.

140. The University Judicial Council and previous proceedings evince gender bias against the Andrew Doe, as a male student, as part of a pattern of decision-making whereby the disciplinary procedures governing sexual assault claims are discriminatorily applied in favor of guilt on the part of the male students.

141. Upon information and belief, male students in sexual misconduct cases at the University are discriminated against solely on the basis of their sex. Male students are presumed guilty and certain exculpatory evidence is excluded from consideration. In situations where both students are under the influence of alcohol, the male student is presumed to have engaged in sexual misconduct regardless of whether the female actively participated or initiated sex.

142. The totality of the circumstances establishes that the Defendants acted out of a gender bias in reaching the erroneous outcome in this matter and have demonstrated a pattern of inherent and systemic gender bias and discrimination against male students who are accused of sexual misconduct at the University. Individuals who support the male students are targeted or ignored.

143. The University's failure to consider exculpatory evidence or to detail the rationale for the results of the hearing and the sanctions issued against Andrew Doe establish the inequity of the proceedings, violate the Cleary Act and are contrary to the most recent guidance of the Department of Education.

144. An equitable investigation of a Title IX complaint requires a trained investigator to analyze and document the available evidence to support reliable decisions, objectively evaluate

the credibility of the parties and witnesses, and synthesize all available evidence- including inculpatory and exculpatory evidence- and to consider the unique and complex circumstances of each case. *See September 2017 Q&A*, *citing* 2001 Guidance at (V)(A)(1) -(2); *See also* 34 C.F.R.§668.46 (k)(2)(ii). Absent review of exculpatory evidence, an investigation is inequitable.

145.   The University knew, or in the exercise of due care should have known, that at least one member of the University Judicial Council lacked training to carry out the responsibilities set forth in the disciplinary enforcement requirements of Title IX.

146.   As set forth in the Department of Education's September 2017 Q & A on campus sexual misconduct, issued by the Office of Civil Rights, the Clearly Act requires that post-secondary institutions must provide simultaneous written notification to both parties of the results of the disciplinary proceeding. The notification must include any initial, interim or final decision by the institution, any sanctions imposed by the institution and the rationale for the results and the sanctions. *See* 34 CFR §668.46 (k)(3)(iv). In addition, the September 2017 Q & A on Campus Sexual Misconduct provides states that any rights or opportunities that a school makes available to one party during the investigation should also be made available through the other party on equal terms. *Citing 2001 Guidance* at (X). A school may not restrict the ability of one party to discuss the investigation and restricting the ability of either party to do so through gag orders or similar directives is, in the eyes of the Office of Civil Rights, likely to deprive the parties of the ability to obtain and present evidence or otherwise defend their interest and is likely to be considered inequitable.

147.   Contrary to the requirements of the Cleary Act and the Department of Education's guidance, the University's determination letter failed to include any discussion of the inculpatory or exculpatory evidence considered or any rationale for the sanction imposed.

148.    The University's policies and procedures, as implemented and carried out in practice and custom, fail to meet the standards required by Title IX regarding how universities conduct disciplinary proceedings and sanctions.

149.    In violation of Title IX of the Education Amendments of 1972, Andrew Doe has been wrongfully subjected to sanctions by the University and State as a result of the biased and flawed disciplinary proceedings.

150.    Upon information and belief, the Defendants had knowledge that the policies of the University were in violation of Title IX, biased against male students accused of sexual assault and void of due process protections, yet deliberately failed to remedy the situation.

151.    IHL and the University knew or should have known that the actions and omissions of Defendant Murry and Defendant Ussery posed an unreasonable risk of the denial of due process and gender discrimination with regard to Andrew Doe and other male students accused of sexual assault.

152.    The investigation and discipline of Andrew Doe was discriminatory and based upon Doe's gender.

153.    As a direct and proximate result of these facts and omissions of the Defendants, Andrew Doe has suffered and continues to suffer harm.  Doe is entitled to declaratory relief, an injunction enjoining violations of Title IX by the Defendants in the process of investigating and adjudicated sexual misconduct complaint, and full and immediate reinstatement at the University. Doe is entitled to have any finding of responsibility wholly and permanently expunged from his academic record and to a seal of all such proceeding to protect against subsequent disclosure to any other person or academic institution. Additionally, Doe is entitled to damages in an amount to

be determined at trial, plus pre-judgment interest, attorney's fees, expenses, costs and disbursements.

154.    All damages available to Andrew Doe pursuant to Title IX are also available as a consequence of the University's breach of contract with the University, and/or IHL and/or State.

## COUNT TWO

**VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION, BROUGHT PURSUANT TO 42 U.S.C. §1983**

155.    Andrew Doe hereby incorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 154, as if set forth fully herein.

156.    The Fourteenth Amendment of the United States Constitution provides that no person shall be deprived of life, liberty, or property without due process of law.  U.S. Const. Amend. XIV, §1.4

157.    Pursuant to the Fourteenth Amendment of the United States Constitution, Andrew Doe, possesses a property interest in his status as a student at the University and his education, as well as a liberty interest in his reputation.

158.    42 U.S.C. §1983 creates a private cause of action for persons who are denied a federal constitutional or statutory right by a "person" acting under color of state law.   The Defendants are state actors who owe Andrew Doe protections consistent with the Fourteenth Amendment to the U.S. Constitution.

159.    Although due process is required in campus disciplinary cases, Andrew Doe's due process rights were denied by the Defendants.

160.    At all times herein, the Defendants were acting under color of state law, and their actions and omissions caused Andrew Doe to be subjected to a deprivation of his constitutional rights and suffer harm in violation of Title IX.

161.    The policies, practices and procedures of the University with respect to investigations and issuance of discipline towards the accused, both facially and as applied, violate clearly established Fourteenth Amendment due process law and are inconsistent with the Department of Education guidelines.

162.    The policies, practices and customs of the University which were adopted, implemented, maintained and sanctioned by the University and its policymaking official(s) were the moving force behind the deprivation of Andrew Doe's constitutional rights and were adopted, maintained and applied with deliberate indifference to the rights of Doe and other similarly situated male students.

163.    The Defendants' conduct violated Andrew Doe's substantive and procedural due process rights by denying Doe fundamentally fair disciplinary procedures, the right to a meaningful opportunity to clear his name and by irreparably damaging his right to pursue his education and future career opportunities.

164.    After learning of the developments from the U.S. Department of Education, including redaction of former guidance and a statement by the Secretary of Education that previously endorsed procedures likely caused violations of students' constitutional rights, the Defendants deliberately took no steps to modify the policies, procedures or training within the Title IX office. In addition, the Defendants deliberately refused to address the ongoing gender bias and denial o due process in pending Title IX cases.

165.    In September and/or October 2017, the Defendants deliberately decided not to reconsider, modify or rectify the procedural deficiencies associated with Andrew Doe's case, thus allowing his suspension to be upheld.

166.    Defendant Ussery knowingly, deliberately and intentionally refused to accept certain evidence presented by Andrew Doe for consideration and refused to consider such evidence in a supplemental submission to the hearing Council.   In addition, when questioned about her potential bias Ussery informed a student that she had no obligations to the male student.

167.    Defendant Ussery and Defendant Murry knew or should have known of the requirements of Title IX and the substantive and procedural due process rights to which Plaintiff and others are entitled.  Despite this knowledge and the clearly established nature of both statutory and constitutional mandates, they acted with deliberate indifference towards those rights.

168.    As a direct and proximate result of the actions and omissions of the Defendants, Andrew Doe has suffered and continues to suffer damages, including but not limited to, loss of educational opportunity, classroom time, loss of future income, liberty and property deprivations, humiliation, and mental anguish.  Doe seeks recovery from the Defendants jointly and severally for the damages suffered.  Doe is entitled to declaratory relief, an injunction enjoining violations of Title IX by the Defendants in the process of investigating and adjudicated sexual misconduct complaint, and to immediate full reinstatement in good standing at the University. Doe is entitled to have any finding of responsibility wholly and permanently expunged from his academic record and to a seal of all such proceeding to protect against subsequent disclosure to any other person or academic institution.  Additionally, Doe is entitled to compensatory and punitive damages in an amount to be determined at trial, plus pre-judgment interest, attorney's fees, expenses, costs and disbursements.

169.    Andrew Doe further seeks and is entitled to punitive damages as against the individual Defendants as a result of their deliberate and intentional actions carried out with conscious disregard for the constitutional injury.

## COUNT THREE

**VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, BROUGHT PURSUANT TO 42 U.S.C. §1983**

170.    Plaintiff hereby incorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 169, as if set forth fully herein.

171.    The Fourteenth Amendment to the U.S. Constitution also provides that no state shall deprive any person of the equal protection of its laws. Gender discrimination by a state University constitutes a violation of the equal protection clause.

172.    At all times material to this Complaint, the Defendants were state actors. At all times material to this Complaint, the individually named Defendants were acting under color of state law.

173.    Andrew Doe's right to equal protection is guaranteed to him by the Fourteenth Amendment to the U.S. Constitution. The State and the arms of the State are obligated under the Fourteenth Amendment to provide Doe with equal protection with respect to disciplinary actions and decisions.

174.    The Defendants violated Doe's constitutional rights by depriving him of equal protection under the laws. Defendants Murry and Ussery acted intentionally, willfully, recklessly or with callous and deliberate indifference to Doe's constitutional rights.    The application of University policies and procedures was applied differently to males than to females and male students were not afforded the same protections as female students with respect to Title IX investigations and /or Student Disciplinary proceedings relating to sexual conduct.

175.    When the University, Defendant Ussery and Defendant Murry have been confronted with allegations of sexual misconduct involving female-male sexual activity, males are presumed guilty and exculpatory evidence is not fully considered.  When both parties are under

the influence of alcohol, the male is presumed guilty of sexual misconduct event when the female voluntarily participated or initiated it.

176.     Despite the fact that both Andrew Doe and Bethany Roe voluntarily went out with each other on December 2, 2018; voluntarily drank alcohol together and voluntarily "hooked up" with each other, Roe was assumed to have been assaulted even after she told police that the sexual activity between herself and Doe was mutually consensual.   Doe, the male, was disciplined for engaging in sexual intercourse with Roe while she was under the influence, but Roe was not disciplined for engaging in sexual intercourse with Doe while he was under the influence.

177.     Furthermore, although Andrew Doe was required to attend the University Judicial Hearing, Bethany Roe was not required to do so and did not attend.  University policy provides that the failure to appear can lead to an adverse inference and possible disciplinary action, yet no adverse inference was made with respect to Roe and Roe was not disciplined.

178.     Tracy Murry and Honey Ussery both knew that Bethany Roe had initially advised medical personnel and law enforcement that the sexual activity between herself and Andrew Doe was mutually consensual, yet they proceeded with disciplinary proceedings against Doe.

179.     Tracy Murry improperly interfaced with the University Judicial Council and refused to apply the rules of conduct equally to Doe as to female students.   Murry allowed a bias member of the judicial panel to preside over the hearings involving Doe and allowed a panel member to leave before a finding was made.   When inequities and procedural errors were raised, Murry took no action.

180.     As a result of the actions of the Defendants' actions and inactions, Doe's constitutionally protected right to equal protection has been violated and he has been damaged as set forth elsewhere in this Complaint.

## COUNT FOUR

### BREACH OF CONTRACT

181.    Plaintiff hereby incorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 180, as if set forth fully herein.

182.    Andrew Doe contracted with the State of Mississippi and the University of Mississippi for enrollment at the University of Mississippi and valid consideration was given for the enrollment agreement. As part of this agreement, the University, IHL, through its Board of Trustees and the State, contracted to provide Doe with access to its undergraduate programs and ultimately, to continued education and a degree and diploma.

183.    The University and/or IHL, through its Board of Trustees and/or Commissioner of Higher Education and/or State breached its contractual obligations to John Doe by failing to abide by the terms of the contract and the provisions of Title IX, subjecting Doe to a gender bias and failing to comply with its own policy and procedures, and by the adoption and implementation of unconstitutional customs, policies and practices in the implementation of Title IX at the University.

184.    As a direct and proximate result of the State and the University's conduct, Doe sustained damages including the inability to attend classes, and continue pursuit of his education, harassment, emotional distress and economic damages including attorney's fees, for which recovery is sought pursuant to 42 U.S.C. §1988 and otherwise.

185.    Alternatively, if the Court determines that an express contract between Andrew Doe and the University does not exist, after expiration of a 120-day waiting period following the service of the University with a tort claims notice, Doe will assert a breach of implied contract claim against the University, through an amended complaint.  Doe is not presently asserting such a claim, and this paragraph is added for notice purposes only.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Andrew Doe respectfully **demands trial by jury** and requests the following relief:

A.      The Court enter a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that the Defendants have violated Title IX and policies and practices of the University, both facially and as applied, violated both the due process and the equal protection clauses of the Fourteenth Amendment to the United States Constitution and breached its contract with Andrew Doe.

B.      The Court enter an injunction enjoining Defendants from violating Andrew Doe's Constitutional rights and rights established under Title IX, by continuing the discriminatory and unlawful disciplinary action that was issued against him, requiring the University immediately remove any indication of a disciplinary finding against Doe from his student records and prohibiting further disciplinary proceedings against him pending resolution of this matter.  Doe is entitled to have any finding of responsibility, and the record of the entire Title IX proceeding itself, wholly and permanently expunged from his academic record and to a permanent seal of all such proceeding to protect against subsequent disclosure to any other person or academic institution.

C.      Retain jurisdiction of this matter for the purpose of enforcing the Court's Order.

D.      Award Andrew Doe monetary relief in an amount to be determined by a jury but in excess of the minimum jurisdictional limits of this Court.

E.      Award Andrew Doe costs and other reasonable expenses incurred in maintaining this action, including reasonable attorney's fees as authorized by Title IX and 42 U.S.C. §1988.

F.      Grant such further relief as the Court may deem just, proper, and equitable.

RESPECTFULLY SUBMITTED, this the 16th day of May, 2018.

**ANDREW DOE,**
**PLAINTIFF**

By: ___*s/J. Lawson Hester*_____
   J. Lawson Hester

J. Lawson Hester (MS Bar No. 2394)
lhester@pbhfirm.com
Michelle T. High (MS Bar No. 100663)
mhigh@pbhfirm.com
Pettis, Barfield & Hester, P.A.
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
P.O. Box 16089
Jackson, Mississippi 39236-6089
Telephone: 601-987-5300
Facsimile: 601-987-5353