**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**ANDREW DOE**                                                               **PLAINTIFF**

**V.**                                                          **CIVIL ACTION NO. 3:18-CV-138-DPJ-FKB**

**STATE OF MISSISSIPPI; THE UNIVERSITY OF
MISSISSIPPI; STATE INSTITUTIONS OF HIGHER
LEARNING ("IHL"), ET AL.**                                      **DEFENDANTS**

**MEMORANDUM BRIEF
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Plaintiff Andrew Doe claims that the University of Mississippi and certain employees

infringed his constitutional and statutory rights when the University suspended him for violating

its sexual misconduct policy.[1] Doe's Second Amended Complaint fails to establish jurisdiction,

fails to state a claim, and should be dismissed.[2]

*1.*      ***Factual background***[3]

Andrew Doe and Bethany Roe were both undergraduate students at the University

during the Fall 2016 academic semester.[4] On December 2, 2016, Doe and Roe attended a

fraternity Christmas party together.[5] During the course of the evening, Roe became obviously

---

[1] In addition to the University, Doe also sued the State of Mississippi, the State Institutions of Higher
Learning and the Board of Trustees of the State Institutions of Higher Learning ("IHL"), each member of
the IHL's Board of Trustees ("IHL Board Members"), the Mississippi Commissioner of Higher Education
("IHL Commissioner"), the University's Chancellor ("the Chancellor"), and University employees Tracy
Murry and Honey Ussery (the "Individual Defendants").
[2] For the Court's convenience, Defendants have attached a matrix outlining Plaintiff's claims and their
threshold deficiencies as Appendix "A" to this Brief.
[3] For purposes of this Motion, Defendants accept Doe's well-pleaded allegations.
[4] Sec. Am. Compl., p. 13 [Doc. 9].
[5] *Id.*

intoxicated.[6] After leaving the party, Doe and Roe had sexual intercourse at Doe's off-campus apartment.[7]

That same night, the Oxford Police Department responded to a report that Doe had sexually assaulted Roe.[8] The responding officers interviewed a visibly intoxicated Roe, who indicated that she had been sexually assaulted but could not give an exact time frame for "when things started happening."[9] Roe stated that she had consumed both vodka and champagne, that she had no clue much she drank, but that she knew she drank a lot.[10] Roe went to the hospital for treatment and, while still intoxicated, was unable to clearly state to a physician whether she believed she had been sexually assaulted.[11] Roe told the physician that she was not sure if a condom was used, that they were both drunk and it was a mutual decision, and that she was drunk and didn't know what was really going on.[12]

The University's sexual misconduct policy prohibits "[s]exual intercourse, or sexual penetration, however slight, with any object or body part without effective consent."[13] The policy provides:

Sexual intimacy requires that all participants consent to the activity. Consent

---

[6] *See id.* at pp. 14-15.
[7] *Id.* at 16.
[8] See Ex. "B" (Honey Ussery Report), at Ex. "2", R. Franks Supp. Case Rep. p. 3; R. Franks Arr. Rep. p. 2.
[9] *Id.*
[10] *Id.*
[11] *Id.* at Ex. "2", M. Wilson Foll. Up Case Rep. p. 1.
[12] *Id.*
[13] Ex. "A" (Sexual Misconduct Policy). Plaintiff references this policy on page 28 of his Amended Complaint. Defendants previously sought, and were granted, the Court's leave to file their exhibits under restricted status on the docket. *See* Text Order (April 19, 2018). Because Defendants' exhibits have not changed, Defendants will rely on the previously-filed exhibits instead of filing a second motion to seal.

> between two or more people is defined as an affirmative agreement – through clear actions or words – to engage in sexual activity. The person giving the consent must act freely, voluntarily, and with an understanding of his or her actions when giving the consent . . . Persons who want to engage in sexual activity are responsible for obtaining consent – it should never be assumed . . .[14]

The policy further provides that "an incapacitated person is not able to give consent" and that "[i]t is a violation of this policy if the initiator has sex with someone the initiator knows, or reasonably should know, to be incapacitated by alcohol, drugs, sleep or illness." Under the policy, "[s]omeone is incapacitated when he or she cannot understand who, what, when, where, why, or how, with respect to the sexual interaction."[15]

Defendant Ussery interviewed Roe and six witnesses regarding the alleged policy violation.[16] Roe told Ussery that she and Doe drank vodka prior to the fraternity party and that they had each been given a bottle of champagne once they arrived at the party.[17] Roe reported to Ussery that she had blacked out during the night and could not recall significant details.[18] She stated to Ussery that the only thing she remembered after exiting the party was being in pain while someone was having sex with her.[19]  Ussery made multiple interview requests to Doe, but he declined to participate in the investigation on the advice of counsel.[20]

---

[14] *Id.*

[15] *See* Ex. "C" (Disciplinary Hearing Transcript). *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (holding that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim").

[16] *See* Ex. "B" ("Honey Ussery Report").

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

A student conduct hearing was conducted on March 31, 2017.[21] Doe attended and was represented by counsel.[22] At the hearing, Doe presented his own version of events and introduced a polygraph report and a statement from a local taxi driver.[23] Doe stated that they drank prior to the party and that they each drank their own bottle of champagne at the party.[24] Doe stated that they were both intoxicated in the cab ride from the fraternity house to his apartment, and that they were both intoxicated when they arrived at his apartment.[25] After deliberation, the University Judicial Council found Doe responsible for a violation of the University's sexual misconduct policy and expelled him from the University.[26] Doe appealed the decision pursuant to the University's policy.[27] On appeal, the review board upheld the Judicial Council's responsible finding but reduced the sanction from expulsion to a suspension.[28] Doe disagrees with the outcome of those proceedings, but his legal claims lack merit.

## 2.    Standards of law

A Rule 12(b)(1) motion challenges the plaintiff's invocation of federal subject matter jurisdiction.[29] When one party challenges subject matter jurisdiction, the party asserting jurisdiction bears the burden of establishing jurisdiction.[30]

---

[21] *See* Ex. "C" (Tracy Murry Declaration with Disciplinary Hearing Transcript).
[22] *Id*., at 2:12.
[23] *Id*., at 8-9.
[24] *Id*., 11:5-10.
[25] *Id*., at 10.
[26] *Id*. at 15:17-25; Ex. "D" (Judicial Council Memo).
[27] Sec. Am. Compl. at 21 [Doc. 9].
[28] *Id*.; Ex. "E" (Appellate Consideration Board Memo).
[29] *See Krim v. PCOrder.com, Inc*., 402 F.3d 489, 494 (5th Cir. 2005).
[30] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 189 (5th Cir. 2011).

4

A ruling under Rule 12(b)(6) should only be rendered after the court has addressed any arguments regarding subject matter jurisdiction. Rule 12(b)(6) authorizes dismissal for failure to state a claim upon which relief may be granted.[31]

> To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level. In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff.  We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[32]

"Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n] – that the pleader is entitled to relief.'"[33]

**3.**    ***The Eleventh Amendment bars Doe's § 1983 claims and breach of contract claims against the University, IHL, the IHL Board members, the Chancellor, the IHL Commissioner, the State of Mississippi, and the Individual Defendants in their official capacities.[34]***

Eleventh Amendment immunity deprives a federal court of the power to hear such

---

[31] FED. R. CIV. P. 12(b)(6).

[32] *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (internal quotations and cites omitted).

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting FED. R. CIV. P. 8(a)(2)).

[34] Even if the Court exercised jurisdiction over Doe's Section 1983 claims against those defendants, they would fail. Section 1983 provides that "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United State or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. Ann. § 1983 (emphasis added). Neither a State, an arm of the State, nor an individual employed by such entity acting in his or her official capacity is considered a "person" acting under color of law. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70, 109 S. Ct. 2304 (1989); *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014); *McNair v. Mississippi*, 43 F. Supp. 3d 679, 685 (N.D. Miss. 2014).

claims.[35] It applies not only to the State itself, but to any state agency or entity deemed to be an

arm of the State.[36] Additionally, suits against state officials for monetary damages are barred

under the Eleventh Amendment if the damages would be paid out of the State treasury.[37]

The University and IHL are arms of the State for purposes of Eleventh Amendment

immunity.[38] Congress has not abrogated Eleventh Amendment immunity for purposes of a

Section 1983 action or for state law breach of contract claims.[39] The Mississippi Legislature

preserved Eleventh Amendment immunity when it included a limited waiver of sovereign

immunity in state court under the Mississippi Tort Claims Act.[40]

Accordingly, Doe's Section 1983 and breach of contract claims against the State of

Mississippi, the University, and IHL are barred by the Eleventh Amendment.[41] The claims

against the IHL Board Members, the IHL Commissioner, the Chancellor, and the Individual

Defendants in their official capacities are claims against the University and the IHL,[42] and the

---

[35] *United States v. Tex. Tech Univ.*, 171 F.3d 279, 286 n. 9 (5th Cir. 1999); *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 342 (5th Cir. 1996).

[36] *Perez v. Region 20 Educ. Service Center,* 307 F.3d 318, 326 (5th Cir. 2002).

[37] *Stewart v. Jackson Co.*, 2008 U.S. Dist. LEXIS 95207, at*4 (S.D. Miss. Oct. 24, 2008) (citing *Ford Motor Co. v. Dep't of Treasury of Ind.*, 465 U.S. 89, 100, 104 S. Ct. 900 (1984)).

[38] *Washington v. Jackson State Univ.*, 532 F. Supp. 804, 814 (S.D. Miss. 2006); *State v. IHL*, 387 So.2d 89, 91 (Miss. 1980) (declaring IHL to be "a constitutionally created state agency.").

[38] *Hays v. LaForge*, 113 F. Supp. 3d 883, 891 (N.D. Miss. 2015); *Whiting v. Jackson State University*, 616 F.2d 116, 127 n.8 (5th Cir. 1980) ("JSU is an agency of the state because it is a state-created political body, Miss. Code Ann. § 37-125-1 (Cum. Supp. 1979), and receives state funding."), *Carpenter v. Miss. Valley State Univ.*, 807 F. Supp.2d 570, 580 (N.D. Miss. 2011).

[39] *Voisin's Oyster House v. Guidry*, 799 F.2d 183, 186 (5th Cir. 1986).

[40] MISS. CODE ANN. § 11-46-5(4). *See also Smith v. Leflore County*, 2015 U.S. Dist. LEXIS 128533, *5 (N.D. Miss. Sept. 24, 2015).

[41] To the extent Doe's Title IX claims against the State and IHL do not otherwise fail, they are barred by the Eleventh Amendment.

[42] *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985)

Court also lacks jurisdiction over such claims as well to the extent they seek money damages.[43]

**4.** ***Defendants Ussery, Murry, IHL Board members, and the IHL Commissioner cannot grant Doe his requested injunctive relief***

A federal court under certain circumstances may enjoin state officials to conform their future conduct to the requirements of federal law, but that exception applies only to the Chancellor here. As articulated by the Fifth Circuit, *Ex Parte Young* "solidified the doctrine that state officers could be sued in federal court despite the Eleventh Amendment, while emphasizing the requirements that the officers have 'some connection with the enforcement of the act' in question or be 'specifically charged with the duty to enforce the statute' and be threatening to exercise that duty."[44]

As pled by Doe, he has been suspended by the University with no ongoing disciplinary proceedings pending against him.[45] There is no threat of further action with respect to Doe's request for the prohibition of further proceedings. As to his requests for expungement, sealing, and re-enrollment, the only state official with any connection to such claim for relief is the Chancellor of the University. Doe does not allege that the other individual Defendants have any authority to grant that relief in their official capacities, and they should be dismissed.[46]

---

[43] While the Eleventh Amendment acts as a jurisdictional bar, the Court's lack of jurisdiction cannot be cured by relying on supplemental jurisdiction. *Hernandez v. Tex. Dep't of Human Servs.*, 91 Fed. App'x 934, 935 (5th Cir. 2004).

[44] *Okpalobi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001) (internal quotation omitted).

[45] *Id*. at 28.

[46] *See El-Bawab*, 2018 U.S. Dist. LEXIS at *10 (finding that President of Jackson State University was the only named defendant with authority to grant requested injunctive relief for promotion of professor). Doe alleges that each of the IHL Board members and the IHL Commissioner are "imbued with the responsibility to enforce the policies at issue in this suit and comply with the federal laws in issue as well as contracts by IHL, the Board and the University of Mississippi." Sec. Am. Compl., at 6-11 [Doc. 9]. However, he does

5. ***Doe has failed to state claims for relief against the IHL Defendants and the State.***

The University exists "under the management and control of a board of trustees to be known as the board of trustees of state institutions of higher learning."[47] However, in the absence of a showing that IHL "played any role in implementing" a challenged policy or decision or "had any legal duty to consider" such decision or policy, a plaintiff fails to state a claim against IHL merely because the state universities are statutorily under its general management and control.[48]

All of Doe's allegations as to the IHL Defendants and the State are contingent on his claims against the University. He pleads that the IHL Defendants and the State "had a responsibility and duty to insure [sic] the policies, practices and customs at the University of Mississippi complied with [federal and state law] and that the actions of the Defendants were not in breach of these laws or existing contracts."[49] He also claims that "while certain responsibilities may have been delegated within the University, these Defendants retained oversight responsibility."[50] Because he relies solely on IHL's statutory hierarchy over the University and the University's general relationship to the State, Doe has failed to state any plausible claims for relief against IHL and the State of Mississippi.

---

not allege that they have the direct ability or responsibility to grant the relief sought.

[47] MISS. CODE ANN. § 37-101-1.

[48] *Barrett v. Khayat*, 1999 U.S. Dist. LEXIS 847, at *7-8 (N.D. Miss. Jan. 8, 1999); *Canon v. Bd. of Trustees of State Institutions of Higher Learning*, 133 F. Supp. 3d 865, 873 (S.D. Miss. 2015) (holding that IHL was not responsible for challenged employment decision merely because it possessed final authority over certain employment matters); *accord Giles v. Univ. of Miss.*, 2000 U.S. Dist. LEXIS 23781, at *6 (N.D. Miss. Aug. 29, 2000).

[49] *Id*. at 4.

[50] *Id*. at 39.

6.      *The IHL Board Members, the IHL Commissioner, the Chancellor, the State of Mississippi, and the Individual Defendants are not subject to liability under Title IX.*

Title IX implies a private right of action only against "education program[s] or activit[ies]" which receive federal financial assistance.[51] It does not provide for individual liability, and courts have rejected attempts to hold other non-education programs or activities liable.[52] For State and local governments, only the department or agency which receives aid is covered.[53] The Court should dismiss Doe's Title IX claims against the Individual Defendants, the Chancellor, the IHL Board members, the IHL Commissioner, and the State of Mississippi.

7.      *Doe's Title IX claim fails to state a claim for relief.*

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[54] Some courts have opined that a student may "attack[] a university disciplinary proceeding on grounds of gender bias" under Title IX, but the Fifth Circuit has declined to do so.[55] When allowing plaintiffs to use Title IX to collaterally attack student disciplinary proceedings, other circuits have recognized

---

[51] *See* 20 U.S.C. §1682.

[52] *See Doe v. Hillsboro Ind. Sch. Dist.*, 81 F.3d 1395, 1401 n.9 (5th Cir. 1996) (noting that district courts in the Fifth Circuit have held that a Title IX claim may not be asserted against an individual); *Williams v. Bd. of Regents*, 477 F.3d 1292, 93-94 (11th Cir. 2007); *IF v. Lewisville Ind. Sch. Dist.*, 2017 U.S. Dist. LEXIS 211643, *11 (E.D. Tex. Jun. 20, 2017).

[53] *Alegria v. Texas*, 2007 U.S. Dist. LEXIS 67031, *40-43 (S.D. Tex. Sept. 11, 2007); 34 C.F.R. § 106.2(h)(1)(i)-(ii).

[54] 20 U.S.C. §1681.

[55] *Yusuf v. Vassar Coll.*, 35 F. 3d 709b 715 (2d Cir. 1994); *Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018); *Plummer*, 860 F.3d at 777 (noting that the Second Circuit has held a university may be liable for imposing discipline where gender is motivating factor under two general theories); *Plummer v. Univ. of Houston*, 2015 U.S. Dist. LEXIS 189229, *50 (S.D. Tex. May 28, 2015) (noting the lack of binding precedent for erroneous outcome theory).

four potential avenues: 1) erroneous outcome, 2) selective enforcement, 3) deliberate indifference, and 4) archaic assumptions.[56] Here, Doe seems to assert an erroneous outcome and selective enforcement claim. While this Court should decline to adopt such theories of liability absent further instruction from the Fifth Circuit, Doe has not adequately stated a claim for relief even assuming the viability of such standards for liability.

### A. *Doe fails to plead sex bias in support of his erroneous outcome theory.*

When proceeding under an erroneous outcome theory, the plaintiff must allege facts sufficient to show a particularized causal connection between the purportedly flawed outcome and actual sex bias.[57] To demonstrate that sex bias, the plaintiff may rely on evidence such as "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decisions-making that also tend to show the influence of gender."[58] A plaintiff may not rely in isolation on general unsubstantiated assertions of bias, the fact that a majority of respondents are male rather than female, purported preferential treatment of complainants over respondents, allegations that investigative methods were in violation of Title IX's requirements, or assertions that the investigation and adjudication constituted an effort to achieve a predetermined result, as such allegations in isolation fail to exhibit sex bias.[59]

---

[56] *See id.*
[57] *Yusuf*, 35 F.3d at 715; *Doe v. Cummins*, 662 F. App'437, 443 (6th Cir. 2016); *see also Doe v. Univ. of Colo.*, 255 F. Supp. 3d 1064, 1074 (D. Colo. 2017).
[58] *Yusuf*, 35 F.3d at 715.
[59] *Mallory v. Ohio Univ.*, No. 01-4111, 76 Fed. App'x 634, 638 (6th Cir. Sept. 11, 2003); *Doe v. Univ. of Cincinnati*, 2018 U.S. Dist. LEXIS 51833, *14 (S.D. Ohio Mar. 28, 2018) ("Because Plaintiff has failed to show how the alleged procedural deficiencies are connected to gender bias, Plaintiff fails to state a claim under Title IX based on erroneous outcome theory."); *Doe v. Univ. of Denver*, 2018 U.S. Dist. LEXIS 40926, *25-27 (D. Colo. Mar. 13, 2018) (finding that disparity between male respondents and female

Here, Doe relies only on conjecture and sex-neutral allegations in support of his erroneous outcome theory.[60] Without pleading facts, Doe alleges that Defendants Ussery and Murry "ignored exculpatory evidence and treated male students, including Doe, more adversely than females in the course of University investigations and disciplinary proceedings," that "disciplinary procedures governing sexual assault claims are discriminatorily applied in favor of guilt on the part of the male students," and that the "male student is presumed to have engaged in sexual misconduct regardless of whether the female actively participated or initiated sex."[61] When he does loosely allege facts, Doe puts forth only gender-neutral allegations, claiming in pertinent part that the University "failed to consider exculpatory evidence or to detail the rationale for the results of the hearing and the sanctions issued against Andrew Doe," and that the proceedings "violate the Cleary Act and are contrary to the most recent guidance of the Department of Education."[62]

Doe fails to plead facts showing a particularized causal connection between the purportedly flawed outcome and actual sex bias. Aside from legal conclusions masquerading as factual allegations, Doe pleads no "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decisions-making that also tend to show the influence of gender."[63] Doe's legal conclusions and sex-neutral complaints regarding

---

respondents was insufficient); *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009) (holding that allegations of inconsistency with Title IX and efforts to reach a predetermined result were insufficient to state an erroneous outcome claim); *Doe v. Univ. of Colo.*, 255 F. Supp. 3d at 1079.
[60] Sec. Am. Compl., at 31-38 [Doc. 9].
[61] *Id*. at 34-35.
[62] *Id*.
[63] *Yusuf*, 35 F.3d at 715.

11

the University's Title IX procedures do not state a claim under an erroneous outcome theory.

### B. Doe fails to plead sex bias in support of his selective enforcement theory.

Likewise, in support of a selective enforcement claim, Doe must still allege sex bias.[64] To successfully assert a claim under the selective enforcement theory, the plaintiff must "demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University."[65] Doing so requires "identification of a comparator of the opposite sex who was treated more favorably by the educational institution when facing similar disciplinary charges."[66] The complainant is not considered an adequate comparator for purposes of the analysis.[67] Here, Doe does not identify a female comparator nor does he allege that a female in sufficiently similar circumstances was treated more favorably than he was. While Doe complains that his "female companion was not subjected to the same type of investigation or disciplinary action for her role even though Doe was also under the influence," Doe does not allege he did not consent to the sexual encounter or that he lacked capacity to consent, nor did he file a Title IX complaint with the University regarding the incident.

### 8. Doe fails to state an equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny any person within its jurisdiction equal protection of the laws.[68] To maintain an equal

---

[64] *Yusuf*, 35 F.3d at 714; *Mallory*, 76 Fed. App'x at 638.

[65] *Mallory*, 76 Fed. App'x at 641 (citing *Curto v. Smith*, 248 F. Supp. 2d 132, 146-47 (N.D.N.Y. 2003); *see also Doe v. Univ. of the South*, 687 F. Supp. 2d at 756 (requiring plaintiff to plead female was "in circumstances sufficiently similar" but was "treated more favorably.").

[66] *Doe v. Case Western Reserve Univ.*, 2015 U.S. Dist. LEXIS 123680, *15 (N.D. Ohio Sept. 16, 2015).

[67] *Id*. (citing *Sterrett v. Cowan*, 85 F. Supp. 3d 916 (E.D. Mich. 2015) (vacated on req. of parties)).

[68] *City of Cleburne, Tex. V. Cleburne Living Ctr.*, 473 U.S. 432, 87 L. Ed. 2d 313 (1985).

protection claim, a plaintiff must show that similarly situated persons were treated dissimilarly.[69] For the same reasons just stated, Doe has not allege he was treated differently than a similarly situated person, and his equal protection claim fails.

**9.      *Doe's claims for monetary damages under Title IX are barred by sovereign immunity***

While the Eleventh Amendment acts as a jurisdictional bar in federal court, the states' inherent sovereign immunity protects them from private claims in state or federal court.[70] Although the two concepts frequently overlap, state sovereign immunity is broader than that described by the Eleventh Amendment.[71] Any waiver of sovereign immunity is construed strictly and "in favor of the sovereign."[72] To subject a state to suit for money damages, the waiver "must extend unambiguously to such monetary claims."[73] The text of Title IX does not provide a private right of action or a damages remedy, but the Supreme Court found such right implied.[74] Section 1003 of the Rehabilitation Act Amendments of 1986, which applies to Title IX, explicitly waives the states' Eleventh Amendment immunity, but it does not expressly waive the states' inherent sovereign immunity or subject the states to money damages.[75] The Supreme Court has found that the language contained at Section 2000d-7 is subject to multiple interpretations and lacks the clear statement required to subject the federal government to an

---

[69] *Id.*, *Hammock v. Keys*, 93 F. Supp. 2d 1222, 1231 (N.D. Tex. 2000).
[70] *Alden v. Maine*, 527 U.S. 706, 733, 119 S. Ct. 2240 (1999).
[71] *See id.* at 713.
[72] *Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092 (1996).
[73] *See Sossamon v. Texas*, 563 U.S. 277, 285, 131 S. Ct. 1651 (2011).
[74] 20 U.S.C. §§ 1682, 1683; *Franklin v. Gwinnett County Publ. Sch. Dist.*, 503 U.S. 60, 70 (1992).
[75] 42 U.S.C. § 2000d-7(a)(1); 42 U.S.C. § 2000d-7(a)(2).

award of damages.[76] While Title IX impliedly creates a right of action for "any appropriate relief," neither the text of Title IX nor the subsequent amendments enacted by Congress sufficiently waive the states' sovereign immunity or subject them to money damages. Doe's Title IX claim for money damages is barred by Mississippi's sovereign immunity.[77]

**10.**   ***Doe's procedural due process rights were not violated***

 Doe bases his due process claims on the premise that the University should have provided him with additional procedural protections. For example, he alleges that he was deprived of due process because he could not cross-examine witnesses, because his attorneys were not allowed to speak on his behalf during the hearing, and because he could not subpoena witnesses to attend. However, a "university is not a court of law, and it is neither practical nor desirable it be one."[78] The Fifth Circuit has also held that "[d]ue process in the context of [a student disciplinary proceeding] is not to be equated with that essential to a criminal trial …."[79]

 The Fifth Circuit has long held that "due process requires notice and some opportunity

---

[76] *Lane*, 518 U.S. at 199-200 ("[I]f the same remedies are available against all governmental and non-governmental defendants under § 504(a) [of the Rehabilitation Act], the 'public or private' language is entirely superfluous" and "the fact that [§ 2000d-7(a)(2)] itself separately mentions public and private entities suggests there is a distinction to be made in terms of the remedies available against the two classes of defendants.").

[77] The Eighth Circuit Court of Appeals recently rejected this argument in *Fryberger v. Univ. of Arkansas*, 2018 U.S. App. LEXIS 11289 (8th Cir. May 2, 2018), finding that the language of 42 U.S.C. § 2000d-7(a)(2) resolved any possible ambiguity in section 2000d-7(a)(1). However, as held by the Supreme Court, "where a statute is susceptible of multiple plausible interpretations, including one preserving immunity, we will not consider a state to have waived its sovereign immunity." *Sossamon*, 563 U.S. at 287.

[78] *Plummer v. Univ. of Hous.*, 860 F.3d 767, 773 (5th Cir. 2017) (*citing Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 n.1 (6th Cir. 2005)).

[79] *Jenkins v. La. State Bd. of Educ.*, 506 F.2d 992, 1000 (5th Cir. 1975); *see also Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987) ("Due process requires that appellants have the right to respond, but their rights in the academic disciplinary process are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial.").

for hearing before a student at a tax-supported college is expelled for misconduct."[80] However, the student "is not entitled to the 'opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident."[81] Rather,

> the amount of process due in university disciplinary proceedings is based on a sliding scale that considers three factors: (a) the student's interests that will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (c) the university's interests, including the burden that additional procedures would entail.[82]

The interests implicated by the first and third *Mathews* factors are clear. Doe has an interest in the outcome of the disciplinary proceedings, and the University has an interest in maintaining a safe learning environment and preserving administrative resources.[83] The Fifth Circuit recently found that students accused of sexual misconduct were not deprived of due process where they received "meaningful opportunities to challenge the University's allegations, evidence, and findings."[84] A public university discharges its due process obligations in the student discipline context when students are "able to fully discuss the charges against them and present evidence supporting their contentions."[85] The examination should focus on whether the

---

[80] *Plummer*, 860 F.3d at 773 (*citing Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961)). *See also Esfeller v. O'Keefe*, 391 Fed. App'x 337, 342 (5th Cir. 2010) (holding that a "student subject to school disciplinary proceedings … must be given notice of the charges against him, an explanation of what evidence exists against him, and "an opportunity to present his side of the story" (*citing Goss v. Lopez*, 419 U.S. 565, 581 (1975)).

[81] *Esfeller*, 391 Fed. App'x at 342 (*citing Goss*, 419 U.S. at 583).

[82] *Id*. (*citing Mathews v. Eldridge*, 424 U.S. 319, 335 (1976))

[83] *Id*. at 773-74.

[84] *Id*. at 774.

[85] *Parker v. Duffey*, 251 Fed. App'x 879, 883 (5th Cir. 2007)

student had an opportunity to "respond, explain, and defend."[86]

The process provided to Doe during his disciplinary proceedings gave him a meaningful opportunity to address the Judicial Council and to challenge the evidence presented against him. As discussed above, he had an opportunity to participate in the investigatory process (though he declined to do so) and then to present statements and documentary evidence to the Judicial Council.[87] He was also given access to an appeal procedure, which resulted in lessening Doe's disciplinary sanction from expulsion to a suspension.[88]

Doe's Complaint lists numerous purported procedural deficiencies that he claims deprived him of due process. Each of these assertions fails to state a claim. Doe complains that Defendant Ussery's report contained hearsay evidence,[89] but "rights in a student disciplinary hearing may properly be determined upon the hearsay evidence of school administrators who investigate disciplinary infractions."[90]

Doe also complains he was not allowed to subpoena witnesses and the witness statements included in Defendant Ussery's report were not sworn under oath.[91] The University has no subpoena power, much less the obligation to grant it to a respondent in a disciplinary hearing. Moreover, as Judicial Council proceedings are not court proceedings, there is no requirement for

---

[86] *Flaim*, 418 F.3d at 635; *Doe v. Cummins*, 662 Fed. App'x 437, 446 (6th Cir. 2016) (*cited with approval in Plummer v. Univ. of Hous.*, 860 F.3d 767, 774 (5th Cir. 2017)).
[87] *Supra*, at 3.
[88] Sec. Am. Compl., at 21 [Doc. 9].
[89] *Id*. at 38-40.
[90] *Tasby v. Estes*, 643 F.2d 1103, 1106 (5th Cir. 1981); *see also Crook v. Baker*, 813 F.2d 88, 99 (6th Cir. 1987) ("It is clear that admission of hearsay evidence [at a school disciplinary proceeding] is not a denial of procedural due process.").
[91]Sec. Am. Compl., at 19 [Doc. 9].

witness statements to be sworn. "[D]isciplinary proceedings do not require formal rules of evidence or all the procedural protections of a trial."[92]

Doe further claims he was denied the opportunity to cross-examine witnesses. The Fifth Circuit has never determined that cross-examination is constitutionally required in student disciplinary proceedings and has specifically rejected the opportunity to do so.[93] Recently, the Fifth Circuit underscored that such measures are certainly not required where the respondent does not contest facts that would in and of themselves support a violation under the conduct policy.[94] Here, Doe did not contest Roe's statements to Ussery that she was so intoxicated that she blacked out and lost awareness of her surroundings; instead, Doe affirmatively stated that Roe had been intoxicated, suggested that Roe "received a sexual assault kit while at the hospital, which should have included a full tox screen," and that at the formal, "she did not pour any glasses of champagne out" because there were no glasses available, and that she had been "drinking directly from the bottle."[95] Cross-examination is not constitutionally required, but, in any event, the uncontested allegations included in the Title IX report were sufficient to sustain a violation under the University's policy, and the student conduct proceedings did not turn on the credibility of testimony.

Doe also alleges that his due process rights were violated because "[t]he use of the

---

[92] *Plummer v. Univ. of Houston*, No. 4:14-CV-2959, 2015 U.S. Dist. LEXIS 189229, at *43 (S.D. Tex. May 28, 2015), *aff'd* 860 F.3d 767 (5th Cir. 2017).
[93] *Plummer v. Univ. of Hous.*, 860 F.3d 767, 775 (5th Cir. 2017) ("This case does not require that we determine whether confrontation and cross-examination would ever be constitutionally required in student disciplinary proceedings.").
[94] *Id*. at 776 ("The conduct depicted in the videos and photo—combined with Plummer's subsequent distribution and publication—was sufficient to sustain the University's findings and sanctions.").
[95] *See* Ex. "C" (Tracy Murry Declaration with Disciplinary Hearing Transcript), at 6:21-25;7:1-2.

'preponderance of the evidence' standard as the threshold legal standard for an adjudication of 'Responsible' or guilty under the totality of the circumstances presented is illegal and unconstitutional and was/is arbitrary and capricious."[96] Defendants have found no authority requiring the University to use a higher burden of proof for a student disciplinary hearing.

Doe alleges throughout his Complaint the University exhibited "bias" toward him throughout the disciplinary process. Notably, he has not alleged any particular member of the Judicial Council or the Appellate Consideration Board was biased against him.[97] Doe does allege he was denied due process because one Judicial Council member was appointed immediately prior to the hearing commencing and was contemporaneously presented with the case file for the first time.[98] However, he does not allege any facts that, if proven, would show any member of the Judicial Council (including the last-appointed member) harbored bias toward him.[99] Moreover, he was given an opportunity to challenge any Council member's participation in the hearing, and he declined to do so.[100]

Doe primarily directs his bias allegations at Defendant Ussery, but Ussery was not a decision-maker, did not participate in the hearing, and Doe fails to allege any facts in support of

---

[96] Sec. Am. Compl., at 29 [Doc. 9].
[97] While Doe pleads that, unbeknownst to him, "one of the female panel members selected by the University to preside over his hearing had previously mocked the defenses raised by men accused of sexual assault," he includes no actual factual allegations in support. Sec. Am. Compl. at 19 [Doc. 9].
[98] Sec. Am. Compl., at 19 [Doc. 9].
[99] *See Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534, 544 (W.D. La. 2016) (holding that "there is a presumption of honesty and integrity in those serving as adjudicators" and that, "[i]n order to make out a procedural due process claim based on bias, actual bias must be proved"
[100] Ex. "C" (Tracy Murry Declaration with Disciplinary Hearing Transcript), at 5:13-15.

his conclusion that she served "conflicting roles."[101] Her only involvement in the hearing was to provide a written report summarizing Roe's allegations and her interviews of various witnesses.[102] Ussery's report did not reach a conclusion as to whether Doe was responsible for violating the University's sexual misconduct policy. The report made no findings as to the credibility of the various witnesses, and it made no recommendations as to how the Judicial Council should act.  As noted above, Doe was allowed to challenge Ussery's findings and to call his own witnesses and provide supplementary evidence.

11.    *Doe's substantive due process rights were not violated*

Doe claims that the Judicial Council's finding of responsibility violated his substantive due process rights because it was "contrary to the substantial evidence and was arbitrary and capricious."[103] "To state a substantive due process claim, a plaintiff must show that the government's deprivation of a property interest was arbitrary or not reasonably related to a legitimate governmental interest."[104] "Expelling a student after a hearing, a supplemental hearing, and an appeals process is not the type of conduct which shocks the conscience as a matter of law."[105]

There was nothing constitutionally arbitrary about the Judicial Council's determination that Doe violated the University's sexual misconduct policy, especially in light of the fact he did not contest Roe's intoxication and specifically declined to do so when questioned by the Judicial

---

[101] Sec. Am. Compl., at 25 [Doc. 9].
[102] *Id.*; *see* Ex. "B" (H. Ussery report).
[103] Sec. Am. Compl., at 21 [Doc. 9].
[104] *Williams v. Tex. Tech Univ. Health Scis. Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993)
[105] *Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534, 548 (W.D. La. 2016).

Council. The fact the Judicial Council rejected Doe's contention that the sexual intercourse was consensual under the University's policy did not deprive him of substantive due process.

### 12.    *Doe failed to exercise all process available to him and his claims are precluded.*

While not statutorily binding on federal courts, federal common law rules on preclusion recognize that "[p]erhaps the major purpose of the Full Faith and Credit Clause is to act as a nationally unifying force . . . and this purpose is served by giving preclusive effect to state administrative fact-finding rather than leaving the courts of a second forum, state or federal, free to reach conflicting results."[106] Accordingly, "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts."[107]

Under Mississippi law, the University is considered part of the executive branch of State government and its administrative decisions are entitled to judicial deference.[108] The Mississippi Supreme Court has held that to contest the adequacy of state administrative decisions, the plaintiff must first exercise all process available to him.[109] As tribunals inferior, University administrative decisions must be appealed to state circuit court pursuant to Mississippi Code §

---

[106] *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799, 106 S. Ct. 3220 (1986) (cleaned up).

[107] *Id.*; *see also Ellis v. Tupelo Public Sch. Dist.*, 2014 U.S. Dist. LEXIS 43540, *12 (N.D. Miss. Mar. 31, 2014); *Quade v. Ariz. Bd. of Regents*, 2015 U.S. Dist. LEXIS 178642, *8 (D. Ariz. Sept. 14, 2015) (citing *Elliott* and noting that "a state agency's fact-finding and legal determinations are given the same preclusive effect in federal court as in state court.").

[108] *Smith v. Univ. of Miss.*, 797 So.2d 956, 960 (Miss. 2001).

[109] *See Jackson St. Univ. v. Upsilon Epsilon Ch. of Omega Psy Phi Frat., Inc.*, 952 So. 2d 184, 186 (Miss. 2007) (construing *Smith*, 797 So.2d 956).

11-51-95.[110] Accordingly, where several students at another state university contested the adequacy of student conduct proceedings, the Mississippi Supreme Court held that the students' failure to petition for writ of certiorari pursuant to Mississippi Code § 11-51-95 was fatal to their due process claims.[111] Because Doe did not exercise all process available to him and his claims would be barred in state court, they are similarly precluded here.

### 13.   *The individual Defendants are entitled to qualified immunity*

Defendants Ussery and Murry are entitled to qualified immunity as to Doe's claims under Section 1983. Designed to protect "all but the plainly incompetent or those who knowingly violate the law," the qualified immunity defense "requires courts to enter judgment in favor of a government employee unless the employee's conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[112] Where a defendant in a Section 1983 suit pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff has the burden to establish that the alleged conduct violates ***clearly-established*** law.[113]

The question of qualified immunity requires a particularized conduct-based analysis, not an abstract legal or factual inquiry.[114]  A plaintiff must meet a heightened pleading requirement – he must allege specific conduct giving rise to a constitutional violation, and he may not rely on

---

[110] *See id.*
[111] *Id.*
[112] *Morse v. Frederick*, 551 U.S. 393, 429 (2007) (Breyer, J., concurring in part and dissenting in part) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
[113] *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010) (*citing Thompson v. Upshur County, TX*, 245 F.3d 447, 456 (5th Cir. 2001).
[114] *Wood,* 134 S.Ct. at 2067.

mere conclusory allegations.[115] The pleading must describe conduct "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[116] To disprove the applicability of qualified immunity, a plaintiff must satisfy a two-prong test.[117] At the dismissal stage, the court must determine whether the facts alleged make out a violation of a constitutional right.[118] If so, the issue becomes objective legal reasonableness, and the court must decide whether the right at question was clearly-established at the time of defendant's alleged misconduct.[119] To be clearly established, the plaintiff must point to controlling authority or a "robust consensus of cases of persuasive authority" that placed some constitutional question faced by Ussery and/or Murry "beyond debate."[120]

As discussed above, the only pertinent action Defendant Ussery took was to prepare an investigative report summarizing witness interviews. Doe disagreed with some witnesses' statements and thought Ussery should have included additional details in her report, but he had a full and fair opportunity to challenge her report and submit additional evidence or corrections. As to Defendant Murry, Doe alleges only that Murry somehow failed to ensure a timely adjudication process and acquiesced in the placement of a panel member who had "known, public and demonstrated gender bias," yet he pleads no facts in support.[121]  Doe has not alleged

---

[115] *Wicks v. Miss. St. Employment Servcs.*, 41 F.3d 991, 994-95 (5th Cir. 1995); *King v. Lawrence County Bd. of Educ.*, 2:12-CV-68, 2013 WL 319286, at *2 (S.D. Miss. Jan. 28, 2013).

[116] *Wood v. Moss*, 134 S.Ct. 2056, 2067 (2014); *Ashcroft,* 131 S.Ct. at 2083; *Stauffer,* 741 F.3d at 583-84.

[117] *Marquez v. Garnett*, No. 13-50599, 2014 WL 1779210, at *2 (5th Cir. May 6, 2014).

[118] *Pearson*, 555 U.S. at 232.

[119] *Id.; Baker v. Pound*, 75 F.3d 190, 198 (5th Cir. 1996).

[120] *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42, 746, (2011).

[121] Sec. Am. Compl., p. 19 [Doc. 9].

any facts that, if proven, could establish that Ussery or Murry violated his constitutional rights, much less a clearly-established constitutional right.

**14.    *Plaintiff's breach of contract claim is barred by the Mississippi Tort Claims Act***

The Mississippi Tort Claims Act ("MTCA") provides the exclusive avenue for state law claims against the University and its employees.[122] In addition to applying to strict tort claims, the MTCA also extends to quasi-tort claims and implied contract claims.[123] As a threshold matter, prior to filing a claim under the MTCA, a claimant must provide written pre-suit notice.[124] Failure to comply with such notice provisions is fatal to a plaintiff's suit.[125] Under the substantive provisions of the MTCA "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties."[126] Moreover, "[a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused."[127] Here, Doe presses a claim for breach of an unwritten contract. Doe failed to file pre-suit notice for any of those claims, and they are all barred by the MTCA. Doe's state-law claims are barred by the MTCA and should be dismissed in their entirety.[128]

---

[122] *Taylor v. Epps*, 2015 U.S. Dist. LEXIS 64569, at *16 (S.D. Miss. May 18, 2015).
[123] *Haggard v. City of Jackson*, 84 So.3d 797, 800 (Miss. 2011).
[124] MISS. CODE. ANN. 11-46-11(2).
[125] *See Conrad v. Holder*, 825 So.2d 16, 19 (Miss. 2002).
[126] MISS. CODE ANN. 11-46-72(7).
[127] MISS. CODE ANN. 11-46-9(1)(d).
[128] Doe's post-suit notice filed on April 14, 2018, does not cure the deficiency. *Gorton v. Rance*, 52 So. 3d

### 15. *Doe fails to state a breach of contract claim*

A breach of contract claim has two elements: (1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken or breached it.[129] Doe fails to allege the existence of a contract, implied or otherwise, between himself and the Individual Defendants or the Chancellor. The Court should dismiss Doe's breach of contract claim as to those parties.

Doe alleges that the University, the IHL Defendants, and the State breached contractual obligations to him "by failing to abide by the terms of the contract and Title IX, subjecting Doe to a gender bias and failing to comply with [their] own policy and procedures, and by the adoption and implementation of unconstitutional customs, policies and practices in the implementation of Title IX at the University."[130] However, he does not identify an express contract containing any such terms, and he has not stated an implied contract theory.[131] His contract claims should be dismissed.

### CONCLUSION

While a student at the University, Andrew Doe was subject to the University's sexual misconduct policy. That policy requires students to obtain effective consent before engaging in sexual conduct with another individual, and specifically provides that a person incapacitated by alcohol cannot effectively give consent. Doe refused to participate in the University's

---

351, 358 (Miss. 2011); *Lee v. Ishee*, 383 F. App'x 499, 501 (5th Cir. 2010).

[129] *Maness v. K & A Ent. of Miss.*, 2018 Miss. LEXIS 61, *10 (Miss. Feb. 8, 2018) (quoting *Business Communications, Inc. v. Banks*, 90 So. 2d 802, 805 (Miss. 2012)).

[130] Sec. Am. Compl., at 43 [Doc. 9].

[131] *Id.* Moreover, Doe's claims against the State and the IHL Defendants fail to the extent they are based solely on his relationship with the University, as he has alleged no other independent relationship.

investigative process and then failed to dispute Roe's intoxication or statements she had blacked out as a result of such intoxication. While Doe disagrees with his suspension, his disagreement is insufficient to state a claim under Title IX, the Constitution, or Mississippi state law.

THIS, the 12th day of June, 2018.

Respectfully submitted,

STATE OF MISSISSIPPI; THE UNIVERSITY OF MISSISSIPPI; STATE INSTITUTIONS OF HIGHER LEARNING; THE BOARD OF TRUSTEES OF STATE INSTITUTIONS OF HIGHER LEARNING; C.D. SMITH, JR.; SHANE HOOPER; TOM DUFF; DR. FORD DYE; ANN H. LAMAR; DR. ALFRED E. MCNAIR, JR.; CHIP MORGAN; HAL PARKER; ALAN W. PERRY; CHRISTY PICKERING; DR. DOUG ROUSE; DR. J. WALT STARR; GLENN F. BOYCE; JEFFREY S. VITTER; TRACY MURRY; HONEY USSERY

*s/ J. Andrew Mauldin*
J. CAL MAYO, JR. (MB NO. 8492)
PAUL B. WATKINS, JR. (MB NO. 102348)
J. ANDREW MAULDIN (MB NO. 104227)
ATTORNEYS FOR DEFENDANTS

OF COUNSEL:
MAYO MALLETTE PLLC
5 University Office Park
2094 Old Taylor Road
Post Office Box 1456
Oxford, Mississippi 38655
Tel: (662) 236-0055
cmayo@mayomallette.com
pwatkins@mayomallette.com
dmauldin@mayomallette.com

**CERTIFICATE OF SERVICE**

I, J. Andrew Mauldin, one of the attorneys for the Defendants, do certify that I have electronically filed this document in the ECF system with the Clerk of the Court which sent notification of the filing to all attorneys of record.

THIS, the 12th day of June, 2018.

_s/ J. Andrew Mauldin_

J. ANDREW MAULDIN