**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**ANDREW DOE**                                                                     **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO.: 3:18cv138 DPJ -FKB**

**THE UNIVERSITY OF MISSISSIPPI, ET AL**                      **DEFENDANTS**

**SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO THE DEFENDANTS'
MOTION TO DISMISS**

COMES NOW, Plaintiff Andrew Doe, by and through his undersigned counsel, and files this Supplemental Memorandum in Opposition to the Defendants' Motion to Dismiss:

On November 16, 2018, the U.S. Department of Education released proposed Title IX regulations. These proposed regulations were issued with the goal of ensuring "that Title IX grievance proceedings become more transparent, consistent and reliable," as "far too many students have been forced to go to court to ensure their rights are protected…" Secretary DeVos: Proposed Title IX Rule Provides Clarity for Schools, Support for Survivors and Due Process Rights for All, U.S. Department of Education, press release, November 16, 2018; https://www.ed.gov/new/press-releases/secretary-devos-proposed-title-ix-rule-provides-clarity-schools-support-survivors-and-due-procees-rights-all

Within the proposed regulations, the Department of Education recognized that previously issued guidance had been criticized for pressuring schools and colleges to forgo robust due process regulations. *See* Amended Regulations implementing Title IX of the Education Amendments of 1972, ___Fed. Reg. ___ (proposed November 16, 2018) (to be codified 34 CFR Part 106) RIN 1870–AA14, Docket ID ED-2018-OCR-0064, not yet scheduled for publication; https://www2.ed.gov/about/offices/list/ocr/docs/title-ix-nprm.pdf (hereinafter referred to as "2018

1

Proposed Amended Regulations")  Significant areas addressed within the proposed regulations include the evidence standard applied to school investigations and the rights of the parties to cross-examination. Both of these issues are raised within Andrew Doe's Complaint.

With respect to the evidence standard, the Department of Education proposes adding section 106.45(b)(4)(i) to Title IX. The section would state that in reaching a determination regarding responsibility, a funding recipient must apply either the preponderance of the evidence standard or the clear and convincing evidence standard. The recipient may, however, employ the preponderance of the evidence standard *only* if it uses that standard for conduct code violations that do not involve sexual harassment but carry the same maximum disciplinary sanction. *2018 Proposed Amended Regulations, pgs. 61-64.*  The reasoning for this clarification is:

> Title IX grievance processes lack certain features that promote reliability in civil litigation. For example, many recipients will choose not to allow active participation by counsel; there are no rules of evidence in Title IX grievance processes; and Title IX grievance processes do not afford parties discovery to the same extent required by rules of civil procedure.  Moreover, Title IX grievance processes are also analogous to various kinds of civil administrative proceedings, which often employ a clear and convincing evidence standard. *See, e.g., Nguyen v. Washington Dept. of Health, 144 Wash*. 2d 516 (2001) (requiring clear and convincing evidence in sexual misconduct case in a professional disciplinary proceeding for a medical doctor as a way of protecting due process); *Disciplinary Counsel v. Bunstine*, 136 Ohio St. 3d 276 (2013) (clear and convincing evidence applied in sexual harassment case involving lawyer). "These cases recognize that, where a finding of responsibility carries particularly grave consequences for a respondent's reputation and ability to pursue a profession or career, a higher standard of proof can be warranted.

*Id., at 63.*

As recognized by the Department of Education, some courts have held that "in student disciplinary cases involving serious accusations like sexual assault where the consequences of a finding of responsibility would be significant, permanent, and far-reaching, a preponderance of the

2

evidence standard is inadequate". *Id., at 63, discussing Lee v. University of New Mexico*, No. 1:17-cv-01230-JB-LF (D. N.M. Sept. 20, 2018) ("Moreover, the Court concludes that preponderance of the evidence is not the proper standard for disciplinary investigations such as the one that led to Lee's expulsion, given the significant consequences of having a permanent notation such as the one UNM placed on Lee's transcript")." The Department of Education does not believe it would be appropriate to impose a preponderance requirement in the absence of all of the features of civil litigation that are designed to promote reliability and fairness. *Id.*

Additionally, the Department of Education's proposed amended regulations address the need for the right of cross—examination.

> …At the hearing, the decision-maker must permit each party to ask the other party and any witnesses all relevant questions and follow-up questions, including those challenging credibility. Such cross-examination at a hearing must be conducted by the party's advisor of choice, notwithstanding the discretion of the recipient under paragraph (b)(3)(iv) of this section to otherwise restrict the extent to which advisors may participate in the proceedings. If a party does not have an advisor present at the hearing, the recipient must provide that party an advisor aligned with that party to conduct cross-examination. All cross-examination must exclude evidence of the complainant's sexual behavior or predisposition, unless such evidence about the complainant's sexual behavior is offered to prove that someone other than the respondent committed the conduct alleged by the complainant, or if the evidence concerns specific incidents of the complainant's sexual behavior with respect to the respondent and is offered to prove consent…

*See* 2018 Proposed Amended Regulations, at 53.

The Department of Education explicitly acknowledged,

> Cross examination is the "greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970) (quoting John H. Wigmore, 5 Evidence § 1367, at 29 (3d ed., Little, Brown & Co. 1940)). The Department recognizes the high stakes for all parties involved in a sexual harassment investigation, and recognizes that the need for recipients to reach reliable determinations lies at the heart of Title IX's guarantees for all

3

> parties. Indeed, at least one federal circuit court has held that in the Title IX context cross-examination is not just a wise policy, but is a Constitutional requirement of Due Process. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) ("Not only does cross-examination allow the accused to identify inconsistencies in the other side's story, but it also gives the fact-finder an opportunity to assess a witness's demeanor and determine who can be trusted")."

*See* 2018 Proposed Amended Regulations, at 57-58.

> The Department has determined that at institutions of higher education, where most parties and witnesses are adults, grievance procedures must include live cross-examination at a hearing. Proposed section 106.45(b)(3)(vii) requires institutions to provide a live hearing, and to allow the parties' advisors to cross-examine the other party and witnesses. If a party does not have an advisor at the hearing, the recipient must provide that party an advisor aligned with that party to conduct cross-examination. Cross-examination conducted by the parties' advisors (who may be attorneys) must be permitted notwithstanding the discretion of the recipient under subsection 106.45(b)(3)(iv) to otherwise restrict the extent to which advisors may participate in the proceedings. In the context of institutions of higher education, the proposed regulation balances the importance of cross-examination with any potential harm from personal confrontation between the complainant and the respondent by requiring questions to be asked by an advisor aligned with the party…

*See* 2018 Proposed Amended Regulations, at 58-59.

The facts and issues presented relating to the claims raised in *Doe v. Baum,* discussed within the Department of Education's proposed regulations, have significant similarities to the those raised by Andrew Doe in the matter presently before this Court. *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) In *Baum*, Plaintiff John Doe and his accuser, Jane Roe, were students at the University of Michigan. The two met at a fraternity party, where they ended up drinking and dancing. Eventually, they had sex. *Baum*, at 578-80. Two days later, Roe filed a sexual misconduct complaint with the university claiming that she was too drunk to consent to sex with Doe. *Id.* An investigation was conducted. The school's investigator interviewed Roe, Doe, and twenty-three other witnesses in the course of the investigation. *Id.*

4

According to the record, Doe told the University of Michigan investigator that Roe did not appear drunk and that she was an active participant in their sexual encounter. *Baum*, at 579. It was Doe's position that on the night in question, he and Roe had a drink, danced, and kissed at the party, then later decided to go upstairs to his bedroom. Once there, they kissed "vigorous[ly]" and eventually made their way onto his bed. *Id.* After they jointly removed their clothing, Doe asked Roe if she wanted to have sex. She said, "Yeah," and the two proceeded to have intercourse followed by oral sex. *Id*. When they were done, they cuddled until Roe became sick. Doe later left to use the bathroom and talk with friends. By the time he returned, Roe was crying and another student was helping her gather her things. Doe asked Roe if she was okay, but Roe's new companion told him to "[g]o away" and the two women walked out of the room. *Id.* Doe asserted that he had no reason to believe that she was drunk or that Roe thought any of his sexual advances were unwelcome. *Id.* Roe's story varied from the one told by Doe. According to Roe, she was drunk and unaware of her surroundings when she went to Doe's room. *Baum*, at 579-80. While kissing near the doorway, she told Doe "no sex" before she "flopped" onto his bed. *Id.* Roe claimed that Doe undressed her and had intercourse with her while she "laid there in a hazy state of black out." *Id*.

The University of Michigan found Doe had violated the its sexual misconduct policy. Doe withdrew from school in lieu of a formal expulsion, then brought a § 1983 action alleging various constitutional and statutory violations that occurred during the disciplinary proceedings. *Doe v. Baum*, 227 F.Supp.3d 784, 344 Ed. Law Rep. 281 (2017). He filed a motion for temporary injunctive relief, and the defendants filed motion to dismiss. *Id.* The motion to dismiss was granted, with the court finding that Doe had failed to establish a due process claim and did not sufficiently stated a Title IX claim for gender bias that led to an erroneous outcome. *Id.*

Subsequently, the Sixth Circuit Court of Appeals reversed the dismissal of John Doe's due process claim insofar as it was based on the university's failure to provide a hearing with the opportunity for cross-examination and reversed the district Court's dismissal of Doe's Title IX claim insofar as it was based on erroneous outcome, remanding the matter for further proceedings. *Baum*, 903 F.3d.   In so doing, the appellate court explained:

> When it comes to due process, the "opportunity to be heard" is the constitutional minimum. *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914), but determining what being "heard" looks like in each particular case is a harder question. The Supreme Court has declined to set out a universal rule and instead instructs lower courts to consider the parties' competing interests. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). So, consistent with this command, our circuit has made two things clear: (1) if a student is accused of misconduct, the university must hold some sort of hearing before imposing a sanction as serious as expulsion or suspension, and (2) when the university's determination turns on the credibility of the accuser, the accused, or witnesses, that hearing must include an opportunity for cross-examination. *Univ. of Cincinnati*, 872 F.3d at 399–402; *Flaim*, 418 F.3d at 641. Due process requires cross-examination in circumstances like these because it is "the greatest legal engine ever invented" for uncovering the truth. *Univ. of Cincinnati*, 872 F.3d at 401–02 (citation omitted). Not only does cross-examination allow the accused to identify inconsistencies in the other side's story, but it also gives the fact-finder an opportunity to assess a witness's demeanor and determine who can be trusted. *Id.* So if a university is faced with competing narratives about potential misconduct, the administration must facilitate some form of cross-examination in order to satisfy due process. *Id.* at 402.

*Id.,* at 581. The Court recognized, "[the risk of the university erroneously depriving Doe of his protected interests] is all the more troubling considering the significance of Doe's interests and the minimal burden that the university would bear by allowing cross-examination in Doe's case." *Baum*, at 581, citing *Matthews*, at 334–35, 96 S.Ct. 893.

"In *University of Cincinnati*, [the Sixth Circuit Court of Appeals] explained that an accused's ability "to draw attention to alleged inconsistencies" in the accuser's statements does not render cross-examination futile." *Baum*, at 582, citing *Univ. of Cinn.,* at 401–02. "Cross-examination is essential in cases like Doe's because it does more than uncover inconsistencies—it 'takes aim at credibility like no other procedural device.'" *Id.* Without adversarial questioning, an accused cannot probe a witness's story to test memory, intelligence, or potential ulterior motives and the fact-finder cannot observe the witness's demeanor under that questioning. *Id.,* at 402. When credibility is in dispute and material to the outcome, "due process ***requires*** cross-examination." *Baum*, at 584 (emphasis added). "[W]ritten statements cannot substitute for cross-examination," because such statements do not allow for the back-and-forth adversarial questioning, probing or observation of the witness's demeanor. *Id*, at 582-83, referencing *Brutus Essay XIII,* in The Anti-Federalist 180 (Herbert J. Storing ed., 1985) ("It is of great importance in the distribution of justice that witnesses should be examined face to face, that the parties should have the fairest opportunity of cross-examining them in order to bring out the whole truth; there is something in the manner in which a witness delivers his testimony which cannot be committed to paper, and which yet very frequently gives a complexion to his evidence, very different from what it would bear if committed to writing ...").

Andrew Doe's Complaint that is presently before this Court arises out of the University of Mississippi's response to allegations of sexual misconduct brought against him. Doe has asserted violations of Title IX as well as Constitutional due process claims against the Defendants relating to the investigation and disciplinary action taken against him. Although the Defendants in the herein have argued that Doe has not pled viable claims, the Sixth Circuit's ruling in *Baum* suggests that absent an opportunity to cross-examine an accuser and adverse witnesses, the denial of due

process is not merely possible, but likely.  This is further bolstered by the Department of Education's positions articulated in the proposed amended Title IX regulations.

Throughout his disciplinary proceeding with the University of Mississippi, Andrew Doe was deprived of the most basic features of civil litigation that are designed to promote reliability and fairness.  As set forth in the Amended Complaint, Doe was denied ***any*** opportunity to compel witness attendance at the disciplinary hearing or to cross-examine Roe, the other witnesses and Honey Ussery.  Neither Doe's accuser nor any other witness elected to attend the disciplinary proceedings.  [Docket # 9, ¶74]   Rather, the allegations against Doe were asserted within a summary report prepared by the Title IX Coordinator. The only person to provide any live testimony was Andrew Doe himself, and he denied the University's allegations asserted against him. Neither Doe nor the hearing panel were given the opportunity to see Doe's accuser or any witness, or to question them.  They could not question the veracity of the witness summaries given by the Title IX Coordinator, question inconsistencies of Doe's accuser and witnesses or assess the demeanor of the accused and other witnesses.  Despite depriving Doe of these most basic due process protections, the University still used the lowest evidentiary standard for a disciplinary investigation that led a multi-year suspension and a permanent notation on Doe's transcript.  It is clear that Doe has articulated viable due process and Title IX claims within his Complaint, and these claims are sufficient to merit the denial of the Defendants' pending Motion to Dismiss.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully requests the Court dismiss the Defendants' Motion to Dismiss in its entirety.

RESPECTFULLY SUBMITTED, this, the 20th day of November, 2018.

>Respectfully submitted,
>
>**Andrew Doe,**
>**Plaintiff**
>
>By: */s/ Michelle T. High*
>      Michelle T. High

J. Lawson Hester (MSB # 2394)
lhester@pbhfirm.com
Michelle T. High (MSB #100663)
mhigh@pbhfirm.com
Pettis, Barfield & Hester, P.A.
P.O. Box 16089
Jackson, Mississippi 39236-6089

## CERTIFICATE OF SERVICE

I, Michelle T. High, hereby certify that I have this day filed the foregoing document electronically with the U.S. District Court, Southern District of Mississippi Clerk of Court's PACER/ECF system which provided a true and correct electronic copy to the following counsel of record:

>J. Cal Mayo, Jr.
>cmayo@mayomallette.com
>Paul B. Watkins, Jr.
>pwatkins@mayomallette.com
>J. Andrew Mauldin
>dmauldin@mayomallette.com
>Mayo Mallette PLLC
>P.O. Box 1456
>Oxford, Mississippi 38655
>**COUNSEL FOR DEFENDANTS**

SO CERTIFIED, this the 20th day of November, 2018.

>*/s/ Michelle T. High*
>Michelle T. High