IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANDREW DOE                                                                                          PLAINTIFF

V.                                              CIVIL ACTION NO. 3:18-CV-138-DPJ-FKB

THE UNIVERSITY OF MISSISSIPPI, ET AL.                                        DEFENDANTS

**DEFENDANTS' SUPPLEMENT IN SUPPORT OF MOTION TO DISMISS**

The rights of an accused student in a student conduct proceeding are not equal to the rights of a criminal defendant, and Plaintiff Andrew Doe was heard at a meaningful time in a meaningful manner. This Court should dismiss his Complaint in its entirety.

1.   *The University's process was constitutionally sufficient.*

The Fifth Circuit has held "due process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct."[1] In determining the amount of process due, the Court should consider: a) the student's interest that will be affected, b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional safeguards, and c) the university's interests, including the burden that additional procedures would entail.[2] Doe's supplemental response focuses on his inability to "cross-examine" Bethany Roe during his disciplinary hearing. However, the University's policies allowed Doe to submit questions for any witness who appeared at his hearing,[3] and the Court recently found in another case that this procedure did not violate a student respondent's due process rights.[4] The University's process did not deprive Doe of an

---

[1] *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961).
[2] Doe v. Univ. of Miss., 2018 U.S. Dist. LEXIS 123181, *18 (S.D. Miss. Jul. 24, 2018); *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).
[3] Sexual Misconduct Student Adjudication Process, p. 8 ¶ 14 [Doc. 40].
[4] *Doe v. Univ. of Miss.*, No. 3:18-CV-63, 2018 U.S. Dist. LEXIS 123181, at *23-24 (S.D. Miss. July 24, 2018).

opportunity to cross-examine Roe; she was not questioned at the hearing *because she chose not to attend*.[5] The University does not have power to compel the attendance of any witness at a disciplinary hearing, and this Court recently held the absence of such authority did not violate a student respondent's due process rights.[6]

The third prong of the *Matthews* test – the University's interests and the burden of additional or different procedures – weighs strongly against the rule of mandatory cross-examination Doe proposes. The appropriate relief for a disciplined student who establishes a due process violation is "another hearing with different procedures."[7] Because the University would still lack the power to compel witness attendance if the Court ordered a new hearing, the University's options on rehearing would be limited to exclusion of an absent witness' prior statement or outright dismissal of the disciplinary proceedings. Either alternative would impose a substantial burden on the University, as they would effectively prohibit the University from carrying out student disciplinary proceedings where a third party elects not to attend.

Under Title IX, a university may be liable if an "appropriate person" has knowledge that sexual discrimination or harassment occurred and "the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities."[8] While Roe did not appear at Doe's disciplinary hearing, she participated in the investigative process and reported to the police that she had been sexually assaulted. Roe's friends reported to the Title IX Coordinator that she told them she did not want to go to Doe's apartment and that he had raped

---

[5] Sec. Am. Compl. p. 19 ¶ 74.
[6] *Doe*, 2018 U.S. Dist. LEXIS 123181, at *22-23.
[7] *Doe v. Univ. of Miss.*, 3:18-CV-63 (S.D. Miss. Aug. 17, 2018) (*citing Doe v. Alger*, No. 5:15-CV-00035, 2017 WL 1483577, at *2 (W.D. Va. Apr. 25, 2017).
[8] *See*, e.g., *Williams v. Bd. of Regents*, 477 F.3d 1282, 1294 (11th Cir. 2007).

her. Doe's effective argument – that the University must ignore this evidence and/or dismiss Roe's complaint unless she attends his hearing – cuts against the University's ability to comply with its Title IX obligations and its interest in ensuring the safety and well-being of its students.[9]

Moreover, nothing prohibits consideration of hearsay statements and records in student disciplinary matters,[10] and the Fifth Circuit emphasized recently that a "university is not a court of law, and it is neither practical nor desirable it be one."[11] While due process requires that students in collegiate disciplinary proceedings have an adequate opportunity to respond, "their rights in the academic disciplinary context are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial."[12]

Doe makes no attempt to weigh the burden placed on the University by his requested procedural safeguard. The University's inability to process complaints regarding alleged student misconduct whenever a witness or party declines to appear at a hearing, however, will significantly hamstring the University's disciplinary process. Doe's proposed rule would also give rise to complicated legal issues regarding hearsay and exclusion that the University must wade through to determine whether non-party statements from witnesses, police officers, and others should be considered in student conduct hearings.

---

[9] *See, e.g.*, *Doe v. Ohio St. Univ.*, 136 F. Supp. 3d 854, 871 (S.D. Ohio 2016); *Bonnell v. Lorenzo*, 241 F.3d 800, 822 (6th Cir. 2001).

[10] *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 405 (6th Cir. 2017); *see also Crook v. Baker*, 813 F.2d 88, 99 (6th Cir. 1987) ("It is clear that admission of hearsay evidence [at a school disciplinary proceeding] is not a denial of procedural due process."); *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005) (holding a university student has "no right to [the] use of formal rules of evidence" at disciplinary hearing) (citing *Nash v. Auburn Univ.*, 812 F.2d 655, 665 (11th Cir. 1987)).

[11] *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2016) (*citing Flaim*, 418 F.3d at 635 n.1).

[12] *Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987); *Jenkins v. La. State Bd. of Educ.*, 506 F.2d 992, 1000 (5th Cir. 1975).

While the University could attempt to create a process that mirrors a civil or criminal court proceeding, both the Supreme Court and the Fifth Circuit have consistently held that school disciplinary proceedings should not track the judicial system.[13] Instead, the ultimate question is whether the University's process provides notice and an opportunity to be heard. The University's process passes constitutional muster.

2. *The Fifth Circuit is unlikely to trade its own precedent for that of the Sixth Circuit.*

Doe relies on the Sixth Circuit's opinion in *Doe v Baum* in arguing for a sweeping right to cross-examination. In that case, the Sixth Circuit held that "if a university is faced with competing narratives about potential misconduct, the administration must facilitate some form of cross-examination in order to satisfy due process."[14] But in reaching that determination, the Sixth Circuit has largely looked to criminal cases for the procedure's alleged constitutional origin.[15]

In *Doe v. Cincinnati*, for instance, the first case in which the Sixth Circuit actually held that cross-examination was "essential to due process," the court relied largely on criminal cases when discussing the constitutional importance of cross-examination.[16] Several of those cases discussed the right of cross-examination under the Sixth Amendment's Confrontation Clause,

---

[13] *See Plummer*, 860 F.3d at 774 n.7 ("[A] school is an academic institution, not a courtroom or administrative courtroom.") (internal quotation omitted).
[14] 903 F.3d 575, 575 (6th Cir. 2018).
[15] *See id.* at 578 (citing *Maryland v. Craig*, 497 U.S. 836, 857, 110 S. Ct. 3157 (1990)).
[16] *See Doe v. Cincinnati*, 872 F.3d 393, 401 (6th Cir. 2017) (citing *Watkins v. Sowders*, 449 U.S. 341, 349, 101 S. Ct. 654 (1981) (determining that a state **criminal** trial court was not constitutionally required to conduct a hearing outside the presence of the jury on the admissibility of identification evidence), *Maryland v. Craig*, 497 U.S. 836, 846, 110 S. Ct. 3157 (1990) (analyzing the extent of **cross-examination owed to criminal defendants under the Sixth Amendment**), *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105 (1974) (determining the scope of cross-examination regarding possible bias **owed to criminal defendants under the Sixth Amendment**), *Mattox v. United States*, 156 U.S. 237, 242-43, 15 S. Ct. 337, 39 L. Ed. 409 (1895) (discussing the **importance of cross-examination to criminal defendants** but holding that "[t]o say that a criminal, after having once been convicted by the testimony of a certain witness, should go scot free simply because death has closed the mouth of that witness, would be carrying his constitutional protection to an unwarrantable extent.")).

4

which by its own terms applies only "[i]n all criminal prosecutions."[17] In *Baum*, the Sixth Circuit bolstered that authority with eulogistic discussions of cross-examination pulled from an anti-federalist paper, *A Few Good Men*, and *My Cousin Vinny*.[18]

Thus, despite asserting that a student disciplinary hearing "need not take on the formalities of a criminal trial,"[19] that the procedures afforded to students "need not reach the same level that would be present in a criminal prosecution,"[20] and that the inquiry is whether the student "had an opportunity to respond explain and defend, not whether a jury could constitutionally convict [the student] using the same procedures,"[21] the Sixth Circuit essentially grafted the Sixth Amendment onto student disciplinary proceedings.

The Sixth Circuit's blanket mandate also leaves no room to apply the *Matthews* factors to determine whether cross-examination is necessary in a particular case. According to the Sixth Circuit, "[i]f a public university has to choose between competing narratives to resolve a case, the university **must** give the accused student or his [or presumably her] agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder."[22]

Even in the criminal context, cross-examination is not an unyielding mandate, and there are circumstances in which evidence may be introduced against an accused without an opportunity for cross-examination. While the Confrontation Clause guarantees the right of a criminal defendant "to be confronted with the witnesses against him," previously-given

---

[17] UNITED STATES CONSTITUTION, AMENDMENT VI.
[18] *Baum*, 903 F.3d at 582 n.1, 583.
[19] *Cincinnati*, 872 F.3d at 399 (internal quotation omitted).
[20] *Id*.
[21] *Id*.
[22] *Baum*, 903 F.3d at 578 (emphasis added).

5

testimonial statements may be introduced at trial against the accused where the witness is unavailable and the defendant had a prior opportunity for cross-examination.[23] Moreover, documents that are not "testimonial," such as business records or statements in furtherance of a conspiracy, may be admitted in evidence in a criminal trial even where there was no previous opportunity for cross-examination.[24]

Recognizing that "[u]niversities do not have subpoena power," the Sixth Circuit has maintained that "nothing in [its] decision jeopardizes [a university's] ability to rely on hearsay statements."[25] That assurance, however, is difficult to square with its holding that a fact-finder cannot resolve a disputed account between the complainant and respondent without facilitating live cross-examination of all witnesses.[26] Although the Sixth Circuit has acknowledged that "the use of hearsay does not itself trigger the right to question an adverse witness," it has not provided guidance on what universities are to do when, as here, the complainant participates in the investigatory process but does not appear at the student conduct hearing.[27]

The Sixth Circuit's holding in *Baum* recently drew criticism from this Court when Judge Keith Starrett opined "that the majority in *Baum* went too far."[28] As the Court explained, the Sixth Circuit in *Baum* issued a holding it "was simply not called upon to make," and its discussion regarding the form of cross-examination required in student conduct proceedings was mere dicta.[29] Judge Starrett further noted that the Supreme Court's admonishment that "[j]udicial

---

[23] *See U.S. v. Harper*, 527 F.3d 396, 400 (5th Cir. 2008) (*citing Crawford v. Washington*, 541 U.S. 36 (2004)).
[24] *See U.S. v. Becerra-Valadez*, 448 F. App'x 457, 461 (5th Cir. 2011) (*internal citation omitted*).
[25] *Univ. of Cincinnati*, 872 F.3d at 393.
[26] *Baum*, 903 F.3d at 583.
[27] *Univ. of Cincinnati*, 872 F.3d at 393.
[28] *See* Mem. Op., at 6, *Doe v. Univ. of S. Miss.*, 2:18-CV-153-KS-MTP (S.D. Miss. Nov. 27, 2018) [Doc. 49].
[29] *Id*. at p. 8.

interposition in the operation of the public school system of the Nation raises problems requiring care and restraint," counseled against the Sixth Circuit's edict on direct cross-examination.[30]

The Fifth Circuit reiterated in *Plummer* it had not been required to determine "whether confrontation and cross-examination would ever be constitutionally required in student disciplinary proceedings."[31] Instead, the court focused on whether the students "received multiple, meaningful opportunities to challenge the University's allegations, evidence, and findings."[32] Moreover, the Fifth Circuit long ago held that the requirement of some kind of due process hearing does not "imply that a full-dress judicial hearing, **with the right to cross-examine witnesses**, is required."[33] According to the Fifth Circuit, "[s]uch a hearing, with the attending publicity and disturbance of college activities, might be detrimental to the college's education atmosphere and impractical to carry out."[34] The Fifth Circuit has also held a respondent student was not entitled to the "opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident" even when defending claims that he had "persistently harassed and threatened his ex-girlfriend through email and social networking sites . . . and physically confronted her."[35]

Accordingly, because the Sixth Circuit's decisions regarding mandatory cross-examination fail to adequately weigh the *Matthews* factors and are inconsistent with the Fifth Circuit's own decisions regarding student due process, the Fifth Circuit is unlikely to abandon its

---

[30] *Id.*
[31] *Plummer v. Univ. of Houston*, 860 F.3d 767, 775 (5th Cir. 2017).
[32] *Plummer*, 860 F.3d at 774.
[33] *Dixon*, 294 F.2d at 159 (emphasis added).
[34] *Id.*
[35] *Esfeller v. O'Keefe*, 391 Fed. App'x 337, 338 (5th Cir. 2010).

precedent in favor of the Sixth Circuit's formalization of student conduct hearings.

3.     ***The Court shouldn't look to the Department of Education for help with the Constitution.***

The Department of Education states that its proposed regulations are designed to "ensur[e] that due process protections are in place for individuals accused of sexual harassment."[36] However, as Judge Starrett recently noted, the federal courts determine what the Constitution requires.[37] While the federal judiciary may accord considerable deference to an agency's interpretations of its own organic statutes (those statutes Congress has tasked an agency with enforcing), courts do not afford agencies deference in interpreting the United States Constitution.[38] Because courts "have superior competence in interpreting—and constitutionally vested authority and responsibility to interpret—the content of the Constitution," courts should "not defer to the agency on issues of substantive legal interpretation."[39] Moreover, even if the Court were inclined to grant deference to the executive branch, the proposed regulations are not yet entitled to such persuasive authority. The proposed regulations have not been subject to public comment or revision, and they have not been subject to the formal rulemaking process that is necessary to imbue them with deference from the courts.[40]

THIS, the 11th day of December, 2018.

---

[36] 34 Fed. Reg. 106 (Nov. 29, 2018).
[37] Mem. Op. and Order p. 9, *Doe v. Univ. of S. Miss.*, 2:18-CV-153-KS-MTP (S.D. Miss. Nov. 27, 2018) [Doc. 49].
[38] *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1233 (D. N. Mex. 2014); *see also U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1231 (10th Cir. 1999) ("deference to an agency interpretation is inappropriate not only when it is conclusively unconstitutional, but also when it raises serious constitutional questions.").
[39] *Id*. (citing *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1085 (10th Cir. 2006)); *see also Ali v. Lynch*, 814 F.3d 306, 309 (5th Cir. 2016); *see also Latta v. Otter*, 771 F.3d 456, 469 (9th Cir. 2014).
[40] *See Freeman v. Quicken Loans*, 626 F.3d 799, 806 (5th Cir. 2010).

Respectfully submitted,

**STATE OF MISSISSIPPI; THE UNIVERSITY OF MISSISSIPPI; STATE INSTITUTIONS OF HIGHER LEARNING; THE BOARD OF TRUSTEES OF STATE INSTITUTIONS OF HIGHER LEARNING; C.D. SMITH, JR.; SHANE HOOPER; TOM DUFF; DR. FORD DYE; ANN H. LAMAR; DR. ALFRED E. MCNAIR, JR.; CHIP MORGAN; HAL PARKER; ALAN W. PERRY; CHRISTY PICKERING; DR. DOUG ROUSE; DR. J. WALT STARR; GLENN F. BOYCE; JEFFREY S. VITTER; TRACY MURRY; HONEY USSERY**

*/s/ J. Andrew Mauldin*
J. CAL MAYO, JR. (MB NO. 8492)
PAUL B. WATKINS, JR. (MB NO. 102348)
J. ANDREW MAULDIN (MB NO. 104227)
ATTORNEYS FOR DEFENDANTS

OF COUNSEL:

MAYO MALLETTE PLLC
5 University Office Park
2094 Old Taylor Road
Post Office Box 1456
Oxford, Mississippi 38655
Tel: (662) 236-0055
cmayo@mayomallette.com
pwatkins@mayomallette.com
dmauldin@mayomallette.com