UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANDREW DOE                                                                                    PLAINTIFF

V.                                                            CIVIL ACTION NO. 3:18-CV-138-DPJ-FKB

THE UNIVERSITY OF MISSISSIPPI, ET AL.                                         DEFENDANTS

ORDER

Defendants in this sex-discrimination case ask the Court to dismiss Plaintiff Andrew

Doe's Second Amended Complaint in its entirety.  As detailed below, Defendants' Motion to

Dismiss [33] is granted in part but otherwise denied.

I.       Facts and Procedural History

This case centers around a December 2, 2016 sexual encounter between Plaintiff Andrew

Doe and Bethany Roe, both undergraduate students at the University of Mississippi.  While both

participants were intoxicated at the time, Doe and Roe agree that they had sexual intercourse on

December 2.  Doe maintains that the encounter was consensual, but Roe's friends called law

enforcement and reported the incident as a sexual assault.  Roe underwent an examination at the

hospital that evening.  A representative of the University's Title IX Office appeared at the

hospital and opened a Title IX investigation into the incident.

Defendant Honey Ussery, the University's Title IX Coordinator, conducted the Title IX

investigation and submitted a report to Defendant Tracy Murry, the Director of the University's

Office of Conflict Resolution and Student Conduct.  Murry notified Doe of the charges and

scheduled a disciplinary hearing before a panel of the University Judicial Council.

The Judicial Council held a hearing on March 31, 2017, and found Doe responsible.  As

punishment, the Judicial Council expelled Doe from the University.  Doe appealed, and on April

27, 2017, the Appellate Consideration Board upheld the finding that Doe was responsible but changed the sanction levied from expulsion to suspension until fall 2020.

On March 5, 2018, Doe filed this lawsuit alleging discrimination claims under Title IX, due-process claims under 42 U.S.C. § 1983, and a state-law claim for breach of contract.  He filed an Amended Complaint on April 4, 2018, and a Second Amended Complaint on May 16, 2018, to add new defendants.  The Second Amended Complaint [9] asserts claims against the State of Mississippi; the University of Mississippi; the State Institutions of Higher Learning ("IHL"); the Board of Trustees of the IHL; the Commissioner and all members of the Board of Trustees of the IHL in their official capacities; Jeffrey S. Vitter, in his official capacity as the Chancellor of the University of Mississippi; and Murry and Ussery, in their official and individual capacities.  Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (6), and the matters raised have been fully briefed.[1]

II.    Standards

Defendants raise Eleventh Amendment immunity as to some claims, thus questioning the Court's subject-matter jurisdiction under Rule 12(b)(1).  *United States v. Tex. Tech. Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999).  "The party seeking relief [in federal court] bears the burden of establishing subject-matter jurisdiction."  *Sawyer v. Wright*, 471 F. App'x 260, 261 (5th Cir. 2012).  "Lack of subject matter jurisdiction may be found in any one of three instances:  (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

---

[1] Doe moved for a preliminary injunction [41, 42] on June 22, 2018.  The briefing on those motions is stayed.  Order [53].

2

Defendants also challenge the sufficiency of Doe's pleading under Rule 12(b)(6).  When considering a motion under that rule, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations and footnote omitted).

Generally, in considering a motion under Rule 12(b)(6), the Court "must limit itself to the contents of the pleadings, including attachments thereto."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  An exception to this rule exists for documents that "are referred to in the plaintiff's complaint and are central to h[is] claim."  *Id.* at 499.  Likewise, the Court may consider public records.  *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995).

In this case, Defendants have attached a number of documents to support their motion to dismiss.  And, in his response, Doe incorporated additional documents he had previously filed to support his motion for preliminary injunction.  The documents the parties submitted include various publications from the United States Department of Education, Ussery's investigative report, a transcript of the hearing, and other documents generated as part of the University's handling of the Title IX complaint against Doe.  Some of these documents would be proper for

3

the jurisdictional issues only.  Others can be considered under both Rule 12(b)(1) and 12(b)(6).

In sum, the Court concludes that it can rule on the Rule 12(b)(6) motion without converting it

under Rule 12(d).  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c),

matters outside the pleadings are presented to and not excluded by the court, the motion must be

treated as one for summary judgment under Rule 56.").

III.    Analysis

   A.    Eleventh Amendment Immunity

"The Eleventh Amendment grants a state immunity from suit in federal court by citizens

of other States and by its own citizens . . . ."  *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*,

535 U.S. 613, 616 (2002) (citation omitted).  Immunity also extends to state agencies that are

considered "arms of the state."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989).  And

"a suit against a state official in his or her official capacity is not a suit against the official but

rather is a suit against the official's office."  *Id.* at 71.  Defendants contend that the Eleventh

Amendment bars Doe's § 1983 and breach-of-contract claims against the State, the University,

IHL, the IHL Board Members and Commissioner, the Chancellor, and Murry and Ussery in their

official capacities.

   1.    Section 1983 Claims

Starting with the § 1983 claims, Doe clarifies that he is not seeking monetary damages on

those claims from the State or arms of the State.  Instead, he says he "*is* seeking declaratory and

injunctive relief against these Defendants with respect to the Constitutional claims."  Pl.'s Mem.

[50] at 13.  But "[t]he Eleventh Amendment bars suit against a state entity, as opposed to a state

official, regardless of whether money damages or injunctive relief is sought."  *Voisin's Oyster*

*House, Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir. 1986).  Because Doe offers no specific

defense of his § 1983 claims against the State, the University, IHL, or the Board of Trustees of the IHL, Defendants' motion is granted as to those claims.

As to the claims for declaratory and injunctive relief against the individual defendants named in their official capacities, Doe invokes the *Ex parte Young* doctrine.  209 U.S. 123 (1908).  In *Ex parte Young*, the Supreme Court "created an exception to Eleventh Amendment immunity for claims for prospective relief against state officials who have been sued in their official capacities."  *Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 320 (5th Cir. 2008).  For a state officer to face liability under *Ex parte Young*, that officer must have "some connection" to the requested relief.  *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014).  Thus, a defendant who "is not in a position to provide the requested relief" is not a proper party under the *Ex parte Young* doctrine.  *Fairley v. Stalder*, 294 F. App'x 805, 812 (5th Cir. 2008).

Defendants seem to acknowledge that Doe's "requests for expungement, sealing [of his records,] and re-enrollment" qualify as appropriate prospective relief under *Ex parte Young*. Defs.' Mem. [34] at 7; *see Nelson*, 535 F.3d at 324 ("[A] request for reinstatement is sufficient to bring a claim within the *Ex parte Young* exception to Eleventh Amendment immunity, as it is a claim for prospective relief designed to end a continuing violation of federal law.").  But Defendants say "the only state official with any connection to such claim for relief is the Chancellor of the University."  Defs.' Mem. [34] at 7; *see Air Evac EMS, Inc. .v Tex. Dep't of Ins., Div. of Worker's Compensation*, 851 F.3d 507, 519 (5th Cir. 2017) ("Thus, the *Ex parte Young* analysis turns on the complaint's context—including the challenged state law and defendants—to determine whether 'the state officer, by virtue of his office, has some connection with the enforcement of the act.'" (quoting *Ex parte Young*, 209 U.S. at 157)).

Doe responds by noting that he has alleged "the members of the Board of Trustees of State Institutions of Higher Learning, the Commissioner of Higher Learning and both Tracy Murry and Honey Ussery[] have duties and responsibilities related to policy development, ensuring compliance with the law and the day-to-day administration of disciplinary proceedings."  Pl.'s Mem. [50] at 15.  But Doe has neither shown nor pleaded a plausible claim that any of the official-capacity defendants other than Chancellor Vitter have the ability to grant the relief requested.  *See El-Bawab v. Jackson State Univ.*, No. 3:15-CV-733-DPJ-FKB, 2018 WL 543040, at *3 (S.D. Miss. Jan. 24, 2018) (finding former University president was "the only individual defendant who ever had authority to grant the prospective relief" plaintiff sought—"an immediate promotion to full professor").

Accordingly, Doe has not met his burden of establishing the *Ex parte Young* exception to Eleventh Amendment immunity as to the § 1983 claims against Defendants C.D. Smith, Jr., Shane Hooper, Tom Duff, Dr. Ford Dye, Ann H. Lamar, Dr. Alfred E. McNair, Jr., Chip Morgan, Hal Parker, Alan W. Perry, Christy Pickering, Dr. Doug W. Rouse, Dr. J. Walt Starr, and Glenn F. Boyce—the Commissioner and members of the Board of Trustees of IHL—or the official-capacity claims against Murry and Ussery.  Those claims are dismissed for lack of subject-matter jurisdiction.[2]  The *Ex parte Young* claim against Chancellor Vitter will be addressed later in this Order.

2.      Breach-of-Contract Claim

As to the breach-of-contract claim against the State and arms of the State, Doe is correct that Mississippi has "waive[d] its immunity from suit for a breach of contract when it enters into

---

[2] The Commissioner and members of the Board of Trustees of IHL were named in their official capacities only.

a contract."  Pl.'s Mem. [50] at 33; *see Cig Contractors, Inc. v. Miss. State Bldg. Comm'n*, 399 So. 2d 1352, 1355 (Miss. 1981).  But a state's "general waiver of sovereign immunity . . . does not constitute a waiver by the state of its constitutional immunity under the Eleventh Amendment from suit in federal court."  *Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981).  So "[w]hile Mississippi has waived its state sovereign immunity to suit in state court for breach of contract, there is no unequivocal statement of its intent to also waive its Eleventh Amendment immunity to suit in federal court."  *Moore v. Univ. of Miss. Med. Ctr.*, 719 F. App'x 381, 387–88 (5th Cir. 2018).  Doe's breach-of-contract claims against the State Defendants are dismissed without prejudice for lack of subject-matter jurisdiction.

B.      Title IX Claims

Title IX provides:  "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Defendants primarily assert three arguments for dismissing the Title IX claims:  (1) the University is the only defendant properly characterized as an education program or activity that receives federal funding and is therefore the only defendant potentially liable under Title IX; (2) monetary damages are not available under Title IX; and (3) the Amended Complaint otherwise fails to state a claim under Title IX.  The Court concludes that Doe's Title IX claim withstands Defendants' arguments.

The Supreme Court has held that Title IX is enforceable through an implied private cause of action.  *Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979).  And as Spending Clause legislation, "Title IX generates liability when the recipient of federal funds agrees to assume liability." *Pederson v. La. State Univ.*, 213 F.3d 858, 876 (5th Cir. 2000).  "For State and local

governments, only the department or agency which receives the aid is covered.  Where an entity

of state or local government receives federal aid and distributes it to another department or

agency, both entities are covered." *Alegria v. Tex.*, No. G-06-0212, 2007 WL 2688446, at *13

(S.D. Tex. Sept. 11, 2007), *aff'd sub nom. Alegria v. Williams*, 314 F. App'x 687 (5th Cir. 2009).

Finally, a party asserting claims under Title IX may seek monetary damages.  *Franklin v.*

*Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 73 (1992); *see also Fryberger v. Univ. of Ark.*, 889 F.3d

471, 477 (8th Cir. 2018) (holding that monetary damages are available under Title IX).[3]

  Many courts have allowed Title IX claims in the context of university disciplinary

proceedings, starting with the Second Circuit's decision in *Yusuf v. Vassar College*, 35 F.3d 709,

714–15 (2d Cir. 1994).  Defendants say, however, that "the Fifth Circuit has declined to do so"

and therefore this Court should likewise "decline to adopt such theories of liability."  Defs.'

Mem. [34] at 9–10 (citation omitted).   For starters, Defendants cite no Fifth Circuit cases that

actually "declined to adopt" this theory.  *Id.*  And while the Fifth Circuit may not have directly

examined the question, it has reviewed several Title IX claims related to university disciplinary

proceedings.  *See Arceneaux v. Assumption Par. Sch. Bd.*, 773 F. App'x 175, 179 (5th Cir.

2018); *Plummer v. Univ. of Hous.*, 860 F.3d 767 (5th Cir. 2017).

---

[3] While Defendants say only the University is a funding recipient subject to Title IX, Doe
counters that the State Defendants—the State of Mississippi, IHL and the Commissioner and
members of its Board of Trustees, and the University—are all subject to liability under Title IX.
Without converting the Rule 12(b)(6) motion into a Rule 56 motion, the Court cannot
definitively say which State Defendants face Title IX liability.  But the claim at least seems
plausible, so the Court will let the Title IX claim go forward against the defendants Doe says
Title IX covers:  the State, the University, IHL, and the Commissioner and members of the
Board of Trustees of IHL.

So too, district courts within the Fifth Circuit have consistently addressed this type of Title IX claim.  *See, e.g.*, *Klocke v. Univ. of Tex. at Arlington*, No. 4:17-CV-285-A, 2018 WL 2744972, at *5 (N.D. Tex. June 7, 2018).  Based on this history and the text of Title IX itself, the statute applies in this context.

As for its standards, the Second Circuit developed "two general theories" under which "a university can face Title IX liability for imposing discipline when gender is a motivating factor": the erroneous-outcome and selective-enforcement theories.  *Plummer*, 860 F.3d at 777.  Two additional theories have also developed:  the deliberate-indifference and archaic-assumptions theories.  *Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018).  Doe appears to assert claims under the erroneous-outcome, selective-enforcement, and deliberate-indifference standards for Title IX liability.  Pl.'s Mem. [50] at 10.

Starting with erroneous outcome, Doe says "he was innocent of the charges that were presented and wrongfully found to have committed an offense in [the University's] disciplinary proceedings."  Pl.'s Mem. [50] at 9.  A "[p]laintiff[] who claim[s] that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding."  *Yusuf*, 35 F.3d at 715.  Additionally, the plaintiff must "allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding. . . .  Such allegations might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."  *Id.*  Defendants focus on the second element—whether Doe has pleaded facts showing gender bias.

To begin, the Amended Complaint does include references to gender bias that are conclusory and therefore must be ignored under *Iqbal*/*Twombly*.  *See, e.g.*, Am. Compl. [9] ¶¶ 6

("The University, Defendant Murry, and Defendant Ussery . . . exhibited a gender bias towards Andrew Doe."), 136 ("Doe was wrongly found to have committed sexual assault[,] and gender bias was a motivating factor."), 142 ("The totality of the circumstances establishes that the Defendants acted out of a gender bias in reaching the erroneous outcome in this matter and have demonstrated a pattern of inherent and systemic gender bias and discrimination against male students who are accused of sexual misconduct at the University.").

That said, Doe also pleaded facts, including some addressing Defendant Ussery's conduct as Title IX Coordinator.  Under the University's Title IX policies, Ussery was charged with investigating the allegation and "compil[ing] *all evidence*, including the testimony of various witnesses, into a report."  Sexual Misconduct Policy [42-14] at 8 (emphasis added).  Yet the Amended Complaint catalogs exculpatory evidence Ussery excluded:

> Defendant Ussery's written report did not address or summarize the statements made by Bethany Roe to her physician or the police despite these statements containing highly exculpatory information.  The report did not evidence any attempt by Ussery to interview the responding officers, persons who attended the pre-game party with Roe and Andrew Doe, or persons the couple spent time with at the party.  Furthermore, the cab driver who took Roe and Doe to the fraternity party and back to Doe's apartment was not interviewed and there was no assessment of any text messages or phone calls between Doe, Roe, the cab driver, or Roe's roommate. . . .
>
> No recorded, handwritten or typed statements (sworn or unsworn) from any of the witnesses were included with Defendant Ussery's report, nor was a statement from Andrew Doe.  The report did not address nor contain Roe's medical records which clearly indicated Roe did not believe she was raped.  Similarly, copies of relevant and exculpatory text messages were not included.

Am. Compl. [9] ¶¶ 67–68.[4]  Doe further criticizes Ussery by alleging that she referred to another complainant as the "victim" during an investigation and once stated publicly that she had never seen a case of "regret" sex.  *Id.* ¶¶ 103–04.

Regarding the Judicial Council panel that handled his hearing, Doe says a female member "had previously mocked the defenses raised by men accused of sexual assault."  *Id.* ¶ 72. Finally, Doe also asserts that Defendants treated him less favorably than Roe for engaging in the same conduct:  "proceed[ing] with sexual activity while [one's] companion was under the influence of alcohol."  *Id.* ¶ 100.  Doe avers that "when heterosexual couples engage in sexual activity while [both are] under the influence of alcohol at the University of Mississippi, males will be found [r]esponsible for sexual misconduct and females will be considered 'victims.'"  *Id.* ¶ 101.

Taken together, and viewed in the light most favorable to Doe, these allegations state a plausible claim of gender bias in the outcome of his disciplinary hearing.  While Defendants' arguments might ultimately prevail, the Court is not willing to say there is no plausible claim. Going back to the basics, Doe must "nudge[ his] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 547.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (emphasis added).  This plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the claim.  *Twombly*, 550 U.S. at 556 (quoted in *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008)).

---

[4] While such allegations, standing alone, might not be indicative of gender bias, *see, e.g.*, *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d 1064, 1074 (D. Colo. 2017), when considered with the other averments in the Amended Complaint, the Court finds Doe clears the Rule 12(b)(6) hurdle.

Having found that the claim survives under at least one recognized theory, the Court need not address the deliberate-indifference and selective-enforcement theories.[5]

       C.       Section 1983 Claims for Injunctive Relief against Chancellor Vitter

Doe pleaded § 1983 claims against Chancellor Vitter under the *Ex parte Young* doctrine based on Fourteenth Amendment substantive and procedural due-process and equal-protection rights.  The Court will address each claim in turn.

       1.       Procedural Due Process

Starting with procedural due process, the concept "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "[D]ue process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct."  *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961).

In *Plummer*, the Fifth Circuit examined whether two students received due process during a university disciplinary proceeding regarding alleged sexual misconduct.  860 F.3d at 773.  The Fifth Circuit noted that "[a] university is not a court of law, and it is neither practical nor desirable it be one."  *Id.* (quoting *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 n.1 (6th Cir. 2005)).  It then applied *Mathews*:

> Generally, the amount of process due in university disciplinary proceedings is based on a sliding scale that considers three factors:  (a) the student's interests that

---

[5] Even if Doe had failed to state a claim, "a plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to re-filing."  *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (citation omitted).  "Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."  *Id.*  Here, Doe would have been given that opportunity.

will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (c) the university's interests, including the burden that additional procedures would entail.

*Id.* (citing *Mathews*, 424 U.S. at 335). These are the *Mathews* factors.

As in *Plummer*, "the first and third *Mathews* factors are easily identified" in this case. *Id.* "On the one hand, [Doe] ha[s] a liberty interest in [his] higher education [and] [t]he sanctions imposed by the University could have a 'substantial lasting impact on [his] personal li[f]e[], educational and employment opportunities, and reputation[] in the community.'" *Id.* (quoting *Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016)) (additional citations omitted). "On the other hand, the University has a strong interest in the educational process, including maintaining a safe learning environment for all its students, while preserving its limited administrative resources." *Id.* So Doe's due-process claim turns on "the second *Mathews* factor—the risk of erroneously depriving [his] interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.* at 774.

In his Amended Complaint, Doe references seven procedural issues in the handling of his disciplinary hearing.

(1) Doe contends that the manner in which the Judicial Council and Appellate Consideration Board members are trained violated his due-process rights. *See* Am. Compl. [9] ¶¶ 93–97, 138.

(2) He contends that Ussery "failed to conduct a thorough and impartial investigation of the allegations brought against [him.]" *Id.* ¶ 4.

(3) Doe asserts that the manner and timing of the selection of the hearing panel violated due process. *Id.* ¶¶ 70–72.

(4) He complains that he was not permitted to cross-examine any witnesses, including Bethany Roe. *Id.* ¶ 74.

(5) He complains that his inability to subpoena witnesses violated due process. *Id.*

13

(6) He argues that the hearing panel's deliberation was perfunctory.  *Id.* ¶ 80.

(7) He says that the use of the preponderance-of-the-evidence standard fails to conform to the requirements of due process.  *Id.* ¶ 112.

The Court will address each alleged procedural shortcoming separately.

> a.      Ussery's Training Materials and Investigation

Doe's first two due-process challenges flow from Ussery's investigation, report, and training materials.  Similar issues were addressed in *Plummer*.  There, the Fifth Circuit affirmed summary judgment against two plaintiffs who were disciplined for an alleged sexual assault despite evidence that the Title IX Coordinator had a conflict of interest and allegedly failed to properly investigate.  The court emphasized that under the second *Mathews* factor, the "amount of process constitutionally required in state university disciplinary proceedings will vary in accordance with the particular facts of each case."  *Id.* at 774 n.8.

Because the evidence of guilt in *Plummer* was overwhelming, the process was deemed sufficient as a matter of law.  As the Fifth Circuit explained, "In light of the graphic conduct depicted in the videos and photo—which the panels viewed for themselves before affirming the University's findings—further procedural safeguards would not have lessened the risk of an erroneous deprivation of [the plaintiffs'] interests or otherwise altered the outcome."  *Id.* at 774 (citing *Mathews*, 424 U.S. at 335).   Accordingly, the plaintiffs failed to show that the issues regarding the Title IX Coordinator "undermined the integrity of their proceedings."  *Id.* at 776.

This case is different for two main reasons.  First, it is before the Court under Rule 12(b)(6), so the issue is plausibility rather than a lack of evidence.  Second, the facts—as pleaded and in the light most favorable to Doe—do not suggest overwhelming proof that Doe sexually assaulted Roe.  Thus, the amount of process due may be higher than in *Plummer*.

Turning then to Doe's arguments regarding Ussery, he says her investigation was flawed, it resulted in an incomplete report that was presented to the Judicial Council as the official report of the Title IX Coordinator, and the panel itself had been trained in a way that prejudiced Doe's ability to be heard.  Starting with the investigation, Doe complains that he "did not meet with Ussery regarding the matter and was never provided with any specifics regarding the allegations by Ussery, nor was he asked to identify potential witnesses or submit any evidence," and that Ussery's report excluded some relevant and exculpatory evidence.  Am. Compl. [9] ¶ 65.

As to the training, Doe makes the following points:  (1) the training material "provides that just because an individual does not protest or resist sexual activity their silence and lack of resistance does not constitute consent," (2) it "provides that when both parties are intoxicated, findings are to be made in favor of the complainant, who is typically female," and (3) the materials "advise the panel members that 'victims' sometimes withhold facts and lie about details, question if they've truly been victimized[,] and 'lie about anything that casts doubt on their account of the event.'"  *Id.* at 12; *see* Am. Compl. [9] ¶¶ 94–96; Pl.'s Mem. [48] at 14 (slightly mis-quoting Training Slides [42-18] at 21 ("The desire (sometimes) to increase their credibility by leaving out or lying about anything that might cast doubt on their account of events.")).

Taken as a whole, the Court concludes that Doe has stated a plausible claim.  This is a consent-based case in which the victim did not appear before the hearing panel, yet there seems to have been an assumption under Ussery's training materials that an assault occurred.  As a result, there is a question whether the panel was trained to ignore some of the alleged deficiencies in the investigation and official report the panel considered.  Coupled with the alleged deficiencies in the investigation, it is plausible that the scales were tipped against Doe to

such a degree that further procedural safeguards may have lessened the risk of an erroneous deprivation. *Mathews*, 424 U.S. at 335. These claims survive.

> b.   Panel Selection

Doe complains that "[p]rior to the hearing, [he] was not informed that he had the right to know the identity of the panel members or the right to challenge a panel member." Am. Compl. [9] ¶ 70. He says when he arrived for his hearing, "he learned that all panel members had not yet been selected," so "[t]he hearing was delayed in order for the University to find a third panel member," who "was presented with the case file for the first time" "[a]pproximately fifteen minutes before the hearing began." *Id.* ¶ 71. Doe asserts that "one of the female panel members selected . . . to preside over his hearing had previously mocked the defenses raised by men accused of sexual assault." *Id.* ¶ 72. And he contends that "one of the panelists did not even identify himself at the hearing" making it impossible for Doe to "reasonably assess the appropriateness of [that] panel member[]." Pl.'s Mem. [48] at 21.

Doe is correct that, pursuant to the University's Sexual Misconduct Policy, "the complainant and respondent will have an opportunity to see a list of board members who will be serving as fact-finders and request recusal of any they have reason to believe are biased" prior to the hearing. Sexual Misconduct Policy [42-14] at 9. But "[t]he fact that a valid school policy . . . was not followed is not by itself significant in determining whether procedural due process has been violated." *Vann ex rel. Vann v. Stewart*, 445 F. Supp. 2d 882, 888 (E.D. Tenn. 2006); *see also Brown v. Tex. A & M Univ.*, 804 F.2d 327, 335 (5th Cir. 1986) ("The failure of a state

agency to comply with its internal regulations is insufficient as a matter of law to establish a violation of Due Process, because constitutional minima nevertheless may have been met.").[6]

But the presence of an allegedly biased panel member raises a due-process problem. "[A] biased decisionmaker [is] constitutionally unacceptable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). This portion of the claim will go forward. And because some of the panel-selection claim will proceed, the Court will allow the allegation regarding the panel member who did not identify himself to go forward as well.

c.    Cross-Examination

Because neither Roe nor any other witnesses against Doe appeared at the hearing, he was not permitted to cross-examine—either directly or through written questions submitted to the hearing panel—the witnesses whose accounts of the evening led to his discipline. To assess the possible impact of cross-examination, it is important to understand the factual context. Doe was found responsible under the University's Sexual Misconduct Policy, which requires consent for all sexual activity and states that "an incapacitated person is not able to give consent." Sexual Misconduct Policy [42-14] at 4. The policy defines incapacitation as follows: "Someone is incapacitated when he or she cannot understand who, what, when, where, why, or how, with respect to the sexual interaction." *Id.* at 5.

The parties agree that Doe and Roe were intoxicated on the night of their encounter, but Roe's level of intoxication—particularly as it relates to the "who, what, when, where, why, or how" of the encounter—is less clear from the record before the hearing panel. Starting with the

---

[6] Even in most criminal contexts, "it is within the discretion of the trial judge to withhold the list of prospective jurors until the day of the trial." *United States v. Scallion*, 533 F.2d 903, 913–14 (5th Cir. 1976), *on reh'g*, 548 F.2d 1168 (5th Cir. 1977). And by statute, advance disclosure is mandated only in treason and capital-offense cases. 18 U.S.C. § 3432.

police reports from the night of the fraternity party, Roe seemed to have some ability to understand what was happening:  she knew she had returned to Doe's apartment after the party, that they went into a bedroom, and that they had intercourse.  Ussery Report [40-1] at 9, 11, 16. But a few days later, Roe came to the police department with her parents and told police officers that she "did not remember having sex with [Doe.]"  *Id.* at 13.  Roe later intimated to Ussery that her drink may have been spiked at the pre-game party and claimed to not remember anything after she left the fraternity party.  *Id.* at 1–2.

"In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."  *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970).  Yet the Fifth Circuit has not "determine[d] whether confrontation and cross-examination would ever be constitutionally required in student disciplinary proceedings." *Plummer*, 860 F.3d at 775.

The Sixth Circuit has made that determination, recently noting that while "[t]he right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings," "[a]ccused students must have the right to cross-examine adverse witnesses 'in the most serious of cases.'"  *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 400–01 (6th Cir. 2017) (quoting *Flaim v. Med. College of Ohio*, 418 F.3d 629, 636 (6th Cir. 2005)).  Accordingly, the court held that "[i]f a case 'resolves into a problem of credibility, cross-examination of witnesses might . . . be[] essential to a fair hearing.'"  *Id.* at 401 (quoting *Flaim*, 418 F.3d at 641); *see also Doe v. Baum*, 903 F.3d 575, 578 (6th Cir. 2018) ("[I]f a public university has to choose between competing narratives to resolve a case, the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder.").

18

Defendants urge the Court to reject the Sixth Circuit's approach to cross-examination in the student disciplinary context, arguing that "[t]he Sixth Circuit's blanket mandate . . . leaves no room to apply the *Mat[ ]hews* factors to determine whether cross-examination is necessary in a particular case." Defs.' Supp. Mem. [58] at 5. But the Court can consider the Sixth Circuit's reasoning on the value of cross-examination under the second *Mathews* factor—i.e., "the risk of erroneously depriving" Doe's interests by conducting the hearing without cross-examination, and the "probable value, if any" of providing cross-examination.[7] *Plummer*, 860 F.3d at 774.

Defendants also argue that cross-examination was not constitutionally required here because Doe "admitted critical facts central to the determination" of the finding of responsibility "and the fact-finder's decision could have been adequately supported by uncontested facts, the observations of the investigating officers, and Doe's own statements." Defs.' Rebuttal [52] at 8. Defendants apparently base this argument on Doe's admission that Roe was intoxicated when they had intercourse. According to Defendants, this admission rendered Doe responsible under the Sexual Misconduct Policy. But Doe's admission does not necessarily indicate that Roe was incapacitated under the policy. In fact, Doe testified at the hearing that Roe was not stumbling around and was coherent. Hearing Tr. [40-2] at 13.

His admission also falls short of the proof in *Plummer*, which influenced the Fifth Circuit to find that the process in that case was sufficient. It is at least plausible in this he said/she said case, that giving Doe an opportunity to cross-examine Roe could have added some value to the hearing under the second *Mathews* factor. And while Defendants argue that requiring cross-

---

[7] Defendants also say cross-examination was not necessary in this case because "the uncontested allegations included in the Title IX report were sufficient to sustain a violation under the University's policy." Defs.' Mem. [34] at 17. By placing more significance on the contents of Ussery's report, Defendants merely bring the other problems with that report into focus.

examination will significantly burden the University by making it unable "to process complaints regarding alleged student misconduct whenever a witness or party declines to appear at a hearing," Defs.' Supp. Mem. [58] at 3, the Sixth Circuit has held that due process would not require cross-examination in every case, *Doe*, 872 F.3d at 400–01; *see also Goldberg*, 397 U.S. at 270 (noting need for cross-examination "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings"). Regardless, Doe has pleaded enough facts to surpass plausibility and permit discovery.

### d.      Lack of Subpoena Power

Doe cites no relevant legal authority suggesting that "the University had subpoena power or the authority to compel witnesses' appearances at a disciplinary hearing." *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 179 (D. Mass. 2017); *see Doe v. Univ. of Ky.*, 860 F.3d 365, 370 (6th Cir. 2017) (describing campus-disciplinary proceedings as "lack[ing] some of the due process protections for a criminal trial, such as having an attorney cross-examine witnesses and being able to subpoena witnesses"). He therefore fails to show Defendants violated his due-process rights in this regard. *See Plummer*, 860 F.3d at 773 ("A university is not a court of law, and it is neither practical nor desirable it be one." (quoting *Flaim*, 418 F.3d at 635 n.1)).

### e.      Deliberation of Panel

Doe complains that the hearing panel "only asked three questions during the hearing," it deliberated for only "approximately 15 minutes before issuing an initial determination against" him, and its determination letter "did not provide a rationale for the finding" of responsible nor "offer an explanation for the severe sanction of expulsion." Am. Compl. [9] ¶¶ 79–81. But he cites no cases indicating that these complaints give rise to a due-process claim. Nor does he apply these allegations to "the second *Mathews* factor—the risk of erroneously depriving [his]

interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Plummer*, 860 F.3d at 774.  The Court finds the allegations regarding the panel's deliberation do not state a due-process claim.

> f.      Standard of Proof

Finally, Doe disputes the standard of proof used by the Judicial Council.  The University's Sexual Misconduct Policy explains that "[t]he standard of proof for all cases involving sexual misconduct will be based upon the University's established standard of preponderance of the evidence."  Sexual Misconduct Policy [42-14] at 8.

 Doe says this preponderance standard violates due process; he raises a thorny issue.  *See Doe v. DiStefano*, No. 16-CV-1789-WJM-KLM, 2018 WL 2096347, at *6 (D. Colo. May 7, 2018) (noting unsettled nature of the law).  The only circuit that appears to have addressed the issue did so in an unpublished opinion that found no due-process violation when the university used the preponderance standard in a school disciplinary proceeding.  *See Cummins*, 662 F. App'x at 449.  But Judge Edith Jones made a forceful argument in her *Plummer* dissent that hearings on alleged sexual misconduct are quasi criminal and have long-lasting impacts on the accused.  She therefore advocated for a more burdensome standard of review, noting that "[e]levating the standard of proof to clear and convincing, a rung below the criminal burden, would maximize the accuracy of factfinding."  *Id.* at 782 & n.11 (Jones, J., dissenting).  The majority in *Plummer* avoided the issue, noting that it had not been preserved for appeal.  *Id.* at 772 n.5.  Given the developing nature of the law, and the fact that other portions of this claim survive Defendants' Rule 12(b)(6) attack, the Court elects to carry this issue beyond the pleading stage.

2.      Substantive Due Process

"To state a substantive due process claim a plaintiff must show that the government's deprivation of a property interest was arbitrary or not reasonably related to a legitimate governmental interest." *Williams v. Tex. Tech. Univ. Health Sciences Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993); *see Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 532, 546 (W.D. La. 2016) ("The substantive due process analysis asks whether Defendants' conduct was so arbitrary as to shock the conscience."). A dismissed student can succeed on a substantive-due-process claim if he shows "that the university's decision was not careful and deliberate." *Guse v. Univ. of S.D.*, No. 08-4119, 2011 WL 1256727, at *13 (D.S.D. Mar. 30, 2011) (citing *Schuler v. Univ. of Minn.*, 788 F.2d 510, 516 (8th Cir. 1986)). While Doe may ultimately have a difficult time proving this claim, in light of the allegations regarding the investigation and the fact that other portions of Doe's § 1983 claim are going forward, the Court denies the motion as to the substantive-due-process claim.

3.      Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment is 'essentially a direction that all persons similarly situated should be treated alike.'" *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To establish an equal-protection claim, "the plaintiff must prove that similarly situated individuals were treated differently." *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999). The question of whether the plaintiff and the proposed comparator were similarly situated "is case-specific and requires [the Court] to consider 'the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant in making the challenged decision.'" *Lindquist v. City*

*of Pasadena*, 669 F.3d 225, 234 (5th Cir. 2012) (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1208 (11th Cir. 2007)).

Doe argues that Defendants violated his rights under the Equal Protection Clause by disciplining him for engaging in sexual intercourse with Roe while she was under the influence of alcohol but failing to discipline Roe for engaging in sexual intercourse with him.  He cites *Doe v. Miami University*, 882 F.3d 479 (6th Cir. 2018), in support of his argument.  There, the Sixth Circuit found the plaintiff had stated an equal-protection claim under *similar* circumstances as those presented here.  The court reversed dismissal of the equal-protection claim because the decisionmaker in that case "was operating under 'the same set of operative facts' when she decided not to initiate the disciplinary process against" the female student.  882 F.3d at 596 (quoting *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1083 (S.D. Ohio 2017)).

Defendants insist that *Doe* is distinguishable because the male student there "was sufficiently intoxicated that he [could] not clearly remember what happened" in the sexual encounter between himself and the female student, whereas she was sufficiently sober to recall details of the encounter.  *Id.* at 585–86.  By contrast, Defendants argue that Doe claimed the encounter was consensual and "relayed no memory impairment or other symptoms regarding a lack of capacity."  Def.'s Reply [52] at 4.  Thus, he and Roe were not similarly situated.

While Defendants may ultimately prevail, at this point, the Court lacks sufficient information to assess whether Doe and Roe were similarly situated.  As it is, Doe has alleged that he and Roe drank together at his fraternity party; that Roe reported to her doctor that she and Doe "were both drunk and that she felt it was a mutual decision between both of them" to have sex; and that the University pursued disciplinary action against him but not Roe.  Ussery Report [40-

1] at 11.  These allegations are sufficient at the Rule 12(b)(6) stage.  The motion to dismiss is denied as to the equal-protection claim.

> D.     Individual-Capacity Claims against Murry and Ussery

Finally, the Court turns to the individual-capacity claims against Murry and Ussery for breach of contract and under § 1983 for violation of Doe's due-process and equal-protection rights.

> 1.     Breach-of-Contract Claim

Doe alleges the existence of a contract between him and "[t]he University, IHL, through its Board of Trustees[,] and the State."  Am. Compl. [9] ¶ 182.  There is no allegation that he had a contractual relationship with Murry or Ussery in their individual capacities.  To the extent Doe attempted to plead a breach-of-contract claim against those Defendants, it is dismissed with prejudice.

> 2.     Section 1983 Claims

Finally, Murry and Ussery assert qualified immunity as to Doe's individual-capacity § 1983 claims against them.

> An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.  And a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.  In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate.  In addition, [the Supreme Court] ha[s] repeatedly told courts . . . not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.

*Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citations omitted).

Taking the allegations from the Amended Complaint as true, and assuming Murry or Ussery violated Doe's constitutional rights, Doe does not cite a single case that would put these

Defendants on notice that their conduct violated clearly established law.  Ussery and Murry are entitled to qualified immunity.

IV.     Conclusion

The Court has considered all arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Defendants' Motion to Dismiss [33] is granted as to all claims against all Defendants other than (1) the Title IX claims against the University; IHL; the Board of Trustees of the IHL; the State of Mississippi; and the Chancellor, IHL Commissioner, and IHL Board Members in their official capacities, and (2) those portions of the claim against Chancellor Vitter under *Ex parte Young* discussed herein.

Given that Plaintiff's Motions for Preliminary Injunction [41, 42] have not been fully briefed and the Court has now narrowed the substantive issues, those motions are terminated without prejudice.  If Doe wishes to seek preliminary injunctive relief, he may file a new motion that addresses the substantive claims that survived Defendants' motion to dismiss.  The parties are also directed to contact the chambers of United States Magistrate Judge F. Keith Ball within 10 days of the entry of this Order to set the case for a status or case-management conference, as appropriate.

**SO ORDERED AND ADJUDGED** this the 16th day of January, 2019.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE