IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ANDREW DOE**                                                                                   **PLAINTIFF**

**V.**                                                     **CIVIL ACTION NO. 3:18-CV-138-DPJ-FKB**

**STATE OF MISSISSIPPI; THE UNIVERSITY OF
MISSISSIPPI; STATE INSTITUTIONS OF HIGHER
LEARNING ("IHL"), ET AL.**                                                                 **DEFENDANTS**

### DEFENDANTS' RESPONSE TO MOTION TO QUASH
### SUBPOENA FILED BY NON-PARTY JONATHAN MASTERS

Defendants served a subpoena upon Jonathan Masters, an Oxford, Mississippi, attorney who represented Bethany Roe with respect to a potential claim against Plaintiff Andrew Doe. Defendants' subpoena sought non-privileged documents reflecting communications sent on behalf of Roe to Doe or his counsel, as well as copies of any agreements between Doe and Roe related to Roe's allegations of sexual misconduct against Doe. Masters has moved the Court to quash the subpoena, arguing that the subpoena seeks information protected by the attorney client privilege and/or the work product doctrine. [Doc. 85]. Defendants respond to Masters' Motion as follows:

1.   *The requested documents are not privileged*

The subpoena does not request privileged documents, and undersigned counsel for Defendants has further clarified in writing to Masters that the subpoena does not seek production of his client's "entire legal representation file" or any material subject to the attorney-client privilege or the work product doctrine. *See* Ex. "A" (email from Watkins to Masters). Defendants accept Masters' representation that the non-privileged materials in his possession are limited to fourteen pieces of correspondence with Doe's attorney and a settlement agreement between Doe and Roe, Mot., at 8 n.2 [Doc. 86], and they limit their request for production to those materials.

1

Defendants have not asked Masters to prepare a privilege log, and they do not request the Court to impose such a requirement.

The communications and the settlement agreement are not protected by the attorney-client privilege or the work product doctrine because they were shared with Doe and his attorney, third parties to whom the privilege would not extend. The attorney client privilege only extends to "communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice." *Hodges, Grant & Kaufmann v. United States Gov't, Dep't of Treasury, IRS*, 768 F.2d 719, 720 (5th Cir. 1985) The work product doctrine exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). These privileges cannot be said to protect an attorney's correspondence *with* his opponent.

## 2.     The subpoena does not subject Masters to an undue burden

Masters also argues the subpoena subjects him to an undue burden because the settlement agreement contains a confidentiality clause, because Masters and Roe are not parties to this litigation, because Defendants have not established a "substantial need" for the information sought in the subpoena (as clarified), and because less obtrusive means exist by which Defendants may obtain the information. The subpoena does not subject Masters to an undue burden.

First, there is no practical burden to production. Masters has already indicated there are only fifteen responsive documents (fourteen communications and one settlement agreement), and they have already been identified and segregated from the privileged portions of his files.

Second, Masters' concerns about the confidentiality of the document and the sensitive nature of the subject matter can be ameliorated by marking the documents as "Confidential" under the terms of the soon-to-be-entered Protective Order in this matter. Defendants agree to this

designation, which will ensure the contents of the Masters documents are protected to the same extent as other confidential and sensitive documents exchanged by the parties in this matter.

Third, Masters' interest in not disclosing the documents because of the confidentiality provision is outweighed by Defendants need for the documents. The Fifth Circuit recently recognized that "discovery of confidential settlement agreements is generally available under an appropriate protective order." *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 975 (5th Cir. 2019); *see also Mendoza v. Old Republic Ins. Co.*, No. 11-3040, 2017 U.S. Dist. LEXIS 21753, at *15 (E.D. La. Feb. 15, 2017) ("Merely because the parties might have entered into a confidentiality provision concerning the settlement does not foreclose discovery."); *Kiln Underwriting, Ltd. v. Jesuit High Sch. of New Orleans*, No. 06-04350, 2008 U.S. Dist. LEXIS 98135, at *20 (E.D. La. Aug. 27, 2008) ("Although parties have the freedom to contract, courts must carefully police the circumstances under which legitimate areas of public concern are concealed. ***Parties should not be able to buy the silence of witnesses with a settlement agreement when the facts of one controversy are relevant to another.***") (internal quotations omitted) (emphasis added).

Under FED. R. CIV. P. 26(b)(1), Defendants are entitled to discover information that is

> relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The scope of discovery is broad, and a request is relevant under Rule 26 when it seeks information reasonably calculated to lead to the discovery of admissible evidence. *E.g.*, *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). The Court need not consider whether the subpoenaed documents will ultimately be found admissible, as "[i]nformation within th[e] scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1); *see*

3

*also Cleveland Constr., Inc. v. Whitehouse Hotel Ltd. P'ship*, No. 01-2666, 2004 U.S. Dist. LEXIS 3058, at *2 (E.D. La. Feb. 25, 2004) ("Settlement agreements, although inadmissible in evidence for some purposes, are both discoverable and admissible for other purposes.").

These documents are clearly discoverable in light of the undisputed facts surrounding their creation. Bethany Roe reported Andrew Doe to the University's Title IX office for an alleged violation of the University's policy prohibiting sexual misconduct. She also reported this conduct to law enforcement, and a Lafayette County grand jury indicted Doe for sexual battery. The University later conducted a disciplinary hearing on Roe's sexual misconduct complaint. Doe attended the hearing, and Roe did not. The University Judicial Council found Doe responsible for sexual misconduct, and he was ultimately suspended from the University until the Fall 2020 academic semester in April 2017.

Roe retained Masters in August 2017 to represent her with respect to the same alleged conduct underlying the University's disciplinary process and the criminal indictment. In late 2017, Roe demanded, and Doe agreed to pay, a substantial sum of money to resolve a potential civil lawsuit based on those same allegations. This agreement was negotiated between Masters, representing Roe, and Steve Farese, an attorney who also represented Doe with respect to the criminal charges. The agreement memorializing this settlement apparently includes a non-disparagement clause preventing Roe from discussing the allegations. Shortly thereafter, the criminal proceedings against Doe were also dismissed.

Several months after agreeing to pay Roe a substantial sum of money in exchange for her agreement not to discuss the allegations, Doe filed this lawsuit. Doe has alleged, among other things, that the University's decision to suspend him caused him compensable emotional distress and that his due process rights were violated because Roe did not testify at the due process hearing.

The documents in Masters' possession are relevant to Doe's claim for emotional distress damages because they represent two potential causes of emotional distress completely unrelated to the University's alleged acts – Roe's threatened civil lawsuit and Doe's pending criminal charges. The documents are also relevant to Doe's claims because they could demonstrate that, several months before filing suit against the University, he sought to buy the silence of the primary non-party witness in this action. This is particularly relevant to Doe's procedural due process claims, which hinge in part on the fact Roe did not participate in the first hearing. The remedy for such a claim, if Doe prevailed, would be a new hearing with different process.[1] *See, e.g., Doe v. Alger*, No. 5:15-CV-00035, 2017 U.S. Dist. LEXIS 62233 (W.D. Va. Apr. 25, 2017); *Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 313 (D.R.I. 2016); *Furey v. Temple Univ.*, 884 F. Supp. 2d 223, 261 (E.D. Pa. 2012). Defendants are entitled to production of an agreement that could prohibit or discourage Roe from appearing at and/or participating in any future disciplinary hearing or influence her testimony in this action or a subsequent disciplinary hearing.

Masters also argues Defendants could obtain the documents from other sources. If Doe and his prior counsel have retained copies of these documents, Doe has refused to produce them in spite of discovery requests designed specifically to obtain them. Defendants intend to take up that refusal with the Court at an appropriate time. In any event, though, the fact that the documents might exist in some other location does not preclude Defendants from using a Rule 45 subpoena to obtain relevant, non-privileged documents from third parties. Masters might have more or different documents than are in Plaintiff's possession, and neither Defendants nor Plaintiff can make that determination without first knowing what documents Masters actually possesses. The

---

[1] Doe cannot recover damages on his Fourteenth Amendment claims because of the State's Eleventh Amendment immunity and the previously-dismissed Individual Defendants' qualified immunity. See Order on Motion to Dismiss, at 4, 25. [Doc. 60].

requested documents are discoverable, their production is not overly burdensome, and Defendants are entitled to obtain them.

FOR THESE REASONS, Defendants respectfully request the Court to deny Masters' Motion to Quash and order production of the non-privileged responsive documents identified in his Motion. Defendants request such other relief as the Court deems appropriate under the circumstances.

This, the 3d day of June, 2019.

                                               Respectfully submitted,

**STATE OF MISSISSIPPI; THE UNIVERSITY OF MISSISSIPPI; STATE INSTITUTIONS OF HIGHER LEARNING ("IHL"); THE BOARD OF TRUSTEES OF STATE INSTITUTIONS OF HIGHER LEARNING; C.D. SMITH, JR.; SHANE HOOPER; TOM DUFF; DR. FORD DYE; ANN H. LAMAR; DR. ALFRED E. MCNAIR, JR.; CHIP MORGAN; HAL PARKER; ALAN W. PERRY; CHRISTY PICKERING; DR. DOUG ROUSE; DR. J. WALT STARR; GLENN F. BOYCE; JEFFREY S. VITTER**

*/s/ Paul B. Watkins, Jr.*
J. CAL MAYO, JR. (MB NO. 8492)
PAUL B. WATKINS, JR. (MB NO. 102348)
J. ANDREW MAULDIN (MB NO. 104227)
ATTORNEYS FOR DEFENDANTS

OF COUNSEL:

MAYO MALLETTE PLLC
5 University Office Park
2094 Old Taylor Road
Post Office Box 1456
Oxford, Mississippi 38655
Tel: (662) 236-0055
Fax: (662) 236-0035
cmayo@mayomallette.com
pwatkins@mayomallette.com
dmauldin@mayomallette.com