IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ANDREW DOE**                                                          **PLAINTIFF**

V.                                            CIVIL ACTION NO: 3:18cv138 DPJ -FKB

**STATE OF MISSISSIPPI, ET. AL.**                                       **DEFENDANTS**

### REBUTTAL IN SUPPORT OF PLAINTIFF'S MOTION
### FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Andrew Doe submits this Rebuttal Memorandum in Support of his Motion for Partial Summary Judgment on the issue of Defendants' liability.

**1.     Title IX claim**

Defendants erroneously argue that the evidence before the hearing panel was sufficient to determine that Roe was unable to give effective consent. To be clear, the record provides that Roe told Ussery that she had a c███████████████████████████████████████. *Roe denied* ███████████████████████ and claims that ███████████████ ███████████████████████ See Ex. "12-1", at 1-2. While Doe testified that ███████ ██████████, Roe ███████ when questioned by Ussery. *Id.* The Defendants have also ignored the fact that Roe repeatedly informed ████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████. See Ex. "12-1"; Ex. "12-3", p. 11, lines 12-23. In his appeal, Doe stated that *both* ██████ were ████████████, *but at no time* ████████████████. See Ex. "12-15", pg. 1. Significantly, the University testified ████████████████████████████████████████ ████████████. See Ex. "11", p. 158, lines 12-21. ████████████████████████████ ████████████ *Id.*, p.159, lines 11-1. (emphasis added) Herein, the panel members admitted that ████████████████████████████████████████████████████████████████████████

1

*See* Ex. "8", p. 87, line 19; p. 89, line 6; *See* Ex. "7", pp. 80-83.  Furthermore, the University testified that if ███████████████████████████████████████████████████████████████████████████████████████████████, ████████████████████████.  *See* Ex. "11", p. 161, lines 4-16.  This is exactly the standard applied against Doe.

The University argues it did not investigate Roe's behavior because Doe said he consented to sex, and thus "any [] report [he would have made] would have been frivolous." [Doc. 167, p.13]  However, the *University* initiated a case against Doe despite Roe's initial and repeated statements that the sexual activity was consensual.  In doing so, the University that took the position Roe could not consent because of her alcohol consumption.  ***The sex-based differentiation between Doe and Roe which was employed by the University defies Title IX***.  *See* e.g.  *Doe v. Syracuse Univ*., 341 F.Supp. 3d 125, 139 (N.D.N.Y. 2018) (a University's *sua sponte* initiation of sexual assault proceedings against a male student but not against a female student, with respect to an incident in which both parties were intoxicated, sets forth a plausible selective enforcement claim).

In the last five years, 93% of the sexual assault cases that the Title IX coordinator has determined merit disciplinary proceedings and has forwarded for disciplinary action, have resulted in a male student being suspended or expelled.  Doe is simply the first student to challenge it on this level.[1]  This statistically lopsided figure is the result of <u>*intentional*</u> discriminatory selection of cases for "prosecution" and the development and implementation of policies and practices that encourage female complainants to be believed over the male accused.  However, Doe does not rely solely upon this percentage to prove the existence of intentional gender bias. Rather, the fact that virtually all disciplinary proceedings against males accused of sexual assault result in findings of responsibility is the fruit purposefully yielded by the poisonous tree of discrimination.  By design,

---

[1] Additional lawsuits have been filed, alleging sex discrimination in the implementation and application of the University's Title IX program, but those matters have not yet made it to the motion pleading stage.

the Title IX program, as implemented and applied, violates Title IX with respect to its treatment of male students accused of sexual assault, from beginning to end.

The University's Title IX policy and training are prepared by Ussery. Additionally, determinations as to which cases merit investigation and forwarding for disciplinary action come from Ussery. The policy language and training given to Judicial Panel members influence the findings of responsibility and the sanctions issued. It is the totality of the biased policies and trainings, exemplified through referrals to complainants as "survivors"; heightened sanctions for penetrative sexual assault only; and the referral of sexual assault cases as "crimes" prior to adjudication, that evidence gender bias.[2] *See* Ex. "12-2". Panel members are taught that 92 % of sexual assault allegations are true, and that a female student is most likely to be the "victim" and at the "highest risk" for a penetrative sexual assault. *See* Ex. "12-7"; Ex. "4", p. 305-306.

Furthermore, clear procedural irregularities in response to the allegations of sexual misconduct, inclusive of not providing the male accused with specifics of the allegations against him at the beginning of the investigation, delaying the length of the investigation and having an advisor leave early, have been found to be indicia of gender bias. *See Doe v. Oberlin*, No. 19-3342, pg. 8 (6th Cir. June 29, 2020). The fact that a hearing panel fails to comment on contradictions and possible impeachment evidence in a proceeding in which the credibility of accuser and accused were paramount, as was the situation with Doe, may also be indicia of gender bias. *Id.*, pg. 11. Panelis ███████ has stated, "We [the Judicial Hearing Panel] decide the punishment based on the crime ... In a sexual assault case we do everything that we can to make sure that the victim feels comfortable around campus." *See* Ex. "12-6". This statement and those

---

[2] Specific details of the Title IX program's bias are set forth in detail in both the Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment [Doc. 186] and the Plaintiff's Memorandum in Support of its Response in Opposition to the Defendants' Motion for Summary Judgment [Doc. 203] For the sake of brevity, they are incorporated herein by reference.

contained within the Title IX training reflect a belief that complainants of sexual assault are victims. Coupled with the belief that the majority of "victims" are women and that 92% of allegations are true, the evidence of gender bias becomes clear. "[I]f enforcement officials are regularly presented with a scenario involving the same two classifications –nurse and female…sexual assault suspect and male ---there must come a point where one may plausibly infer that stereotypes about the protected classification [] have begun to infect the enforcement process generally." *Doe v. Univ. of Colo., Boulder*, 255 F.Supp. 3d 1064, 1076 (D.Colo. 2017).

### 2.  Substantive Due Process

Doe's disciplinary proceedings Doe were constitutionally arbitrary. Summarized statements of witnesses were taken at face value absent any consideration of the contradictions contained therein or the credibility of the parties. On appeal, despite concerns regarding Doe's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮", the finding of Responsibility against him was upheld without questioning of the panel members or any witnesses. *See* Ex. "10", pp 205-206, pp. 209-212.

### 3.  Procedural Due Process

Defendants' claim that there was no evidence Ussery and Murry had conflicting roles in the disciplinary process or attempted to influence the outcome of the conduct proceedings, categorically ignores the record evidence that Ussery developed the Title IX policy, conducted the training of Judicial Hearing panel members, trained panel members to rely on their Title IX reports and not witnesses, then elected to exclude exculpatory evidence from the report. *See* Ex. "12-1"; Ex. "12-2" It ignores record evidence that Ussery talked to the panel about the investigation and witnesses outside of the presence of Doe, that Murry shared information with the Appellate Consideration Board that was not in the record and that Murry informed the panel of precedent, so

as to limit the disciplinary options available to Doe.[3]

### 4. Preponderance of the Evidence Standard

"[W]hen it comes to due process, the 'opportunity to be heard' is the constitutional minimum . . . [b]ut determining what being "heard" looks like in each particular case is a harder question." *See Doe v. Univ. of S. Miss.*, Civil Action No. 2:18 cv 153, Doc. 35, pg. 6 (S.D. Miss. Sept. 26, 2018). The use of the preponderance of the evidence standard by the University denied Doe's due process rights because, when combined with training deficiencies, biased panel members and no opportunity for cross-examination or assessment of credibility, it tipped the sliding scale too far. Given the totality of the circumstances, a higher standard of proof would have lessened the likelihood of a constitutional violation. Hearings on alleged sexual misconduct are quasi-criminal and have long-lasting impacts on the accused. *Plummer,* at 782 & n.11 (Jones, J., dissenting). "[E]levating the standard of proof to clear and convincing, a rung below the criminal burden, would maximize the accuracy of factfinding." *Id.*

### 5. Equal Protection Claim

The undisputed record evidence before the University was that Doe was intoxicated on the night in issue. See Ex. "12-3", pg. 7 and 11. However, while the University took Roe's intoxication to mean she was incapable of giving effective consent, Doe's intoxication was irrelevant. Panelist ■■■■■■ testified that ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. *See* Ex. "7", p.126, line 23- p. 127, line 14. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. *Id.*, p. 128, lines 5-12.

---

[3] The Plaintiff has identified specific procedural protections he was denied and procedural safeguards that would have lessened the risk of an erroneous deprivation within his Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment [Doc. 186, pp. 16-21, 31-39] and Memorandum in Opposition to Defendants' Motion for Summary Judgment. [Doc. 203, pp. 28-35] The discussions and legal applications set forth within those pages are incorporated herein, in their entirety, as is Doe's prayer for relief and prayer for grant of partial summary judgment in his favor as set forth in Doe's principal submissions.

RESPECTFULLY SUBMITTED, this the 15th day of July, 2020.

                **ANDREW DOE,**
                Plaintiff

            By: *s/Michelle T. High*
              Michelle T. High

J. Lawson Hester (MS Bar No. 2394)
lhester@manierherod.com
MANIER & HEROD
1201 Demonbreun Street, Suite 900
Nashville, TN  37203
Telephone: (615) 244-0030
Direct: (615) 742-9339
Cell: (601) 209-4728
Facsimile: (615) 242-4203


Michelle T. High (MS Bar No. 100663)
mhigh@bpisfirm.com
Biggs, Pettis, Ingram & Solop, PLLC
111 East Capitol Street, Suite 101
Jackson, MS  39201
Mailing Address:
Post Office Box 14028
Jackson, MS  39236-4028
Direct and Facsimile: (601) 987-5313