IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ANDREW DOE**                                                              **PLAINTIFF**

**V.**                                            **CIVIL ACTION NO. 3:18-CV-138-DPJ-FKB**

**STATE OF MISSISSIPPI; THE UNIVERSITY OF
MISSISSIPPI; STATE INSTITUTIONS OF HIGHER
LEARNING ("IHL"), ET AL.**                                  **DEFENDANTS**

**DEFENDANTS' REBUTTAL IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

Throughout his Response, Andrew Doe mischaracterizes record proof, omits key context, and fails to provide meaningful quotes from materials he claims prove "shocking" and "disturbing" violations of federal law. The Court should disregard his unsubstantiated and conclusory arguments and grant summary judgment in Defendants' favor.

**1.**      *Doe's Title IX claim must be dismissed.*

         a.       *The record before the panel supported their decision.*

Doe claims he was the victim of a flawed and biased Title IX investigation and disciplinary hearing, but his telling of the story leaves out the most basic undisputed facts. For example, Doe complains Honey Ussery's investigation was flawed because he and Ussery "never met in person," but he fails to mention he refused to meet with her or participate in her investigation in any way. He claims Ussery should have obtained and discussed certain "exculpatory" evidence (despite the fact she lacked subpoena power), but he does not dispute he actually had that same material and did in fact provide some of it to the University's decision-makers. He claims the Judicial Council's decision was not careful and deliberate because the hearing was short and did not include any other witnesses, but he omits the fact that he did not

bring any witnesses or ask for them to be present. Doe ignores these facts because he has no answer for them.

Doe argues the panel members reached an erroneous result because they did not appreciate the difference between "intoxication" and "incapacitation," with a particular focus on evidence Doe claims was *not* before the Judicial Council panel. Pl.'s Rsp., at 8-11 [Doc. 203].[1] However, Doe's strained characterization of the evidence that actually *was* before the panel is telling. He points to Roe's statement that ▮▮▮▮▮▮, but he ignores his own admission that Roe ▮▮▮▮▮▮. He suggests Roe might have blacked out only *after* he had sex with her, Pl.'s Rsp., at 4, but he glosses over the fact she told Ussery ▮▮▮▮▮▮▮▮▮▮▮▮. Ex. "C" to Defs.' Mot. for Summ. J. (Title IX Report) [Doc. 179-1]. Notably, *Doe does not seriously contest Roe's claims that she* ▮▮▮▮▮▮.

Doe essentially argues he could not have been expected to know Roe lacked the capacity to give effective consent to sex – that, in spite of knowing about her heavy drinking that night, he was free to assume she had capacity to consent because he did not see her vomiting, falling

---

[1] Doe claims one of the three Judicial Council members left after their deliberation and "the two remaining panel members announced" the panel's decision. Pl.'s Rsp., at 5 [Doc. 203]. There is no proof, and Doe does not argue, that all three panel members did not *actually participate* in the decision.

2

down, or soiling herself. Pl.'s Rsp., at 8-9 [Doc. 203]. The University's sexual misconduct policy, though, is clear that "[p]ersons who want to engage in sexual activity are responsible for obtaining consent – it should never be assumed…." Ex. "A" (Sexual Misconduct Policy) [Doc. 166.1]. The Judicial Council panel was presented with evidence that Roe ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. It is not at all "perplexing," as Doe claims, that the panel determined Roe lacked the capacity to give effective consent.

Doe makes no attempt to explain how the circumstances underlying the Sixth Circuit's recent decision in *Doe v. Oberlin College* are anything close to the facts in this case. That opinion (which discussed the plausibility of the plaintiff's allegations rather than the adequacy of his proof) found the plaintiff's allegation of an erroneous outcome plausible in the context of a complainant's claim of incapacitation. The *Oberlin* plaintiff's allegations, though, did not line up with the proof in this case. The complainant in that case had not been drinking heavily with the plaintiff beforehand, and her recollection of the evening was clear enough that she recalled the details of their encounter when she testified at the disciplinary hearing more than seven months later. No. 19-3342, 2020 U.S. App. LEXIS 20226, at *11-15 (6th Cir. June 29, 2020). The plaintiff also alleged a witness had reported the complainant did not seem intoxicated around the time of the encounter, and another witness claimed the complainant had made false statements during the College's investigation of her complaint. *Id*.

Doe offers no new support for his argument that the panel members did not understand the proper standard of proof. The record is clear they were properly trained about the standard

3

and reminded of it during the hearing. Defs.' Brf., at 24-25 [Doc. 167].

    b.    *There is no proof of gender bias.*

Doe has also come forward with no proof of gender bias. He claims the University "has tailored its policies so as to have an unwritten and pervasive practice of causing males to be expelled and suspended" and engages in "intentional discriminatory selection of cases of 'prosecution,'" but he points to no proof to support either contention. Pl.'s Rsp. at 14 [Doc. 203].

Doe is not correct that Ussery stated in a radio interview that she had never encountered false allegations of sexual assault. In fact, Ussery specifically described a case involving "false allegations," and she described other cases in which investigations revealed no assault had occurred. Ex. "15" to Pl.'s Rsp., at 50:45. In any event, Doe fails to explain how a lack of cases involving "false allegations" leads to a conclusion that Ussery "overwhelmingly favors female complainants." Pl.'s Rsp., at 13. Ussery did not mention the gender of any complainant or respondent. Doe simply asks the Court to *assume* that Ussery has investigated cases involving "false allegations" against men by women, that she knew the allegations were false, and that she took action against the falsely accused men anyway. There is no proof to support any such assertion, and the record does not support Doe's implication that Roe's allegations were "false."[2]

Nor does the blog article quoting the female panel member mention the gender of any

---

[2] Doe implies Ussery or someone in her office acted improperly by coming to speak with Bethany Roe in the hospital on the night of the incident. However, the documents attached to Ussery's report make clear that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ex. "C" to Defs.' Mot. for Summ. J. (Title IX Report), at 8 [Doc 179-1]. ▬▬▬▬ has never worked for the Title IX Office. *See* Ex. "Y" (▬▬▬▬ Declaration).

4

participant in the disciplinary process, real or hypothetical. The best Doe can offer is that the quotes, which he did not even ask the panel member whether she actually gave the author, "reflect a clear belief that complainants are victims." *Id*. The panel member is not quoted as saying that all respondents, much less all males, are presumptively responsible for allegations of sexual assault. Doe also overlooks the fact that a "complainant" who reports a sexual assault that violates the University's policies could also very likely be the "victim" of a crime. Again, Doe's argument appears to be predicated on his belief, completely unsupported by the record, that most women who report sexual assaults do so falsely.

Doe implicitly recognizes the fact he has no proof of disparate treatment of male students in arguing that "the very fact that complainants are overwhelming[ly] female is critical." Pl.'s Brf., at 13 [Doc. 203]. This is the *only difference* between male students and female students that Doe has been able to identify after more than a year of discovery, and, as Defendants have already argued at length, it is not proof of gender bias. Doe cites language from a Colorado District Court opinion contemplating that stereotypes about protected classifications could "infect" an enforcement process, but he fails to mention that court dismissed the plaintiff's Title IX claims and held his allegation "that the University investigates and disciplines men for sexual misconduct far more than women" did not give rise to an inference of gender bias. *Doe v. Univ. of Colo.*, 255 F. Supp. 3d 1064, 1078 (D. Colo. 2017). As did the other courts cited in Defendants' primary brief, the Colorado court found the defendant school was "not responsible for the gender makeup of those who are accused by other students of sexual misconduct." *Id*. (*citing King v. DePauw Univ.*, 2014 U.S. Dist. LEXIS 117075, 2014 WL 4197507, at *10 (S.D.

5

Ind. Aug. 22, 2014)).

Neither has Doe pointed to any evidence that the University's training materials promote gender bias. Defs.' Brf., at 23-24 [Doc. 167]; Defs.' Rsp. to Pl.'s Mot. for Summ. J., at 8-10 [Doc. 208].

Doe's selective enforcement claim fails because he never claimed or offered any proof that he lacked the capacity to consent to sex with Roe or asked the University to investigate any such allegation. To the contrary, Doe never even met with the investigator. Doe argues that, "if Roe was unable to consent because she had been drinking, then Doe must have also been unable to consent because he, too, had been drinking." Pl.'s Rsp., at 18 [Doc. 203]. This assertion is not consistent with the University's policies, and it doesn't square with his own earlier assertion that "[h]ow much alcohol would be necessary to render a person incapacitated depends upon the person." *Id*. at 9.

Doe claims he can establish a deliberate indifference claim because the University did not implement changes to its sexual misconduct policies after the Department of Education withdrew its 2011 Dear Colleague letter in September 2017. *Id*. at 21. However, he does not identify what the University should have done, point to any legal authority requiring such a change, address the fact that the 2017 guidance came months after his disciplinary proceedings had finished, or connect the 2017 guidance to his own case in any way. Doe's deliberate indifference claim must be dismissed. *See* Defs.' Rsp., at 1-2 [Doc 208].

2.  ***Doe's equal protection claim should be dismissed.***

The only basis for Doe's Equal Protection claim is his assertion the University should

have investigated Roe for sexual misconduct because it investigated Doe. Again, Doe did not claim he was incapacitated or seek to lodge a Title IX complaint against Roe. Doe's Equal Protection claim should be denied.[3]

3.  ***Doe lacks standing to pursue certain injunctive relief.***

In response to Defendants' argument that he lacks standing to seek certain injunctive relief, Doe asserts that (1) a finding of responsibility for sexual misconduct appears on his academic transcript and (2) his substantive due process claim gives rise to a claim for damages. On the first point, Doe is mistaken. Tracy Murry did not testify that such a finding would appear on Doe's transcript – only that a suspension or expulsion would. Ex. "10" to Pl.'s Rsp., at 3-11 [Doc. 202-6]. In fact, Doe's academic transcript does not contain any reference to sexual misconduct or a finding of responsibility. Ex. "AA" to Defs.' Mot. for Summ. J. (Academic Transcript). Doe claims he "has articulated his real concern that a finding of responsibility on his transcript will continue to injure his reputation, education, and job opportunities," but he cites to no proof that the University has informed anyone of the finding or that he plans to engage in any activity requiring its disclosure. Doe and his father did testify about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, but none of those items mentioned Doe's suspension or were based on information provided by the

---

[3] As he did in support of his own motion, Doe argues one of the panel members testified he would treat a hypothetical male complainant differently than a female complainant because he would consider the "totality of the circumstances" in determining whether a female respondent was responsible. Defs.' Rsp., at 8 n.3 [Doc. 208]. Doe's argument is neither logically sound nor consistent with that panel member's testimony – the panel member testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

University. *See* Ex. "J" (Doe Depo.), at 59:5-62:12 [Doc. 179-8]; Ex. "U" (Doe Father Depo.), at 51:10-52:7 [Doc. 181].

On the second point, the Court has already held Doe has no monetary remedy for his Due Process claims. Order on Mot. to Dismiss, at 4 [Doc. 60]. Doe correctly acknowledges that any claim to the injunctive remedy he might otherwise have been able to seek – a new hearing with different procedures – will be moot by the time the Court decides the issue. However, the fact that Doe did not timely seek this injunctive relief does not obviate Defendants' Eleventh Amendment immunity from suits for damages.

*4.     Doe's procedural due process claims should be dismissed.*

   *a.     Doe was not constitutionally entitled to confrontation and cross-examination.*

Doe does not address a core problem with his cross-examination claim – the University's policies did not deny him an opportunity to question any witness. Rather, Bethany Roe was not questioned because she did not attend the hearing. Doe fails to even suggest what procedures the University should have followed under the circumstances in light of the fact it lacks subpoena power.

Doe's primary argument is that cross-examination (and confrontation) were required because the case presented a "he-said/she-said credibility assessment," and he suggests the Judicial Council panel was forced to choose between "competing narratives" in deciding his case. Pl.'s Rsp., at 29-30 [Doc. 203]. There were no such competing narratives. Roe ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮. This is not a "he said, she said" case in which one party claims consent was

given and another party claims it was not – this is a case in which the complainant lacked the capacity to consent at all. Roe's statements were not materially inconsistent with Doe's to the extent she remembered the evening, and Doe does not seriously suggest she was untruthful in reporting ▮▮▮▮▮▮▮▮. The "probable value" of questioning Roe about events about she already said she had no memory would have been low.

Doe focuses primarily on the statements Roe made at the hospital because he claims they were contradictory. Again, though, cross-examination would not have been helpful here because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. "B" (Ussery Depo.), at 189:5-9 [Doc. 179]. Doe claims he had prepared questions which might have "clarified" the issue of whether Roe had the capacity to consent to sex, but he does not tell the Court what those questions were or how they could have yielded helpful information in light of the fact that Roe ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[4]

  b.  *The University's training and procedures were not unconstitutional.*

Doe claims the University's training materials deprived him of due process, but his argument amounts to little more than a heavily paraphrased list of mischaracterizations of the training materials Defendants have already addressed. *See* Defs.' Rsp., at 8-10 [Doc. 208].

Doe also claims his rights were violated because Tracy Murry spoke with and provided information to members of the Judicial Council and the Appellate Consideration Board. Pl.'s

---

[4] Doe mentions the Department of Education's pending regulations regarding Title IX investigations and purports to incorporate them "in full," but he does not argue they are binding or provide any meaningful discussion of why, or to what extent, the Court should rely on or adopt them.

Rsp., at 32 [Doc. 203]. Doe provides no proof Murry sought to influence their decision in any way, and he fails to explain why it is unconstitutional for the hearing officer in a disciplinary hearing to provide information to the decision-makers.

    c.    *The University did not apply an unconstitutional standard of proof.*

The University uses the "preponderance of the evidence" standard of proof in all disciplinary proceedings, including Doe's. Doe admits he has not found a single case in which a court has held a higher standard of proof is constitutionally required. Rather, he relies solely on Judge Jones' dissent in *Plummer* to assert that a higher standard of proof would "maximize the accuracy of factfinding." Pl.'s Rsp., at 34 [Doc. 203]. He provides no further analysis as to why the Court should make it more difficult for the University to find a student committed sexual misconduct than some other serious disciplinary offense. The Court suggested in its Order on Defendants' Motion to Dismiss that the state of the law on this point could change during the pendency of this case, Order on Mot. to Dismiss, at 21 [Doc. 60], but (as Doe admits) it has not. This portion of Doe's procedural due process claim should be dismissed.

**5.**    ***Doe's substantive due process claim should be dismissed.***

The proof in this case does not support a finding that the University engaged in conduct that was so arbitrary as to shock the conscience. Doe claims the panel members "did not look at all evidence presented to them and … did not follow their training," Pl.'s Rsp., at 35 [Doc. 203], but he cites only incomplete characterizations of one panel member's deposition testimony to support that argument. The fact that one panel member did not recall specifics about his student conduct training when he was deposed in 2019 does not mean he (much less the other panel

members) acted arbitrarily in 2017. Doe also neglects to mention that his lawyer ▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆. Unsurprisingly, the two panel members ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Doe claims the panel member did not think he should evaluate witnesses' credibility, but he overlooks his own argument that the same panel member ▆▆▆▆▆▆▆▆▆▆ and the fact that the panel member testified ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Finally, Doe claims to be "shock[ed]" that the panel did not call for other witnesses to personally attend the hearing, perhaps forgetting that he himself called no witnesses. The panel members did not act arbitrarily by relying on witness statements gathered during Ussery's investigation. *See Tasby v. Estes*, 643 F.2d 1103, 1106 (5th Cir. 1981) (holding that "rights in a student disciplinary hearing may properly be determined upon the hearsay evidence of school administrators who investigate disciplinary infractions").

As Defendants have already argued at length, the proof before the Judicial Council supported its finding that Roe was incapacitated and unable to give effective consent to sex. That finding was not constitutionally arbitrary, and Doe's substantive due process claim must be dismissed.

## Conclusion

The University's disciplinary committees considered the proof before them, including

11

Doe's own admissions, and concluded Bethany Roe lacked the capacity to give effective consent to sex with Doe. That decision was supported by the administrative record. Defendants did not deny Doe any right to which he was entitled, and they did not discriminate against him. Doe has failed to come forward with proof of any genuine issue of material fact to salvage his claims, and Defendants are entitled to judgment as a matter of law.

THIS, the 15th day of July, 2020.

Respectfully submitted,

**STATE OF MISSISSIPPI; THE UNIVERSITY OF MISSISSIPPI; STATE INSTITUTIONS OF HIGHER LEARNING ("IHL"); THE BOARD OF TRUSTEES OF STATE INSTITUTIONS OF HIGHER LEARNING; C.D. SMITH, JR.; SHANE HOOPER; TOM DUFF; DR. FORD DYE; ANN H. LAMAR; DR. ALFRED E. MCNAIR, JR.; CHIP MORGAN; HAL PARKER; ALAN W. PERRY; CHRISTY PICKERING; DR. DOUG ROUSE; DR. J. WALT STARR; GLENN F. BOYCE; JEFFREY S. VITTER**

*s/ Paul B. Watkins, Jr.*
J. CAL MAYO, JR. (MB NO. 8492)
PAUL B. WATKINS, JR. (MB NO. 102348)
J. ANDREW MAULDIN (MB NO. 104227)
ATTORNEYS FOR DEFENDANTS

OF COUNSEL:
MAYO MALLETTE PLLC
5 University Office Park
2094 Old Taylor Road
Post Office Box 1456
Oxford, Mississippi 38655
Tel: (662) 236-0055
cmayo@mayomallette.com
pwatkins@mayomallette.com
dmauldin@mayomallette.com