IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ANDREW DOE**                                                                                         **PLAINTIFF**

**V.**                                                             **CIVIL ACTION NO: 3:18cv138 DPJ -FKB**

**STATE OF MISSISSIPPI, ET. AL.**                                         **DEFENDANTS**

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Andrew Doe, by and through undersigned counsel, submits this response in opposition to Defendants' Supplemental Brief in Support of Their Motion for Summary Judgment.

Defendant's Supplemental Brief erroneously recites that subsequent to the filing of Defendants' Motion for Summary Judgment [Doc. 166], the Fifth Circuit issued *two* opinions directly pertinent to Plaintiff Andrew Doe's claims, referring to *Walsh v. Hodge,* 975 F.3d 475 (5th Cir. 2020) and *Van Overdam v. Texas A&M University*, 43 F.4th 522 (5th Cir. 2022). In this regard, Defendants wholly overlook the Fifth Circuit's most recent decision in *Doe v. William Marshall Rice University*, 67 F.4th 702 (5th Cir. May 11, 2023) which has the most significant probative value to Plaintiff Doe's Title IX claims against the University.

In *Doe v. William Marshall Rice University*, 67 F.4th 702 (5th Cir. May 11, 2023), the Fifth Circuit was presented with an appeal from a grant of summary judgment against Doe on the merits of Doe's Title IX claims and breach of contract claim. The Fifth Circuit reversed the grant of summary judgment on the Title IX claims, finding that the record clearly indicated that material fact issues existed *inter alia* with regard to Doe's Title IX "erroneous outcome" and "selective enforcement" theories of liability against the University. In its reversal of the grant of summary judgment on the erroneous outcome Title IX claim, the Fifth Circuit noted that "[a]t bottom, each demonstrates that a reasonable jury—presented with the evidence in this record—could conclude

1

that sex was a motivating factor in Rice's decision to discipline Doe." *Id*. The Fifth Circuit noted that there were (1) shortcomings in the investigation by the University, (2) inconsistencies in the statements of Roe, the female student, and (3) that the female student was effectively immunized for engaging in what was essentially the same conduct which resulted in discipline to Doe, the male student. In sum, the Fifth Circuit thus opined that, "A rational juror could also find the variance between Roe's allegations and the conduct for which Doe was ultimately sanctioned to be explainable by the fact that Roe's allegations fell apart under scrutiny. A factfinder would not be unreasonable to conclude, as the Ninth Circuit speculated in *Doe v. Regents of University of California*, that 'when confronted by a claim that lacked merit, the University rushed to judgment' by suspending Doe, 'and then sought out a way to find the accused responsible for something in order to justify its earlier actions.'" *Rice*, 67 F.4th 702, 711, *citing Regents of Univ. of Cal.*, 23 F.4th 930, 939 n.12 (9th Cir. 2022).

The same concerns facing the Fifth Circuit in *Rice,* and many others even more egregious in nature, are found in the evidentiary record here and are outlined in the principal briefing by this Plaintiff. Here, as noted by the Fifth Circuit in *Rice*, "[A]t some point an accumulation of procedural irregularities all disfavoring a male respondent begins to look like a biased proceeding." *Rice,* at 711, *citing Regents of Univ. of Cal.,* at 941.  In the context of Doe's Title IX selective enforcement claim in *Rice*, the Fifth Circuit recited that, "[c]onstruing the evidence in a light most favorable to Doe, the nonmovant, we agree that a material fact question exists as to whether the University selectively enforced its policies against him by refusing to treat Roe and Doe equally when Doe alleged—in response to Roe's allegations—that she was guilty of the same conduct of which he was charged: failure to disclose the risk of STD transmission." *Rice,* at 712. Here the same may be said of Andrew Doe and Bethany Roe. The University was fully advised that both

2

Bethany Roe and Andrew Doe had engaged in the same conduct – having intercourse following the consumption of alcohol. Yet, only the male student was subjected to discipline – a precept so fundamentally reflective of selective enforcement in potential violation of Title IX that the Fifth Circuit had no difficulty in reversing the grant of summary judgment in favor of the University.

Defendants' Response elects to place reliance upon *Van Overdam v. Texas A&M University*, 43 F.4th 522 (5th Cir. 2022), acknowledging, however, that neither it nor *Walsh v. Hodge,* 975 F.3d 475 (5th Cir. 2020), *cert. denied*, 141 S.Ct. 1693 (2021)  squarely address the circumstances presented here.   In ruling on Van Overdam's interlocutory appeal under 28 U.S.C. § 1292(b), the Fifth Circuit for the first time adopted the selective enforcement framework recently pronounced in *Doe v. Purdue University*, 928 F.3d 652, 667 (7th Cir. 2019), thereby providing enhanced viability to Doe's selective enforcement claim under Title IX.

In *Van Overdam*, the Fifth Circuit also reiterated its approval of *Walsh v. Hodge*, in which it analyzed "The Right to Confront One's Accuser in a University Proceeding." Van Overdam, 43 F. 4th 522, discussing *Walsh*, 975 F.3d 475, 483. Within the *Walsh* analysis, the Fifth Circuit found that a university had violated a professor's due process rights by adjudicating sexual harassment allegations against him without hearing live testimony from the accusing student. *Id.* at 484–85.  Instead, the accused professor only received "snippets of quotes" with no "opportunity to test [his accuser's] credibility." *Id.* at 485.  The Fifth Circuit observed that the university could have *avoided* a due process violation by doing precisely what Texas A&M did in the *Van Overdam* case: "the Committee or its representative should have directly questioned [the accusing student], after which Walsh should have been permitted to submit questions to the Committee to propound to [her]." *Id.*  "In this respect, we agree with the position taken by the First Circuit 'that due process in the university disciplinary setting requires some opportunity for real-time cross-examination,

3

even if only through a hearing panel.'" *Id.*  The Fifth Circuit's reiteration of the *Walsh* analysis in *Van Overdam* clearly suggests that the Court maintains the fundamental precept that due process requires the opportunity for real time cross-examination of the accuser – a right which was not afforded Andrew Doe in the matter before this Court.  Neither *Van Overdam* nor *Walsh* support any determination other than that the due process rights of Andrew Doe were violated, given his complete inability to cross-examine his accuser.

Defendants' reliance upon *Walsh v. Hodge,* 975 F.3d 475 (5th Cir. 2020) is equally unavailing inasmuch as the opinion offers further support for Andrew Doe's denial of due process claim.  While clearly distinct in the facts involving the termination of a university professor, which arises in the employment context rather than from alleged student misconduct, the Fifth Circuit took the opportunity to clearly express that it agrees with the position taken by the First Circuit "that due process in the university disciplinary setting requires 'some opportunity for real-time cross-examination, even if only through a hearing panel." *Walsh*, at 485.  Andrew Doe had no opportunity for cross-examination of anyone, much less his accuser, and the violation of his due process rights has been reinforced by the Fifth Circuit's opinion in *Walsh*.  In *Walsh*, the Fifth Circuit noted, importantly, that "...we are persuaded that the substitute to cross-examination the University provided Walsh—snippets of quotes from Student #1, relayed by the University's investigator[1]—was too filtered to allow Walsh to test the testimony of his accuser and to allow the Committee to evaluate her credibility, particularly here where the Committee did not observe Student #1's testimony. *Walsh* at 486.  To the extent that Defendants' Response asserts that the probative value of any such cross-examination here would have been particularly limited,

---

[1] In close parallel to *Walsh*, the information against Andrew Doe consisted of the University's investigator's own summaries of student statements and the Hearing Panel had no opportunity to evaluate the credibility of anyone making or allegedly supporting allegations against Andrew Doe.

however, because the allegations did not turn on a credibility contest -- such an argument could not be further misplaced. The credibility of Bethan Roe was placed directly in issue in this "he said/she said" dispute, with inconsistent statements by Roe found in the record, yet Andrew Doe was deprived of *any* opportunity to cross-examine Roe (either personally or through the Hearing Panel) regarding the credibility of her allegations.

In sum, neither *Van Overdam* nor *Walsh* support any determination other than that the due process rights of Andrew Doe were violated. In fact, as was the situation in *Rice*, the accumulation of procedural irregularities all disfavoring the male respondent begins to look like a biased proceeding. Defendants' motion for summary judgment should be denied in its entirety.

RESPECTFULLY SUBMITTED, this the 15th day of June, 2023.

**ANDREW DOE,** Plaintiff

BY: /s/*J. Lawson Hester*
MS Bar No. 2394
SUMRELL SUGG, P.A.
Email: lhester@nclawyers.com
Post Office Drawer 889
New Bern, NC  28563
Telephone: 252.633.3131


BY: */s/ Michelle T. High*
Michelle T. High
MS Bar No. 100663
WEISBROD MATTEIS & COPLEY PLLC
Email: mhigh@wmclaw.com
1022 Highland Colony Parkway
Suite 203
Ridgeland, Mississippi 39157
Telephone: 601.803.5002