UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANDREW DOE                                                                                              PLAINTIFF

V.                                                                        CIVIL ACTION NO. 3:18-CV-138-DPJ-FKB

THE UNIVERSITY OF                                                                                    DEFENDANTS
MISSISSIPPI, ET AL.

ORDER

Defendants in this Title IX case have filed two motions under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The first asks the Court to exclude expert opinions from Merrida Coxwell [168]; the second addresses experts Nancy Favaloro and Holly Sharp [170]. As explained below, the former motion is granted, and the latter is granted in part and denied in part.

I.      Standard[1]

Federal Rule of Evidence 702 governs the admission of expert testimony; it provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

---

[1] The facts are set forth in the order on the parties' cross-motions for summary judgment.

Thus, "expert testimony is admissible only if it is both relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591.

Also, Rule 703 allows expert witnesses to base opinions on facts or data they have "been made aware of or personally observed." "If the facts and data relied upon are the sort that experts in that field would reasonably rely on, then those facts 'need not be admissible for the opinion to be admitted.'" *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013) (quoting Fed. R. Evid. 703).

Whether a proposed expert should be permitted to testify under Rule 702 "is case, and fact, specific." *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006). And the decision to admit or exclude evidence is within the discretion of the trial court. *In re: Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 264 (5th Cir. 2022).

II.   Analysis

    A.   Coxwell

Doe designated Merrida Coxwell to testify, based on his "knowledge, training, and experience," about "the application of the Due Process Clause to court or adjudicatory hearings where facts are in dispute or in which witnesses may be called and facts need to be determined or contested." Coxwell Report [182-1] at 1. Coxwell is a well-regarded criminal-defense attorney.

Coxwell proposes to explain "the principles of due process . . . encompassed with the Fifth and Fourteenth Amendments" and to opine that "the University of Mississippi failed to provide Andrew Doe with the most basic of procedural protections to ensure the disciplinary hearing did not violate his due process rights." *Id.* at 4, 10; *see also id.* at 10 ("The proceedings in this case, in my opinion, are violative of every notion of due process and fundamental fairness.

. . . Andrew Doe appears to have been found guilty of misconduct based upon innuendo and on a mere scintilla of evidence and I believe this violated his due process rights.").

Defendants moved to strike these opinions before the Court ruled on the motions for summary judgment. At the time, they argued that the opinions were "unreliable, unhelpful, and impermissible." Defs.' Mem. [169] at 2. It was true when Defendants filed their motion that "an expert may never render conclusions of law," which Coxwell seems to do. *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) (citing *Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996)). Nor may an expert tell the jury how to rule. *Sowell v. United States*, 198 F.3d 169, 171–72 (5th Cir. 1999). But now that the Court has granted Doe's motion for summary judgment on the procedural-due-process claims, Coxwell's opinions are even less helpful to the jury. Fed. R. Evid. 702(a). The jury will not be asked to decide whether Defendants violated Doe's due-process rights. If due-process law bleeds into the Title IX claim, the Court will instruct the jury on those issues. Defendants' motion to exclude Coxwell's testimony is granted.

B.   Favaloro and Sharp

Doe designated rehabilitation counselor Nancy Favaloro and accountant Holly Sharp to provide testimony about Doe's economic losses. Both witnesses possess sufficient knowledge, skill, education, and training to offer their opinions under Rule 702. The issue is whether those opinions are sufficiently reliable. More to the point, Favaloro renders opinions that do little more than repeat what Doe and his father told her about his employment plans. Sharp then relied on those opinions to formulate hers.

As an initial point, these experts rendered their opinions over four years ago, and much of what they wrote may now be obsolete. For example, their reports anticipate whether Doe would return to school or enter the workforce in the years following their 2019 reports. Those

projections have now been supplanted by facts.  Given the passage of time, the Court will give the parties a limited window to update their expert designations and conduct follow-up discovery.  This Order should inform those new designations.

*Favaloro.*  Favaloro spoke with Doe and his father about Doe's hypothetical future with his father's company when he graduates from college.  Based on those conversations, Favaloro opined that if Doe completes college, he would either go to law school or work "with his father's company at entry level earnings of $70,00.00–$80,000.00 per year and up to $120,000.00 within two years."  Favaloro Report [180-5] at 3.  She also concluded, again based on her conversations with Doe and his father, that "[t]he most probable track for Andrew Doe is a senior position as Vice President of Sales, Chief Commercial Officer, or Chief Operating Officer at $375,000.00–$850,000.00 and up to $1.4 million as president and CEO."  *Id.*  In other words, her initial opinions merely parrot what Doe and his father told her.

Favaloro also offered the opinion that, if Doe "is unable to complete college," he will be employable as a customer-service representative, recruiter, retail-sales consultant, communications specialist, or dispatcher, earning a median hourly wage of between $16.31 and $25.26.  *Id.*  Based on these numbers, and assuming Doe finished college after his suspension from the University of Mississippi, Favaloro reported an "opinion that Andrew Doe will experience at least a four[-]year delay in starting his work life which results in an approximate $400,000.00 loss of earnings at the front end."  *Id.*

Defendants say Favaloro's opinions about Doe's employment prospects within the father's company are "based on absolutely no statistical analysis or data, . . . are . . . unsupported and rebutted by Doe's own testimony," and are "therefore both unreliable and unhelpful."  Defs.' Mem. [184] at 10.  The Court agrees.

4

Nothing would prevent Doe or his father from testifying about his plans or how much he might expect to earn working for his father. In contrast, Favaloro "may not simply transmit hearsay to the jury." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008). She must instead "form [her] own opinions by applying [her] extensive experience and a reliable methodology to the inadmissible materials." *Id.* (quoting *United States v. Dukagjini*, 326 F.3d 45, 58 (2d Cir. 2003). As one secondary source puts it, "litigants cannot properly use the expert testimony conventions to get a witness to prove facts and remote statements while adding no special insights of [her] own." 3 Mueller & Kirkpatrick, Federal Evidence § 7:16; *see Sanders v. Koch Foods, Inc.*, No. 3:19-CV-721-DPJ-FKB, 2022 WL 1817333, at *3 (S.D. Miss. June 2, 2022). Favaloro's opinions about Doe going to work for his father add nothing to what she was told and are thus inadmissible.

She does, however, have a few additional opinions. For example, she states the potential earnings for an attorney in the Nashville, Tennessee, market. Favaloro Report [205-1] at 3. She also lists compatible jobs for someone without a college degree and the corresponding wages. *Id.* That information is within her area of expertise, and Defendants have not sufficiently explained why these numbers are inadmissible. The motion is denied as to those opinions. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.[2]

---

[2] Favaloro does calculate a lost-wages number "at the front end," but—unlike Sharp—it appears that all she did was subtract. If so, that would not require an expert. *See Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990) (affirming exclusion of expert and holding "trial judge correctly decided that the jury could adeptly assess this situation using only their common experience and knowledge").

***Sharp.*** Sharp picks up where Favaloro ends, accepting Favaloro's reliance on Doe and his father's representations about Doe's potential future with his father's company. She assumes that "Doe would have graduated in May 2019 earning annual compensation of $80,000 for the first 2 years and $120,000 after 2 years had he not been suspended by the University of Mississippi effective April 3, 2017." Sharp Report [183-2] at 6. She then calculates Doe's lost earnings based on three scenarios. In scenarios one and two, Doe does not return to college and works at the lowest-paying and highest-paying of the jobs Favaloro identified. In scenario three, "Doe graduates from college in December 2022, earning annual compensation of $80,000, increasing to $120,000 after two years." *Id.*

Defendants argue that Sharp's opinions should be excluded because she incorporated Favaloro's unreliable opinions into her own. But Sharp is different. Unlike Favaloro, her opinions do more than echo what Doe and his father said. She lists those statements as her "assumptions," but she then takes those assumptions and applies her expertise in accounting to determine economic loss. Sharp Report [205-2] at 6

A similar thing happened in *Alon USA L.P.* when the expert gave valuation opinions about a building premised in part on interviews with employees who estimated the building's life expectancy. 705 F.3d at 524. The district court denied a motion to strike, and the Fifth Circuit affirmed. In doing so, it distinguished the Seventh Circuit's holding in *In re James Wilson Associates*, noting that "[t]he problem [there] was rooted in the fact that the architect was seeking to repeat information on a topic outside of his expertise instead of using 'what the engineer told him to offer an opinion within the architect's domain of expertise.'" *Id.* at 525 n.5 (discussing 965 F.2d 160 (7th Cir. 1992)).

Sharp has done more than "repeat information." *Id.* And while Defendants argue that the assumptions themselves are unreliable, their arguments go to weight. *Daubert*, 509 U.S. at 596. That said, this is another area where the issues may be moot. If redesignated, Sharp may well rely on something different. The motion is denied as to Sharp.

III.    Conclusion

The Court has considered all arguments. Those not directly addressed would not have changed the outcome. For the reasons stated, Defendants' motion to exclude the opinions of Merrida Coxwell [168] is granted, and their motion to exclude the opinions of Nancy Favaloro and Holly Sharp [170] is granted in part and denied in part. The parties are directed to contact the chambers of United States Magistrate Judge F. Keith Ball within one week to set the case for a scheduling conference to (1) obtain new pretrial and trial settings; (2) establish deadlines for amended expert reports; and (3) set parameters for additional expert discovery, if required.

**SO ORDERED AND ADJUDGED** this the 5th day of September, 2023.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE