IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ANDREW DOE**                                                                         **PLAINTIFF**

**V.**                                             **CIVIL ACTION NO. 3:18-CV-138-DPJ- ASH**

**UNIVERSITY OF MISSISSIPPI, et al.**                                     **DEFENDANTS**

**BRIEF IN SUPPORT OF DEFENDANTS'
SECOND MOTION FOR SUMMARY JUDGMENT**

Plaintiff Andrew Doe ("Doe") has alleged the University of Mississippi engaged in impermissible sex discrimination in violation of Title IX when it suspended him following a disciplinary hearing in 2017. Because the record contains no proof the Court can provide him with any effectual relief as to that claim, the Court should grant judgment in favor of Defendants.

**FACTS AND PROCEDURAL BACKGROUND**

The Court has already discussed the underlying facts of this case in its Order on the parties' motions for summary judgment. *See* Order [Doc. 236]. In short, a fellow undergraduate student accused Doe of violating the University's sexual misconduct policy by having sex with her when she lacked capacity to give effective consent. After a Title IX investigation (in which Doe declined to participate) and a hearing (at which Doe's accuser did not appear), Doe was suspended. Doe later sued the University and other State entities and officials, alleging violations of his due process rights and of Title IX.

Honey Ussery, the University's Title IX Coordinator, first spoke with "Bethany Roe," the complainant, on December 5, 2016, after the University Police Department informed Ussery that the Oxford Police Department was investigating Doe for an alleged sexual assault. Ex. "B" to Defs' Mot. for Summ. J. (Ussery Depo.) 159:22-161:15 [Doc. 179] (previously filed under

restricted status). Roe did not wish to pursue a Title IX proceeding at that time. *Id*. at 161:16-162:1; 206:11-207:4.

At Roe's request, Ussery interviewed her and began a Title IX investigation on January 30, 2017. *Id*. at 161:16-162:1; 206:11-207:4. Doe declined to participate in Ussery's investigation. *Id*. At 161:6-162:13. Ussery completed her investigative report on February 28, 2017, and sent it to the Student Conduct Office. *Id*. at 241:11-19; Ex. "C" to Defs' Mot. for Summ. J. (Title IX Report) (previously filed under restricted status).

████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

████████ Doe voluntarily withdrew from the University in January 2017, before Ussery had started a Title IX investigation. Id. at 68:3-11. ████████████████████

████████████████████████████████████████

████████████████

The University Judicial Council convened a hearing on the Title IX allegation on March 31, 2017, and determined Doe was responsible for violating the University's policy on sexual misconduct. Ex. "F" to Defs' Mot. for Summ. J. (Outcome Letter) [Doc. 179-4] (previously filed under restricted status). Doe was initially expelled, but the Appellate Consideration Board reduced his sanction to a suspension until the start of the Fall 2020 semester. Ex. "E" to Defs.' Mot. to Dismiss (Appellate Board Memo.) [Doc. 40-4] (previously filed under restricted status).

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

████████████████████████

Doe did not apply to any other school after he withdrew from the University in January 2017. He did not ask any other school whether his suspension at the University of Mississippi would preclude his admission at another institution. He did not return to the University once his suspension was over. He does not intend to re-enroll at the University or to attend any other college or university in the future, much less to seek a professional or other post-graduate degree. Ex. "J" to Defs.' Mot. for Summ. J. (Doe 2020 Depo.), at 152:18-153:13;162:1-23 [Doc. 179-8] (previously filed under restricted status); Ex. "A" (Doe 2024 Depo.), at 56:20-23

Doe did not apply for any job from the time he withdrew from the University in January 2017 until March 2023, and there is no proof he was never told he would not be considered for any job because of the University's student discipline process. Ex. "J" to Defs.' Mot. for Summ. J. (Doe 2020 Depo.), at 28:2-30:20 [Doc. 179-8] (previously filed under restricted status); Ex. "A" (Doe 2024 Depo.), at 17:15-19:8. He was supported by his father ($2,000 monthly), who also paid for his numerous hunting trips. *Id*. at 21:4-23:9. Doe obtained the first job for which he applied in April 2023, with a starting annual salary of $50,000. Four months into the job, Doe received a raise to an annual salary of $70,000. *Id.* at 41:3-20; 53:14-22; Ex. "B" (Employer 2024 Depo.), at 17:15-20. Doe's current employer, who only recently learned of Doe's history

3

with the University through the course of discovery in this lawsuit, does not plan to take any employment action against Doe. *Id*. at 29:3-30:10.

The Court granted Doe's Motion for Partial Summary Judgment with respect to his procedural due process claim and ordered Doe's requested injunctive relief. Order [Doc. 236]. The Court also denied Defendants' Motion for Summary Judgment. *Id*. The Court also partially granted Defendants' motion challenging the testimony of two proposed economic experts [Doc. 237]. The Court then gave the parties an opportunity to supplement their discovery responses and expert designations and allowed Defendants to file a dispositive motion on the issue of recoverable damages and issues related to Doe's amended expert reports. Text-Only Order, Sept. 15, 2023.

## ARGUMENT

The only claim remaining for trial is Doe's Title IX sex discrimination claim. The Court has already awarded Doe the injunctive relief his lawsuit sought through his procedural due process claim. Because Doe cannot succeed on his claims for damages as a matter of law, this Court should grant judgment in favor of Defendants.

**1.     Standard of review**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue of material fact is genuine only if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Doe's "burden is not satisfied with 'some metaphysical

doubt as to the material facts,' by 'conclusory allegations,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (citations omitted). The moving party is not required to present evidence proving the absence of a material fact issue; rather, the moving party may meet its burden by simply "pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005) (*citing Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).

2.   ***Doe may not recover damages for emotional distress and reputational damages.***

Doe alleges his suspension from the University caused him "psychological, emotional and reputational damages." Second Am. Compl., at ¶ 11 [Doc. 9]. Doe may not recover such damages in a Title IX claim, and Defendants are entitled to summary judgment with respect to these damages.

In *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212 (2022), a deaf and legally blind patient sued a physical therapy provider under the Rehabilitation Act and the Affordable Care Act after the provider refused to provide her an American Sign Language interpreter at her appointments. *Id*. at 216-17. The Supreme Court held the plaintiff could not recover emotional distress damages under the Rehab Act and the ACA, both of which Congress enacted under the Spending Clause of the Constitution, because such damages were not "traditionally available in suits for breach of contract." *Id*. at 230 (*citing Barnes v. Gorman*, 536 U. S. 181, 187 (2002)).

The same limitation on emotional distress damages applies to claims brought under Title IX, which is also one of the four Spending Clause statutes "prohibiting recipients of federal financial assistance from discriminating based on certain protected grounds." *Id*. at 217–18; *McGowan v. SMU*, No. 3:18-CV-00141-N, 2024 U.S. Dist. LEXIS 20349, at *31-32 (N.D. Tex.

5

Feb. 5, 2024) ("Because emotional distress damages are not available under Title IX, Plaintiffs cannot recover damages related to pain and suffering, emotional and psychological harm, or loss of quality of life."); *Rollins v. Kiffin*, No. 3:23-cv-00356-MPM-RP, 2024 U.S. Dist. LEXIS 16864, at *20 (N.D. Miss. Jan. 31, 2024) (holding it is "beyond dispute" that Title IX is Spending Clause legislation for which no emotional distress damages are available) (*citing Loera v. Kingsville Indep. Sch. Dist.*, No. 2:21-cv-00031, 2023 U.S. Dist. LEXIS 166104, 2023 WL 6130548, at *4 (S.D. Tex. Sept. 19, 2023)). Defendants are entitled to summary judgment with respect to Doe's claims for emotional distress and reputational damages.[1]

### 3.     *Doe cannot prove other compensatory damages.*

Doe also alleges he has suffered additional compensatory damages including "loss of educational opportunity" and "loss of future income." Second Am. Compl., at ¶ 168 [Doc. 9]. While *Cummings* did not foreclose the possibility of compensatory damages in a Title IX action, any such damages must be contractual in nature. *See Barnes*, 536 U.S. at 187 (holding that "under Title IX, which contains no express remedies, a recipient of federal funds is nevertheless subject to suit for compensatory damages …. and injunction, … forms of relief traditionally available in suits for breach of contract"). Doe has come forward with no proof upon which a reasonable jury could rely to find that the University caused him to suffer economic damages.

Consequential damages in a breach of contract claim must be reasonably foreseeable at the time of the contract. *Aetna Cas. & Sur. Co. v. Day*, 487 So. 2d 830, 835 (Miss. 1986).

---

[1] Plaintiff's Second Amended Complaint does not specifically seek punitive damages for his Title IX claim, Second Am. Compl., at ¶¶ 153-54 [Doc. 9], but that relief would be unavailable for the same reason emotional distress damages are unrecoverable. *See Cummings*, 142 S. Ct. at 1571 (*citing Barnes*, 536 U. S., at 187-188).

Damages for a breach of contract must also be proven beyond the point of speculation. *See Int'l Ass'n of Certified Home Inspectors v. Homesafe Inspection, Inc.*, 335 So. 3d 583, 593 (Miss. Ct. App. 2022) (holding that damages for a breach of contract cannot be recovered unless plaintiff's evidence "removes their quantum from the realm of speculation and conjecture and transports it through the twilight zone and into the daylight of reasonable certainty") (internal citation omitted); *Lovett v. E.L. Garner, Inc.*, 511 So. 2d 1346, 1352 (Miss. 1987) ("Damages for breach of contract must be proven 'with reasonable certainty and not based merely on speculation and conjecture.'") (*citing Burnham v. Joseph*, 482 So. 2d 1151, 1153 (Miss. 1986)). *See also Harrison v. Walker*, 91 So. 3d 41, 46-47 (Miss. Ct. App. 2011) (affirming jury instruction stating that "[a] party injured by a breach of contract does not have the right to be placed in a better position than he would have occupied had the contract been performed.").

Here, Doe has designated experts to testify that his suspension caused an economic loss of more than $1 million based on his assertion that had he not been suspended he would have begun an alternate career path. However, his vocational expert testified that one of those tracks (attorney) was based on a single comment Doe made to her in 2019 that he "was interested in continuing on to law school," but that he "didn't know an awful lot" about the career path. Ex. "C" (Favaloro Depo.), at 42:10-23. His expert conceded that while she had no way of knowing if Doe had been capable of completing law school in either 2017 or 2019, she didn't "know that he was not capable either." *Id*. at 45:15-24. Essentially, she stated that it "was his ambition to do that," and "with his ACT scores, there—academically, had been really no reason he could not have." *Id*. At 46:1-8. She further stated that if Doe had said he thought he wanted to be a

7

neurosurgeon, she probably would have included earnings information for a neurosurgeon as well as a general physician. *Id*. at 44:17-23.

Based on the record, no evidence supports the probability of Doe's career path as an attorney or the other alternate roles upon which his experts' theories are based. Doe quit school before the University even began its student misconduct proceeding, and nothing beyond mere speculation suggests Doe would have even enrolled in law school, much less have become a practicing attorney. Favaloro's own testimony reveals that Doe didn't know much about his claimed career path, but merely mentioned an interest in constitutional law to her. No evidence supports the probability of a legal career for Doe, and Favaloro's contention that "there was no reason he could not have" become an attorney is inadmissible speculation.

And while Sharp continues to reference a potential career with Doe's father's company, in her report, that assumption is based on Favaloro's original report, which this Court previously excluded and Favaloro then omitted from her supplemental report. Further, Doe has made crystal clear that he has no desire to work for his father's company, and this theory also lacks factual support.

Moreover, Doe never sought to return to college anywhere after his arrest in December 2016 and voluntary withdrawal from the University in January 2017. *See* Doe Dep. dated May 7, 2020 (Ex. "J" to Defs.' Mtn. for S.J.), pp. 68-69 [Doc. 179-8]. Both before and after his University suspension ended in August 2020, Doe made abundantly clear that he has no interest in continuing his education at any college or university (much less in obtaining a law degree). *See* Doe. Dep. dated Jan. 27, 2024, 19:1-25. Notably, not only has Favaloro not spoken with Doe

since 2019, but she was also not provided and never reviewed either of his deposition transcripts. N. Favaloro Dep. dated Feb. 7, 2024, 62:4-25; 63:1-25 (Ex. "C").

Similarly, his vocational expert also conceded that Doe now has the same qualifications he had when he withdrew from the University in 2017, and she was not aware of any reason he could not have pursued employment in his chosen field before 2023. *Id*. at 34-36, 48-52, 82-83. Doe's theory regarding any delay in the commencement of his professional life caused by his suspension is also at odds with the facts in this case and based upon impermissible speculation.

Doe's theories regarding his alleged loss of educational opportunity and future income are speculative, at best. Doe has failed to transport those claims from the world of speculation "into the daylight of reasonable certainty." Moreover, Doe has not and cannot establish that his suspension from the University in April 2017 caused any delay in his education process or impacted his ability to pursue the career of his choice. He cannot recover other compensatory damages.

4. ***Doe lacks standing to pursue his Title IX claim.***

A plaintiff lacks standing to pursue a claim if he cannot show a likelihood that a favorable decision will redress his alleged injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "At all stages of litigation, a plaintiff must maintain a personal interest in the dispute." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 141 S. Ct. 792, 796 (2021). A case is typically moot where a court finds it can no longer provide a plaintiff with any effectual relief. *Id*. Doe lacks standing to pursue his Title IX claim because he cannot satisfy the redressability prong of the Article III standing analysis.

For the reasons above, Doe may not recover emotional distress or reputational damages or the other types of compensatory damages his Second Amended Complaint seeks for Defendants' alleged violation of Title IX. Plaintiff's Second Amended Complaint seeks no other form of damages allowable under Title IX.[2]

Doe also sought declaratory and injunctive relief. His operative complaint asks for an order barring the University from continuing its Title IX proceedings against him, reinstating him as a student, expunging the finding of responsibility from his academic record, and sealing the records related the Title IX proceedings. Second Am. Compl., at ¶ 153; Prayer for Relief. The first two requests are moot. There is no proof of a continuing Title IX proceeding, and Plaintiff's suspension ended in 2020 (not to mention that Plaintiff does not intend to return to the University). A trial on the merits of Doe's Title IX claim will not redress the injury the rest of his requested injunction seeks to cure because the Court has already awarded him that remedy. *See* Order, at 24 [Doc. 236]. Doe's requests for declaratory and injunctive relief are moot.

Because Doe has sought no remedy that remains available to him under Title IX, he lacks standing to pursue his claim. *See Van Overdam v. Tex. A&M Univ.*, No. 4:18-cv-02011, 2024 U.S. Dist. LEXIS 4994, at *15 (S.D. Tex. Jan. 10, 2024) (holding that plaintiff lacked standing to pursue Title IX where *Cummings* barred emotional distress damages, plaintiff had failed to allege or prove other recoverable damages, plaintiff was no longer a student, and plaintiff had failed to show availability of other injunctive or declaratory relief). Doe's remaining claim should be dismissed in its entirety.

---

[2] Doe's request for attorney fees and costs cannot satisfy the redressability requirement because they would be a "mere byproduct of the litigation itself." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

## CONCLUSION

The record contains no proof that the Court could provide Doe with any effectual relief even if he prevailed on his Title IX claim. Because he lacks standing to pursue his only remaining claim, Defendants are entitled to judgment as a matter of law.

THIS, the 8th day of March 2024.

          Respectfully submitted,

**STATE OF MISSISSIPPI; THE UNIVERSITY OF MISSISSIPPI; STATE INSTITUTIONS OF HIGHER LEARNING ("IHL"); THE BOARD OF TRUSTEES OF STATE INSTITUTIONS OF HIGHER LEARNING; C.D. SMITH, JR.; SHANE HOOPER; TOM DUFF; DR. FORD DYE; ANN H. LAMAR; DR. ALFRED E. MCNAIR, JR.; CHIP MORGAN; HAL PARKER; ALAN W. PERRY; CHRISTY PICKERING; DR. DOUG ROUSE; DR. J. WALT STARR; GLENN F. BOYCE; JEFFREY S. VITTER**

*/s/ Paul B. Watkins, Jr.*
J. CAL MAYO, JR. (MB NO. 8492)
PAUL B. WATKINS, JR. (MB NO. 102348)
J. ANDREW MAULDIN (MB NO. 104227)
ATTORNEYS FOR DEFENDANTS

OF COUNSEL:
MAYO MALLETTE PLLC
2094 Old Taylor Road, Suire 200
Oxford, Mississippi 38655
Tel: (662) 236-0055
cmayo@mayomallette.com
pwatkins@mayomallette.com
dmauldin@mayomallette.com