UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANDREW DOE                                                                                                        PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:18-CV-138-DPJ-ASH

UNIVERSITY OF MISSISSIPPI et al.                                                                  DEFENDANTS

ORDER

This is a Title IX discrimination action; there are four motions before the Court.  First, Defendants—the University of Mississippi, the state college board (and various officers), as well as the State of Mississippi itself—request summary judgment [269].  Second, Doe moves to strike that motion in part [288].  In the third and fourth motions, Defendants ask the Court to exclude three expert witnesses [271, 273].

Some of Doe's damages are barred by law, and his earning-capacity damages are too speculative.  The Court will grant summary judgment on those claims.  But Defendants fail to show that Doe's claim for loss of educational opportunity should be dismissed.  And that finding moots Doe's motion to strike [288].  The motions to exclude will be granted.

I.      Facts and Proceedings

The Court's September 5, 2023, Order [236] details the facts and allegations.  To recap: Andrew Doe attended the University of Mississippi until a sexual encounter with a classmate led him to leave school after the fall semester 2016.  At that point, Doe was under a Title IX investigation for sexual misconduct, but the University had not yet given him notice.  Once he learned of the investigation, a disciplinary hearing followed at which Doe was found responsible and expelled from school.  The expulsion was then reduced to a multi-year suspension after Doe appealed.  Doe, who denies any misconduct, chose not to return to the University when the

1

suspension ended and filed this suit in March 2018. There have been many delays since then, including a nearly two-year stay to explore settlement.

The Court has already held that genuine issues of material fact preclude summary judgment for either side on liability for Doe's Title IX claim of a biased investigation and hearing. Doe did, however, obtain summary judgment on his claim under 42 U.S.C. § 1983 for alleged violation of his due-process rights. Order [236]. The Court thus ordered injunctive relief, requiring the school to expunge the disciplinary finding and proceeding from Doe's records; the case went ahead on his Title IX claim. *Id*.

In a separate order that same day, the Court struck some opinions from Doe's expert Nancy Favaloro but denied Defendants' motion to strike her remaining opinions or those from another expert Holly Sharp. Order [237]. The Court also directed the parties to the magistrate judge to obtain a new schedule for remaining matters such as amended expert reports. *Id*. at 7.

On September 15, 2023, a docket-entry order gave deadlines for amending expert reports, supplementing discovery responses, and filing any new motions to exclude experts. The Order added: "The dispositive motion deadline has expired, but Defendants may file a dispositive motion on the issue of recoverable damages and issues related to Plaintiff's amended expert reports; any such dispositive motion must be filed by 3/1/2024" (later extended to March 8). Defendants filed that damages motion and moved again to exclude Favaloro and Sharp. They also sought to exclude a third expert, Travis Hill.

II.     Motion for Summary Judgment

    A.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute about any material fact and the moving party is entitled to

judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When those contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); Little, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

B.  Analysis

Defendants offer three primary arguments for summary judgment. First, they say Doe can't recover damages for emotional or reputational harm under Title IX. Second, Defendants contend that Doe's proof of compensatory damages is too speculative to support an award. Last, they argue that the lack of any available relief renders his case moot, so he lacks standing. Doe

insists he can prove "compensatory damages, inclusive of damages for delayed educational opportunity and lost wages." Pl.'s Resp. [289] at 9.  And because of that, he says standing exists.

          1.      Damages Available Under Title IX

Apart from the injunctive relief already awarded under the § 1983 claim, Doe seeks "[a]ll damages available . . . pursuant to Title IX." 2d Am. Compl. [9] ¶ 154.  Title IX was enacted under the authority found in the Spending Clause of the United States Constitution. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 217–18 (2022).  "[L]egislation enacted pursuant to the spending power is much in the nature of a contract:  in return for federal funds, the [recipients] agree to comply with federally imposed conditions." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).

As applied to Title IX, public institutions like the University accept federal funding but agree in exchange that "no person 'shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *Locke v. Univ. of Tex.*, 938 F.3d 204, 209 (5th Cir. 2019) (quoting 20 U.S.C. § 1681(a)).  The question is whether Title IX allows a plaintiff to recover all damages Doe seeks.  It does not.

In *Cummings*, the Supreme Court examined the available remedies for claims brought under two Spending Clause statutes—the Rehabilitation Act and the Affordable Care Act. Following the contract analogy from *Pennhurst*, the Court concluded that "a funding recipient is aware that, for breaching its Spending Clause 'contract' with the Federal Government, it will be subject to the *usual* contract remedies in private suits." *Cummings*, 596 U.S. at 221.  As a result, *Cummings* held that damages for emotional distress are not recoverable because they were not usually awarded in contract disputes. *Id.* at 230.

While *Cummings* was not brought under Title IX, it identifies Title IX as one of four statutes based on the Spending Clause. *Id.* at 218. Thus, "nearly every court to consider the issue has concluded" that *Cummings* applies to Title IX. *Rollins v. Kiffin*, No. 3:23-CV-356-MPM-RP, 2024 WL 386925, at *7 (N.D. Miss. Jan. 31, 2024) (citing *Van Overdam v. Texas A&M Univ.*, No. 4:18-CV-2011, 2024 WL 115229, at *2 (S.D. Tex. Jan. 10, 2024)).

When deciding whether damages are "generally available" in a contract dispute, the Supreme Court has considered hornbook law. *Cummings*, 596 U.S. at 221 (looking to general authorities) (citing *Barnes v. Gorman*, 536 U.S. 181, 187–88 (2002)). This Court will begin with such blackletter law and then look to cases applying those principles to facts like Doe's.

The general basis for contract damages is one's "expectation interest," which has three components: "the loss in the value to him of the other party's performance" plus "any other loss, including incidental or consequential loss" but minus "any cost or other loss that he has avoided by not having to perform." *Restatement (2d) of Contracts* § 347 (1981). The goal is to put the aggrieved party "in as good a position as he would have been in had the contract been performed." *Id.* cmt. a.

Some losses that result from a breach of contract are "foreseeable as the probable result of the breach." *Id*. § 351 cmt. b. Such "general" damages are distinct from "special" or "consequential" damages which may be unforeseeable if the breaching party had no reason to know the special circumstances that would lead to damages "other than in the ordinary course of events." *Id*. Because fair notice is required under *Barnes* and *Cummings*, the foreseeability of such special damages is highly relevant. With these basics in mind, the Court turns to the specific injuries Doe alleges.

***Emotional Distress and Reputational Harms-*** *Cummings* forecloses any damages under Title IX based on emotional distress. *See Rollins*, 2024 WL 386925, at *7. So too, damages for reputational harms are not traditional contract damages. *See Party v. Ariz. Bd. of Regents*, No. CV-18-1623, 2022 WL 17459745, at *4 (D. Ariz. Dec. 6, 2022) (rejecting claim as not supported by traditional contract law; citing cases); *accord Van Overdam*, 2024 WL 115229, at *3 (citing *Party* and other cases).[1]

Doe never really disputes any of this, although he prefers not to concede the issue and thus forfeit it on appeal. Pl.'s Resp. [289] at 3 & n.2. The Court holds that Doe cannot recover under Title IX for non-contractual damages like emotional and mental harms, humiliation, mental anguish, or reputational injuries. Defendants' motion will be granted as to these alleged injuries.

That leaves less obvious questions—whether Doe can recover for "loss of educational opportunity" and "loss of future income," the only other grounds for compensatory damages he has argued. Pl.'s Resp. [289] at 4, 9. The Court takes those issues separately.

***Loss of Educational Opportunities-*** A university education has never been only about economic gain.[2] And under Title IX, students are "specifically shielded from being 'excluded

---

[1] Although Doe's Complaint mentions punitive damages, it does not seek them under Count One (Title IX), and he has not argued for those damages in his response to Defendants' summary-judgment motion. Nor could he. *See Van Overdam*, 2024 WL 115229, at *3 (citing *Loera v. Kingsville Indep. Sch. Dist.*, No. 2:21-CV-31, 2023 WL 6130548, at *4 (S.D. Tex. Sept. 19, 2023)).

[2] As noted in *Wieman v. Updegraff*,

> A university, then, is a kind of continuing Socratic conversation on the highest level for the very best people you can think of, you can bring together, about the most important questions, and the thing that you must do to the uttermost possible limits is to guarantee those [students] the freedom to think and to express themselves.

from participation in' or 'denied the benefits of' any 'education program or activity receiving Federal financial assistance.'" *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999) (quoting 20 U.S.C. § 1681(a)).

Because Title IX expressly refences these opportunities, funding recipients like the University should foresee that breaching the Title IX bargain could interfere with those stated benefits. *See Cummings*, 596 U.S. at 221. And because "[l]ost educational opportunities lie at the heart of Title IX private right of action cases," other courts have allowed Title IX plaintiffs to seek those damages post-*Cummings*. *Doe v. Fairfax Cnty. Sch. Bd.*, No. 1:18-CV-614, 2023 WL 424265, at *5 (E.D. Va. Jan. 25, 2023) (citing *Davis*, 526 U.S. at 650) ("The statute makes clear that, whatever else it prohibits, students must not be denied access to educational benefits and opportunities on the basis of gender.")); *accord McGowan v. S. Methodist Univ.*, No. 3:18-CV-00141-N, 2024 WL 455340, at *10 (N.D. Tex. Feb. 5, 2024) (declining to "find that compensatory damages for loss of educational opportunities and benefits are precluded as a matter of law"). Those cases are persuasive.

Defendants argue though that Doe must still show economic losses resulting from those lost opportunities with reasonable certainty. Defs.' Reply [300] at 8. There is some truth to the point. "Courts have traditionally required greater certainty in the proof of damages for breach of a contract than in the proof of damages for a tort." *Restatement (2d) of Contracts* § 352 cmt. a. For example, "damages for the loss of anticipated or prospective profits, which the plaintiff

---

344 U.S. 183, 197–98 (1952) (Frankfurter, J., concurring) (quoting Statement of Robert M. Hutchins, in Hearings before the House Select Committee to Investigate Tax-Exempt Foundations and Comparable Organizations, pursuant to H. Res. 561, 82d Cong., 2d Sess. (Nov. 25, 1952)).

7

might have made but which are not reasonably certain and are not capable of being proven, cannot be recovered." 24 *Williston on Contracts* § 64:14 (4th ed.).

A similar argument arose in *Fairfax*. The defendants there said the plaintiff could not establish lost educational opportunities "with reasonable certainty." 2023 WL 424265, at *4. The court rejected that argument:

> Although it is true that principles of contract law place the burden on the plaintiff to prove damages with reasonable certainty, Restatement (Second) of Contracts § 352 cmt. a (1981), compensatory damages that are not based upon specific monetary harm but stem directly from lost opportunities suffered as a result of discrimination can nonetheless serve as a basis for damages in private right of action cases based on Spending Clause statutes. *See Montgomery*, 2022 WL 1618741, at *25 n.39, *26 (allowing recovery for lost opportunity under ADA and Rehabilitation Act, and holding that "the Court will not usurp the role of the jury and attempt to quantify such damages in the summary judgment setting."); *Chaitram*, 2022 WL 16821692, at *2 (allowing recovery for loss of meaningful access to participate in medical care).

*Id.* at *5.

Doe relied on *Fairfax* in his response to this motion, but Defendants never addressed it in reply. While it is not binding, the Court agrees with its analysis. Title IX protects these very interests, so contract damages were foreseeable based on lost educational opportunities. And while *reasonable* certainty is required, juries routinely make equally difficult findings in other contexts, like quantifying monetary damages for sexual harassment under Title IX. *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 74–75 (1992).

On this record, Doe has minimally shown that the multi-year suspension and adverse statements on his record may have deprived him of educational opportunities. And "[e]ven if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Firman v. Life Ins. Co. of N.*

*Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).[3]

***Lost Earning Capacity-*** The parties begin their dispute over lost earnings with a clash over Doe's reason for leaving the University. Defendants say he cannot prove economic losses associated with the Title IX investigation because he decided to leave before learning about that investigation. But Doe correctly says he couldn't return after the Title IX ruling. Plus, this is a question of fact.

The more pressing question is whether Doe has established resulting economic harm. According to Defendants, he has not because his claim for lost earnings is too speculative. Defs.' Mem. [279] at 9. Doe disagrees, arguing that the record "contains information relating to the lost wages suffered by Doe both before and after April 2023." Pl.'s Resp. [289] at 8 (citing Doc. 271-2; 271-3; 279-2). He then says "there exists sufficient record evidence for compensatory damages, inclusive of damages for delayed educational opportunity and lost wages." *Id.* at 9 (citing Doc. 40-3; 40-4; 179-7; 179-8, at 152:18-153:13; 162:1-23; 188-3, at 14-15; 271-2; 271-3; 281-3).

Though those arguments are conclusory, the Court examined Doe's cited exhibits. Some have little to do with the issue, but the ones that do contain this:

- "Multiple people, lawyers," told Doe he would not be accepted by other universities or schools because of the disciplinary action. Doe Dep. [179-8] (May 7, 2020) at 161.[4] But he said they were not "individuals at other universities," and he never asked any admissions officer of any other school, nor does he know of anyone who

---

[3] Some of Defendants' arguments may raise failure to mitigate. For example, they say Doe did not apply to other colleges. Defs.' Reply [300] at 4. Failure to mitigate is not an affirmative defense to liability and would be another fact question. *See Carrizales v. State Farm Lloyds*, 518 F.3d 343, 350 (5th Cir. 2008).

[4] Defendants correctly argue in reply that some of this is unsupported by personal knowledge; indeed, it appears to be hearsay. *See* Fed. R. Civ. P. 56(c)(2).

9

did so. *Id*. at 161–62.  No counselor at any college told him his application would be denied. *Id*. at 153.  He nonetheless has no plan to return to college. *Id*. at 162–63 ("I don't trust collegiate institutions.").

- Doe scored 26 on the ACT and obtained two scholarships, whose value he does not know.  His major was "business undecided," and he "was thinking whether or not [he] wanted to go to law school afterward." *Id*. at 27–28, 152.

- His father says Doe believes he would fail a background check if he applied for a job. Doe Sr. Dep. [188-3] at 14–15.

- The expert reports of Nancy Favaloro [271-2] and Holly Sharp [271-3] calculate lost earnings based on a career as an attorney.

This evidence identifies no economic losses other than Doe's alleged loss of future income—mainly from the lost opportunity to practice law.  It also appears to be "[g]uesswork and speculation" which never "serve as a basis for sending a case to a jury." *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 864 (5th Cir. 2004) (citation omitted).

Looking to similar cases, courts assessing damages like these have required far more than Doe offers.  Earlier this year, a district court

> could find only two cases addressing lost earnings capacity in relation to a Title IX claim: (i) the *Fairfax County School Board* case, . . . [holding] that a plaintiff's similar allegations regarding "lost future earnings and earning capacity" failed to set forth identifiable lost professional opportunities and were too attenuated in time from the alleged Title IX violations, 2023 WL 424265, at *6–*7; and (ii) *Doe v. Trustees of Dartmouth College*, ─── F. Supp. 3d ───, 2023 WL 6879237 (D.N.H. Oct. 18, 2023), which similarly found that damages related to lost earnings capacity were too speculative.

*B.R. v. F.C.S.B.*, No. 1:19-CV-917, 2024 WL 1254826, at *8 (E.D. Va. Feb. 26, 2024).  Similar to Doe, the *B.R.* plaintiff sought lost income based on "an expert report . . . that assert[ed] that B.R. [was] incapable of maintaining a job and that, but for the alleged assaults . . ., B.R. would have been a highly successful lawyer or surgeon." *Id*.  The Court granted summary judgment, holding that the plaintiff's "lost earnings and lost earnings capacity are much too speculative and attenuated." *Id*.

10

The *Dartmouth College* case cited in *B.R.* is instructive. There, the court precluded an expelled fourth-year medical student from seeking speculative lost income he hoped to earn as a cardiologist. 2023 WL 6879237, at *5. But the court appeared to allow the plaintiff to seek damages as a primary-care physician, something far less speculative for a fourth-year medical student. *See id.*

Looking outside the discrimination context, breach-of-contract cases brought against colleges by students claiming lost earning capacity also require more than speculation:

> Beyond their conclusory allegations of injury they suffered, Plaintiffs have presented no admissible evidence establishing consequential damages, such as demonstrable educational opportunities foregone, particular job opportunities missed, specific future income potentially lost, or any other potential damages of the type courts have recognized in breach of contract claims asserted by students against a university.

*Basso v. New York Univ.*, No. 16 CIV. 7295, 2020 WL 7027589, at *15 (S.D.N.Y. Nov. 30, 2020).

Defendants' cited authorities track these standards. Defs.' Reply [300] at 6–7. *See, e.g.*, *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 901 (M.D. Tenn. 2018) (applying Tennessee law to breach-of-contract claim: "Doe did not return to Belmont after his suspension and now seeks to hold Belmont liable for unknown damages related to his educational opportunities, career prospects, and future earning capacity. Tennessee breach of contract law exists to make Doe whole, not to provide him with an unquantifiable windfall for the future.").

Turning to Doe, he relies mainly on his experts to prove lost income. Nancy Favaloro is a licensed rehabilitation counselor; she provided the average salaries for a Nashville lawyer and then compared them to occupations Doe might pursue without a college degree. *See* Favaloro Report [271-2]. "Holly Sharp is a Certified Public Accountant, Certified Fraud Examiner[,] and is Certified in Financial Forensics." Pl.'s Resp. [285] at 5–6. Sharp does not claim to be an

11

expert on earning capacity. She instead took Favaloro's opinions about Doe's potential wages and ran the necessary calculations to evaluate his lost-income claim. *See generally* Sharp Supp. Report [275-1].

As an initial point, Favaloro's supplemental report looks at only two career paths: Doe becomes a Nashville lawyer or Doe continues his career without a college degree. That being so, there is no evidence to consider as to any other careers. As noted, once Defendants argued that the evidence of lost income was too speculative, Rule 56 required Doe to identify "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Conclusory assertions and speculation won't do. *TIG Ins. Co.*, 276 F.3d at 759. Doe did not address economic losses other than lost income, so any other economic losses would be unsupported speculation.

Also, Favaloro never opines that Doe would have become a Nashville lawyer. *Id.*; *see also* Favaloro Dep. [280-2] at 45–46 (acknowledging that we "don't know" but saying there is "no reason he could not have"). She merely provides the expected salary had he become one. For that reason, the Court will assume for this discussion that she could provide that testimony. The question is whether Doe's evidence that he would have become an attorney is too speculative to survive summary judgment.

It is. Favaloro looked at lawyer salaries because Doe told her that, at some point, he "was interested in going to law school" or "his intent was either to get a degree in Business or study Constitutional Law and go on to law school." Favaloro Rep. [271-2] at 1–2. He said a similar thing in his deposition, testifying that before he left school his sophomore year, he was "thinking whether or not [he] wanted to go to law school." Doe Dep. [179-8] at 27–28. That's shaky proof that he would have chosen a legal career. And the only other evidence Doe provides to prove that he would have become a lawyer is the 26 he scored on the ACT and the two academic

scholarships he received before arriving at the University. Pl.'s Resp. [289] at 8. While that shows promise, he completed only three semesters and left school with a GPA below 3.0. Doe Dep. [179-8] at 27, 67–68.

It is possible that Doe could have rebounded academically; many people do. And perhaps he would have applied for law school. But "thinking" about being a lawyer early in your college career and having good grades in high school is not enough to create a triable fact. Nothing beyond speculation suggests that he would have applied for law school, been admitted, graduated, passed the bar, and then found a job practicing law in Nashville. Favaloro may not give testimony about what Doe would have earned as an attorney.

Sharp's report is more detailed but builds from this same faulty premise. She provided two "scenarios": (1) Doe becomes a lawyer making the median income for an attorney in Nashville and (2) Doe graduates from college and earns $80,000 a year the first two years and then $120,000 in year three. Sharp Supp. Report [271-3] at 8. These scenarios flow from Favaloro's expert opinions about Doe's lost opportunities. As to the lawyer-based scenario, Sharp's calculations for the resulting damages cannot overcome the speculative predicate.

The $80,000-a-year opinion is similar, though this may bleed into Defendants' motion to exclude. Sharp never explains where she pulled this number, but it apparently came from Favaloro. Again, Sharp took Favaloro's opinions and performed the necessary calculations to determine the resulting damages—there's nothing wrong with that. The problem, though, is that Favaloro abandoned the opinion that Doe could have earned $80,000 his first year out of college (an opinion she offered in her now superseded expert report). *Compare* [180-5] at 2 *with* [271-2] at 3. And like Favaloro, Sharp never offers an opinion that Doe would have actually earned that

much his first year; she simply ran the numbers based on what she was told.  For his part, Doe has cited no record evidence suggesting that he could have made that much.

It was Doe's burden to respond with record evidence showing with reasonable certainty that he suffered the claimed lost wages.  *B.R.*, 2023 WL 424265 *4.  Doe's speculation—and the expert reports premised on it—fails to create a genuine issue of material fact on lost earning capacity.  *TIG Ins. Co.*, 276 F.3d at 759.

### 2. Doe Does Not Lack Standing

According to Defendants, because Doe cannot obtain contractual damages under his Title IX claim, he lacks standing, the case is moot, and the Court should dismiss for lack of jurisdiction.  Doe says in his motion to strike that this part of the summary-judgment motion exceeds the scope of the Court's September 15, 2023, scheduling order.  The finding that Doe's claim for lost educational opportunity survives Defendants' summary-judgment motion moots both Defendants' standing argument and Doe's motion to strike that argument.

### 3. Defendants Have Not Shown Declaratory Relief Is Unavailable

Defendants' briefing on Doe's request for declaratory judgment rests on their argument that his Title IX claim is moot.  Defs.' Mem. [279] at 10; Defs.' Reply [300] at 8–9.  Defendants' initial memorandum does not explain how declaratory judgment may be unavailable even if their mootness theory fails, and to the extent that they address that in their reply, the Court will not consider an argument raised for the first time in a reply memorandum.  *Johnson v. Watkins*, 803 F. Supp. 2d 561, 575 n.3 (S.D. Miss. 2011).  The Court does have some concern whether the Fifth Circuit's decision in *Sapp v. Renfroe*, which the parties do not mention, bars such relief. 511 F.2d 172, 175–76 (5th Cir. 1975) (holding that because student had graduated, no live controversy remained that would entitle him to declaratory relief, even if he potentially had a

claim for compensatory damages) (citing *Bd. of Sch. Comm'rs v. Jacobs*, 420 U.S. 128 (1975)). The parties should address the declaratory-relief issue in their proposed pretrial order.

III.    Motions to Exclude Expert Opinions

    A.    Sharp and Favaloro

Because the Court has held that summary judgment against Doe is proper on his earning-capacity claim, his expert witnesses in support of that claim are irrelevant. Expert testimony is admissible only if it is both reliable and relevant. *Kumho Tire, Inc. v. Carmichael*, 526 U.S. 137, 147 (1999). Defendants' motion to exclude opinions from Favaloro and Sharp is granted.

    B.    Travis Hill

The other motion to exclude targets Travis Hill, Doe's mental-health counselor. Doe disclosed Hill as a non-retained expert, but Defendants object that Doe failed to timely disclose Hill's opinions and that they are irrelevant anyway.

Doe's first disclosed Hill as a potential non-retained expert witness on May 19, 2019 Pl.'s Mem. [286] at 1. But his disclosure merely said: "Travis Hill may recite factual and expert opinion testimony regarding those facts which were provided by Plaintiff and personally observed by Mr. Hill. . . . Any opinion testimony by Mr. Hill will be based upon his personal evaluations and observations of Andrew Doe and his treatment of Mr. Doe, as well as his experience and expertise as a licensed professional counselor." Pl.'s Designation [205] at 7. Doe provided no additional disclosures of Hill's expected testimony before the deadline for supplementation passed on November 13, 2023. *See* Sept. 15, 2023 Text Order.

Doe's designation for Hill is insufficient. Rule 26(a)(2)(C)(ii) addresses disclosures for witnesses who are not retained and therefore not required to provide a written report. Under that rule, the party must disclose not only the subject matter—which Doe does—but also "a summary

15

of the facts and opinions to which the witness is expected to testify." *Id. See also* L.U.Civ.R. 26(a)(2)(D) (requiring the same for designated "physicians and other witnesses who are not retained or specially employed to provide expert testimony but are expected to be called to offer expert opinions at trial"). Doe did not summarize the facts and opinions.

Doe got closer to what is required when he produced a page from Hill's records entitled "Note to File." *See* Notes [281-3] at 25. That document included what appeared to be facts and opinions, but it was first disclosed on February 16, 2024, three months after the disclosure deadline. Pl.'s Notice [266]. In their motion, Defendants correctly argue that assuming the notes would satisfy Rule 26(a)(2)(c), the disclosure was untimely. That means Doe would have to show good cause under Rule 16 for having missed the deadline. Whether good cause exists depends on four factors. "(1) the movant's explanation for failing to meet the deadline; (2) the importance of the requested relief; (3) the potential prejudice in granting the relief sought; and (4) the availability of a continuance to cure such prejudice." *In re Chinese Drywall Liab. Litig.*, No. 09-2047, 2023 WL 1781502, at *2 (E.D. La. Feb. 6, 2023) (addressing late expert disclosures).

Doe essentially responds that Defendants could have discovered the proper disclosures through discovery. But he never addresses the four good-cause factors, and the Court is reluctant to undertake that analysis on its own. That said, the Rule 56 rulings in this Order work against Doe's hope of properly designating Hill as an expert witness at this late date because there is no apparent relevance.

As noted, Doe's alleged emotional-distress damages are not recoverable under Title IX. *See B.R.*, 2024 WL 1254826, at *5 (treating depression and anxiety as emotional distress under *Cummings*). And to the extent that Doe hopes to offer Hill's expert opinions to explain why he

16

delayed seeking employment, that mitigation-related issue is no longer relevant because those economic damages have been dismissed. Doe does say:

> Regardless of the viability of an emotional distress claim, Hill's testimony regarding the dates of his treatment of Doe, issues Doe shared with him regarding the claim and his state of mind, as well as Hill's personal observations are all relevant for understanding the timeline of events and the impact these events had on Doe as he navigated his suspension and career planning. Hill is, effectively, both a fact and expert witness. He has detailed information relevant to the case and the professional education, training and experience to explain the clinical assessment of Doe's depression and anxiety to a jury.

Pl.'s Resp. [286] at 6. But the timeline testimony addresses facts, not expert opinions. And in any event, anything Hill knows about "the timeline of events" is what Doe told him. *Cf. Gibson v. C R Bard Inc.*, No. 6:21-CV-638, 2023 WL 3568049, at *7 (M.D. Fla. Mar. 24, 2023) (holding proper to exclude doctor's "opinions" that "merely repeat[ed] the testimony of a plaintiff without showing reliance on any other factors, methods, or data").

Without addressing the possibility of Hill's testifying as a fact witness at trial—which Defendants have now moved [303] in limine to exclude—the Court grants the motion to exclude any opinion testimony from Hill.

IV.     Conclusion

The Court has considered all arguments presented. Any not specifically addressed here would not change the outcome. Defendants' second motion for summary judgment [269] is granted in part. The Court denies the motion as it relates to lost educational opportunities and standing but otherwise grants the requested relief. The Court denies as moot Doe's motion to strike [288]. Defendants' motions to exclude expert witnesses Favaloro, Sharp, and Hill [271, 273] are granted.

**SO ORDERED AND ADJUDGED** this the 14th day of June, 2024.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE