UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANDREW DOE                                                                                             PLAINTIFF

V.                                                                  CIVIL ACTION NO. 3:18-CV-138-DPJ-ASH

THE UNIVERSITY OF                                                                                     DEFENDANTS
MISSISSIPPI, et al.

ORDER

After entering final judgment [332] in this civil-rights action brought under 42 U.S.C. § 1983, the Court invited the parties to brief whether Doe is entitled to attorney fees under 42 U.S.C. § 1988(b). They did so, and the Court ruled that Doe is a prevailing party under § 1988, albeit with mixed results. Order [338] at 4–5. Doe then moved for an award of attorney fees [339]. The motion is granted in part, awarding Doe some but not all fees sought.

I.      Background

To summarize: Doe attended the University of Mississippi until he left school following allegations of sexual misconduct with a classmate. After a disciplinary hearing where he wasn't allowed to cross-examine his accuser, the University found Doe at fault and expelled him (later reduced to a multi-year suspension). Doe sued the University and associated parties on various grounds, including denial of due process and sex discrimination under Title IX. The Court granted him partial summary judgment on his procedural-due-process claim while dismissing others, but when Doe went to trial on his Title IX claim, the jury verdict was for Defendants.

The relief Doe originally sought included monetary damages for emotional distress, damage to his reputation, loss of educational opportunity, and lost earning capacity (in the hundreds of thousands of dollars), plus punitive damages. He also sought the declaratory relief he obtained from his due-process claim. As the Court has already observed:

> Doe proved the Title IX hearing violated his right to procedural due process and obtained all equitable relief he sought. But he lost everything else. That includes: (1) §1983 claims against the state, arms of the state, and individuals in their official capacities, all of which were barred by the Eleventh Amendment; (2) individual-capacity claims against two University employees under § 1983 that were barred by qualified immunity; (3) breach-of-contract claims against two employees who were not parties to Doe's contract; (4) breach-of-contract claims against the state and arms of the state for which sovereign immunity applied; (5) equal-protection claims under § 1983; and (6) all Title IX claims against all Defendants. Indeed, Doe achieved no success after his partial summary-judgment victory, losing every issue he took to trial.

Order [338] at 5.

II.    Standard

Under 42 U.S.C. § 1988(b), a prevailing party in a § 1983 action may be awarded his reasonable attorney fees. "A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes." *Fox v. Vice*, 563 U.S. 826, 834 (2011) (addressing § 1988 fees).

In the Fifth Circuit, the correct procedure for determining attorney fees under § 1988(b) is to "first calculate the lodestar amount by determining the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers, multiplying the reasonable hours by the reasonable hourly rates." *Doe v. Fitch*, No. 22-60481, 2023 WL 2882717, at *1 (5th Cir. Apr. 11, 2023) (cleaned up). The Court should then consider adjusting this "lodestar amount" using a set of factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). *Fitch*, 2023 WL 2882717, at *1.

III.    Discussion

    A.    Reasonable Hours

The party seeking fees must provide proof "sufficient for the court to verify that the applicant has met its burden of establishing an entitlement to a specific award." *Gagnon v.*

2

*United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010). "'Hours that are excessive, redundant, or otherwise unnecessary' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 798 (S.D. Tex. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983)). "But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838.

This Court has examined—line by line—the billing records Doe submitted. Those records included a few tabulation errors. *See* Pl.'s Reply [345] at 8–9. But the parties now agree that Doe seeks the following:

| Biller | Hours | Rate | Amount |
|---|---|---|---|
| J. Lawson Hester (attorney) | 426 | $300/hour | $127,800.00 |
| Michelle T. High (attorney) | 954.4 | $250/hour | $238,600.00 |
| Cindy Mohon (paralegal) | 18 | $145/hour | $2,610.00 |
| Natalie Barfield (paralegal) | 29.4 | $145/hour | $4,263.00 |
| Mary Carter (paralegal) | 14.2 | $135/hour | $1,917.00 |

Thus, the lodestar calculation Doe seeks comes to $375,190.00. Defendants say that amount is unreasonable for the following reasons.

    1.    Excessive Work

Defendants say Doe spent unnecessary time pursuing failed claims, billed for unnecessary expert witnesses, and billed duplicative time.

***Unsuccessful claims.*** Defendants primarily argue that Doe's only success came on the procedural-due-process claim related to the denial of cross-examination at Doe's disciplinary hearing. Defs.' Mem. [343] at 4. And, they say, that claim hinges on an undisputed fact that

3

required no discovery and limited work. *Id.* Beyond that, Defendants say there was no success and therefore no right to fees. *Id.*

> It is axiomatic that "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved' . . . and therefore no fee may be awarded for services on [an] unsuccessful claim." *Hensley*, 461 U.S. at 435. . . . "But when claims . . . share a 'common core of facts' or 'related legal theories,' a fee applicant may claim all hours reasonably necessary to litigate those issues." *Louisiana Power* [*& Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995)] (quoting *Hensley*, 461 U.S. at 434–35, 103 S. Ct. at 1940). "When a plaintiff's claims cannot be disentangled, the district court's focus should shift to the results obtained and adjust the lodestar accordingly." *Id.* at 327 n.13.

*Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.*, 23 F.4th 408, 416 (5th Cir. 2022). The Court takes this approach.

For starters, Doe generally seeks no fees for legal work after September 5, 2023, the day the Court granted him partial summary judgment on the procedural-due-process claim. Order [236] at 24. That's appropriate because after that date the remaining work was no longer intertwined with the successful claim. Doe does, however, seek some fees for time billed in 2023 for researching an attorney-fee award, which is permissible. *Johnson v. State of Mississippi*, 606 F.2d 635, 638 (5th Cir. 1979).

Also, Doe may have prevailed only on the cross-examination issue, but he didn't lose on his other due-process theories. Throughout the litigation, Doe advanced many due-process violations, all of which would have entitled him to injunctive relief if successful. *See, e.g.*, Am. Compl. [9] ¶¶ 155–169; Order [60] at 14–24 (discussing Doe's due-process theories). His cross-examination issue was his strongest, so the Court focused on that. And "[h]aving found a viable claim for injunctive relief," the Court saw "no need to address Doe's other § 1983 theories." *Id.* at 24. In other words, once Doe was entitled to injunctive relief, the Court declined to rule on the other claims that might have rendered that same remedy. Those other § 1983 claims were

4

entangled with the successful one because Doe argued that challenged procedures collectively denied him due process. Pl.'s SJ Mem. [186] at 31–37 (arguing five violations of procedural due process); *see also Hensley*, 461 U.S. at 435.

The claims that proceeded to trial also shared a "common core of facts" or "related legal theories" with the successful due-process claim. *Hensley*, 461 U.S. at 434–35. The due-process claim turned on the second *Mathews* factor—"the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Order [236] at 21 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "[T]hese are fact-dependent inquiries." *Id.* at 23 (citing *Plummer v. Univ. of Hous.*, 860 F.3d 767, 775–76 (5th Cir. 2017) (rejecting argument that due process required cross-examination because there were no credibility issues)).

Defendants' arguments for summary judgment highlight this point. According to them, Doe had no cross-examination rights because, as in *Plummer*, there were no credibility disputes. Defs.' Rebuttal [222] at 8. The Court rejected that argument after examining what happened between Doe and Roe (the accuser), the witness statements, the facts related to the Title IX investigation, and the facts related to the Title IX hearing. Order [236] at 22–24. The latter two categories also included facts relevant to the other alleged due-process violations. *Id.*

In short, the successful due-process claim "cannot be disentangled" from the other claims. *La. Power*, 50 F.3d. at 327 n.13. So rather than reduce the hours under the lodestar calculation, the Court will "adjust the lodestar accordingly." *Id.* When doing so, it notes that Doe exercised billing judgment and waived some—though not all—of those entangled fees.

***Expert-witness fees.*** Doe seeks fees for time spent recruiting and working with expert witnesses. But the Court struck one witness, Order [237], and the other experts' opinions related only to his failed Title IX claim. The Court subtracts all fees pertaining to experts—$12,565.

***Duplicative work.*** Defendants argue that Doe's fees should be reduced for duplicative work. Defs.' Mem. [343] at 20. They give as an example two lawyers attending depositions. *Id.* Given the scope of the case, the Court concludes that it was not unreasonable to send more than one attorney to a deposition. Indeed, Defendants sent three to Doe's deposition. *See* Doe Depo. [188-2] at 3.

### 2. Billing Issues

Defendants also fault Doe for the way he has supported his fee request, arguing that it is impossible to determine whether the fees were reasonable or excessive. They have a point. Doe needed to produce evidence "sufficient for the court to verify" that he met his burden. *Gagnon*, 607 F.3d at 1044. His record evidence makes that difficult.

***Redacted invoices.*** Doe's billing records include substantial redactions. "Redaction of billing records is acceptable so long as the court has sufficient information to form an opinion on the reasonableness of the fees." *Dimension Films*, 634 F. Supp. 2d at 800 (applying lodestar method to determine reasonable attorney fees in copyright-infringement case).

At times, Doe redacts entries in their entirety, stating that they are unrelated to his due-process claim. Because he is not seeking those fees, that causes little concern. Other redactions protect Doe's real name, also not a concern when the context is clear enough to infer the work performed. But sometimes that's impossible because the redactions go too far—like this:

| Feb-02-18 | Email communication with ▓▓▓▓▓▓▓▓; Advise of ▓▓▓▓▓▓ | 0.10 | 25.00 | MTH |

Records [339-1] at 1.  Other redactions seem unrelated to Doe's identity yet leave nothing to assess:



*Id.* at 3.

The burden rests on Doe to justify each fee he seeks to recover, and the Court will not resort to guesswork.  *See SCA Promotions, Inc. v. Yahoo! Inc.*, No. 3:14-CV-957, 2016 WL 8223206, at *11 n.22 (N.D. Tex. Nov. 21, 2016) (reducing fees due to redactions and rejecting offer to produce unredacted copies, citing party's initial burden,) *report and recommendation adopted*, 2017 WL 514545 (N.D. Tex. Feb. 8, 2017), *aff'd*, No. 17-10239, 2017 WL 11689639 (5th Cir. Nov. 7, 2017); *accord Produce Pay, Inc. v. Amore Produce, LLC*, No. 7:20-CV-293, 2021 WL 5155715, at *2 (S.D. Tex. July 21, 2021).  The Court concludes that roughly 15% of fees are found in overly redacted entries, so the fee award will be reduced by that amount.

***Block and vague billing.***  As a related issue, many of the redacted—and unredacted—entries are block billed.  Block billing is "the practice of billing multiple discrete tasks under a single time designation."  *DeLeon v. Abbott*, 687 F. App'x 340, 346 n.4 (5th Cir. 2017) (Elrod, J., concurring in part).  As just one of many examples:

> Continue review of caselaw, verification of case citations and assessment of court orders for use in support of Plaintiff's request for preliminary injunction and in response to Rule 12 motion by the Defendants;  Supplement and edit legal memorandum in support of preliminary injunction for Lawson's review         9.70      2,425.00

7

Records [339-1] at 7.

Entries like this fail to disclose how much time was spent on each task, which claims were addressed for those tasks, and whether the time was excessive or duplicative. This "greatly undermine[s]" "[t]he ability to assess the reasonableness of a fee request." *DeLeon*, 687 F. App'x at 346 n.4 (Elrod, J., concurring in part). "Litigants [thus] take their chances when submitting such fee applications." *La. Power*, 50 F.3d. at 327.

To address block billing and vague entries, "courts most often reduce the block-billed entries by a specific percentage." *Brown v. ASEÀ Brown Boveria, Inc.*, No. 3:14-CV-37-CWR-LRA, 2018 WL 283844, at *4 (S.D. Miss. Jan. 3, 2018) (reducing time for block entries by 30%). "[I]t is not uncommon for courts to reduce block entries by 10 to 30 percent." *Jackson Women's Health Org. v. Currier*, No. 3:12-CV-436-DPJ-FKB, 2019 WL 418550, at *8 (S.D. Miss. Feb. 1, 2019) (citing *Brown*, 2018 WL 283844, at *4).

The block billing creates another problem here because Doe pursued many frivolous claims, including his § 1983 claims against the State, the University of Mississippi, the Institutions of Higher Learning, and the Board of Trustees of the IHL. *See* Order [60] at 4–5 (dismissing those claims). The Court also dismissed his breach-of-contract claim against the State under the Eleventh Amendment, *id.* at 6–7, and it dismissed similar claims against individual defendants who were not parties to any contracts with Doe, *id.* at 24. Given the straightforward nature of this well-developed law, any significant time spent on issues like these would be excessive.

Some of the time billed on frivolous claims can be discerned from the billing records. For example, Doe included this:

| | | |
|---|---|---|
| Continue assessment of argument cases cited by the Defendants in support of dismissal for jurisdictional and immunity related reasons and development of reply brief | 5.80 | 1,450.00 |

Records [339-1] at 17.

But block billing makes it impossible to precisely say how much time Doe's counsel spent addressing the frivolous claims. For example:

| | | |
|---|---|---|
| Continue research and development of comprehensive response to Defendants' Motion to Dismiss | 5.60 | 1,400.00 |

*Id.* There are many such entries:

| | | |
|---|---|---|
| Work on a comprehensive responsive memorandum in opposition to Defendants' Motion to Dismiss. | 5.40 | 1,350.00 |

*Id.* at 18.

After reviewing each entry, about 15% of the fees are found in block entries, and about 1% identify excessive work on frivolous claims. The Court reduces the fees by another 16% for these reasons.

B. Hourly Rates

Defendants don't criticize the hourly rates of $300 and $250 billed by attorneys Hester and High respectively, but they do complain that the paralegals' rates of $135 and $145 are not reasonable. Defs.' Mem. [340] at 10. Yet, as they concede, paralegal rates between $110 and $130 were found reasonable in this district in 2022. *Id.* (citing *Delaughter v. Hatten*, No. 1:14-CV-18-RHWR, 2022 WL 2500326, at *9 (S.D. Miss. July 6, 2022)). The price of everything else seems to have risen since then, and the paralegals' rates are not unreasonable on their face, particularly given that the attorneys' rates are on the lower side of a reasonable range. Had the

attorneys billed at a higher rate and the paralegals at a lower one, Defendants would have ended up worse off.

### C. Lodestar Calculation

Having accepted the rates billed by Doe's counsel and their paralegals, the Court now applies those rates to the reasonable hours incurred. After subtracting $12,565 for the expert witnesses, the subtotal is $362,625. The Court reduces that by 31% for the reasons stated. This yields a $250,211.25 lodestar calculation.

### D. Other Factors

The lodestar amount is presumed to be reasonable, but a court may adjust it upon consideration of the *Johnson* factors, of which the most important is the plaintiff's degree of success. *Fessler v. Porcelana Corona De Mexico, S.A. De C.V.*, 23 F.4th 408, 415 (5th Cir. 2022).

> The 12 factors set forth by the *Johnson* court for determining fee awards . . . are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Blanchard*, 489 U.S. at 92 (citing *Johnson*, 488 F.2d at 717–19).

Many *Johnson* factors are "presumably fully reflected in the lodestar amount," so such adjustments are made only in certain "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1987) (quoting *Blum v. Stenson*, 465 U.S. 886, 898–901 (1984)). The party seeking an adjustment under these factors bears the burden of establishing that an adjustment is warranted. *See La. Power*, 50 F.3d at 329. Both sides seek adjustments.

10

***Defendants' arguments based on the results obtained.*** As noted, Doe prevailed on one claim and received injunctive relief. This was a disappointing result given his efforts to recover substantial compensatory and punitive damages. Indeed, the Court's own discussions with the parties demonstrated Doe's hope that he would receive a sizeable monetary verdict.

That didn't happen, but that doesn't mean his results were meaningless. First, Doe successfully removed damaging information from his permanent record. Second, his suit appears to have played some part in the University's adopting new policies—consistent with the rationale for § 1988 fee awards. *See Tex. State Teachers' Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989) (stating that § 1988's purpose includes obtaining changes in policy that vindicate rights for class of persons).

But beyond that, Doe lost. And though his failed claims were mostly entangled with his successful one, the unsuccessful ones—and the damages they would have allowed—in many ways dominated this case.

As to them, Doe has already exercised billing judgment by eliminating fees after September 2023 and most entries solely for "work not related to the due process/§ 1983 claim." Pl.'s Mem. [340] at 5. That affects this calculation. And, as noted, the Court has disallowed many of the block-billed entries before September 2023 that seem to include work on failed claims. But other entries more directly seek fees for those claims. *See, e.g.*, Records [339-1] at 2 (seeking fees for Title IX research). And there were costly tasks the Court did not discount— like depositions—that included substantial efforts to prove Doe's other theories.

The Court has been careful not to double count—e.g., reduce for block-billed work and again for futile work reflected in those same block-billed entries. That said, this factor more generally looks to the degree of success, and Doe's was limited. He prevailed on one claim for

11

injunctive relief while losing on six other categories of claims—against multiple defendants—and recovered no damages. After accounting for what has already been excluded, the Court reduces the lodestar amount by 30%.[1]

**_Doe's requested adjustment._** Doe argues that "the novelty of certain questions presented; the customary fee; the amount involved and results obtained; the undesirability of the case; and the skill required to perform the legal services properly in the face of a vociferous defense, are all factors indicating an upward adjustment of fees is appropriate." Pl.'s Mem. [340] at 13. Specifically, Doe wants the lodestar amount bounced upward by 25%. *Id*. at 14. But the novelty, skill, and results factors are the ones held in *Blum* to be "presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award." *Delaware Valley*, 478 U.S. at 565, *supplemented*, 483 U.S. 711 (1987) (citing *Blum*, 465 U.S. at 989–900).

The Court is not persuaded by Doe's attempt to show his case was somehow "undesirable," and as for the argument that his attorneys billed at rates lower than they should have, the Court finds no good cause to substitute its own judgment for that of counsel when they chose to represent Doe at those rates. As Defendants note, attorney Hester was avowing in 2015 that $265 an hour was the ceiling in Mississippi "for handling 42 U.S.C. § 1983 claims." Defs.' Mem. [341] at 24 (quoting Hester Aff. [340-9]). Hester's own rate was "$200/hour or less" at that time, *id.* so his rate of $300 here—which began two to three years later—seems reasonable. The Court sees no basis under the *Johnson* factors to add 25% to the lodestar amount.

---

[1] Even had the Court ignored the redactions and block billing, an award in this range makes sense given the degree of success.

IV.     Conclusion

Having considered all arguments presented, any of which not expressly addressed here would not affect the outcome, the Court grants Doe's motion for attorney fees in part. Defendants are ordered to pay $175,147.88 to Doe. A separate amended Judgment will be entered this date. Post-judgment interest is awarded at the statutory rate. All other relief requested in Doe's motion is denied.

**SO ORDERED AND ADJUDGED** this the 27th day of May, 2025.

*s/ Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE